UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:                                             :   Chapter 11
                                                   :
SOLSTICE, LLC, *et al.*,                           :   Case No. 09-11010 (REG)
                                                   :   (Jointly Administered)
                          Debtors.                 :
-------------------------------------------------------------------x

## ORDER AUTHORIZING THE DEBTORS
## TO OBTAIN POST-PETITION FINANCING

Upon the motion dated August 4, 2009 ("Motion") of Solstice, LLC, its management company Solstice Management, LLC, and certain direct or indirect subsidiaries (collectively, the "Subsidiary Debtors"),[1] as debtors and debtors-in-possession herein (collectively, the "Debtors"), for an order (this "Order") pursuant to Sections 105 and 364(c) and (d) of the Bankruptcy Code[2] and Bankruptcy Rule 4001, seeking authorization for the Debtors to obtain post-petition financing with respect to the New York Properties, subject to the terms and conditions of the Credit Agreements, attached to this Order as Exhibits A & B, between the Debtors and (a) the NYI Lenders with respect to New York I[3] and (b) the NYII Lender with respect to New York II[4] (the NYI Lenders and the NYII Lender, collectively, the "Lenders"); and the Court having held a hearing on the Motion on August 20, 2009 ("Hearing"); and after considering all the pleadings filed with the Court and the statements made at the Hearing; and after due deliberation and sufficient cause appearing therefore;

---

[1] The Subsidiary Debtors consist of the following fourteen (14) entities: (i) Solstice Ownership I, LLC; (ii) Solstice Ownership II, LLC; (iii) Solstice Ownership III, LLC; (iv) Solstice Ownership IV, LLC; (v) Solstice Ownership V, LLC; (vi) Solstice Ownership VI, LLC; (vii) Solstice Ownership VII, LLC; (viii) Sea Vision I, LLC; (ix) Parallel I LLC; (x) Parallel Aspen, LLC; (xi) Parallel Management LLC; (xii) 163 Charles Street No. 4 New York, LLC; (xiii) 163 Charles Street No. 5 New York, LLC; and (xiv) Solstice Ownership 7, S.r.l. ("SRL"). SRL is not seeking the relief requested in this Motion and is not a party to the transactions described herein.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

[3] New York I is the property located at 163 Charles Street, No. 5, New York, New York 10014.

[4] New York II is the property located at 163 Charles Street, No. 4, New York, New York 10014.

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1. *Jurisdiction*. This Court has core jurisdiction over these jointly-administered Chapter 11 cases, the Motion, and the parties and property affected thereby pursuant to 28 U.S.C. §§157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. *Notice*. Due and proper notice of the Motion and the Hearing was provided by the Debtors and no other or further service is required. Such notice constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001(c).

3. *Objections*. All objections to the entry of this Order, if any, are resolved hereby or, to the extent not resolved, are overruled.

4. *Findings Regarding the Credit Agreements.*

    (a) Good cause has been shown for the entry of this Order.

    (b) The Debtors have a need to obtain the loans described in the Motion and the Credit Agreements in order to, among other things, provide the Debtors with the financing necessary to pay off Fortress' positions respecting the New York Properties, thereby enhancing their reorganization alternatives.

    (c) The terms of the Credit Agreements are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration. The Debtors were not able to obtain financing on better terms than that provided by the Lenders.

    (d) The Credit Agreements have been negotiated in good faith between the Debtors and the Lenders.

    (e) The Debtors have requested entry of this Order pursuant to Sections 105 and 364 of the Bankruptcy Code and Bankruptcy Rule 4001. Absent granting the relief sought by this Order, the Debtors' estates will be harmed. Consummation of the Credit

Agreements in accordance with this Order are therefore in the best interest of the Debtors' estates.

(f) In furtherance of the foregoing and without further approval of this Court, the Debtors are authorized and directed to perform all acts, to make, execute and deliver all instruments and documents for the Debtors' performance of their obligations under the Credit Agreements.

(g) Upon execution and delivery of the Credit Agreements, the Credit Agreements shall constitute the valid and binding obligation of the Debtors, enforceable against the Debtors in accordance with its terms. No obligation, payment, transfer or grant of security under the Credit Agreements or this Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under Section 502(d) of the Bankruptcy Code, under Section 548 of the Bankruptcy Code or under any applicable State Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

(h) A certified copy of this Order may, in the discretion of the Lenders, be filed with or recorded in filing or recording offices in addition to or in lieu of financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording without the imposition of any stamp, intangibles recording or similar tax in accordance with the provisions of Section 1146 of the Bankruptcy Code.

(i) Subject only to the super-priority claims of the Member Lenders granted pursuant to the financing order entered by the Bankruptcy Court on April 2, 2009 pursuant to Section 364(c)(1) of the Bankruptcy Code, and the super-priority claims of Fortress, claims by

the Lenders on account of their loans shall have priority pursuant to Section 364(c)(1) of the Bankruptcy Code.

(j) Pursuant to Section 364(c)(3) and (d) of the Bankruptcy Code, the NYI Lenders shall have valid, binding, continuing, enforceable, fully-perfected senior security interests, liens and mortgages in the Collateral (as defined in Exhibit A hereto), junior only to the (i) Fortress Liens and (ii) Member Liens. As such, the NYI Lenders will hold a third lien position against all of the Collateral behind the Fortress Liens and the Member Liens, provided, however, that in light of Fortress releasing its lien on New York I, the NYI Lenders will hold a second priority lien junior only to the Member Liens on the New York I and, also, as Fortress is not secured against the Debtors' property in Cabo, Mexico, the NYI Lenders will hold a second priority lien junior only to the Member Liens on the Cabo property.

(k) Pursuant to Section 364(c)(3) and (d) of the Bankruptcy Code, the NYII Lenders shall have valid, binding, continuing, enforceable, fully-perfected senior security interests, liens and mortgages in New York II, provided, however, that the NYII Lender may, on or before November 25, 2009, elect the option (the "Lender Election") to subordinate the NYII Lender's first lien position on New York II to the Member Lenders and share *pari passu* and be secured to the same extent against the Collateral as the NYI Lenders. As such, if the NYII Lender chooses the Lender Election, it will be junior to and subject only to the liens and security interests of (i) Fortress Liens and (ii) the Member Liens resulting in the NYII Lender holding a third lien position against all of the Debtors' Collateral *pari passu* with the NYI Lenders, provided, however, that in light of Fortress releasing its lien on the New York Properties, the NYII Lender and the NYI Lenders will hold a second priority lien junior only to the Member Liens on the New York Properties and, also, as Fortress is not secured against the Debtors'

property in Cabo, Mexico, the NYII Lender and NYI Lenders hold a second priority lien junior only to the Member Liens on the Cabo property.

(l)  The Lenders do not need to file any other documents or make any other filings including the execution and recordation of filings by the Debtors of security agreements, control agreements, pledge agreements, financing statements or other similar documents.

(m)  The NYI Lenders and the NYII Lender each consent to the financing transaction of the other lender with respect to the New York Properties.  By virtue of the improved position that the Member Lenders have as a result of the financing of the New York Properties, and no objections having been raised, the Member Lenders are deemed to have consented to the financing by the NYI Lenders and the NYII Lender on the New York Properties.

5.  *Release of Liens*.

(a)  <u>Fortress</u>:  Fortress shall be deemed to have released its liens on the New York Properties upon payment of the financing contemplated by the Motion.

(b)  <u>Lenders</u>:  In the event the Debtors transfer a remaining property (other than the New York Properties) to Fortress for the Reserve Price, as provided for in the Adequate Protection Stipulation, the Member Lenders, the NYI Lenders, and the NYII Lender (should it make the Lender Election) will be deemed to have released their liens on such property being transferred to Fortress in accordance with the Adequate Protection Stipulation.

6.  *Adequate Protection*.  The Debtors do not believe that there are secured liens with respect to the Collateral other than the Fortress Liens and the Member Liens.  In the event there are, the Debtors believe that this financing simply replaces the Fortress Liens, which is in a senior position, by an equal amount to the sum paid to Fortress, so that the junior lienors are not negatively impacted by the contemplated financing.  The Debtors, as part of their business

operations, will maintain and preserve the Collateral. These measures are reasonable and sufficient under the circumstances.

7. *Remedies of Pre-Petition Secured Lenders*. Nothing set forth herein or in the Motion is intended to, nor shall it modify paragraph 2(c) of the Adequate Protection Stipulation relating to the remedies of Pre-Petition Secured Lenders (as defined in the Adequate Protection Stipulation). The remedies provided for in Section 2(c) of the Adequate Protection Stipulation are available to Fortress upon an exercise of remedies by either the Lenders or the Member Lenders.

8. *Good Faith Finding*. The Lenders, who are not equity holders in the Debtors, are entitled to be treated as good faith lenders pursuant to Section 364(e) of the Bankruptcy Code with respect to loans made pursuant to this Order.

9. *Default Provisions*. Notwithstanding the default provisions in the Credit Agreement, prior to exercising remedies under the Credit Agreements, the Lenders shall first give five (5) business days notice to the Debtors, counsel for Fortress, the Member Lenders, the United States Trustee and counsel for the Official Committee of Unsecured Creditors.

10. *Conflicting Provisions*. Unless otherwise provided in this Order, to the extent the terms and conditions of the Credit Agreements and other loan documents are in conflict with the terms and conditions of this Order, the terms and conditions of this Order shall control.

11. *Effectiveness*. This Order, pursuant to Bankruptcy Rule 7052, shall constitute findings of fact and conclusions of law and, notwithstanding the possible application of Bankruptcy Rule 6004(h), shall take effect immediately upon execution hereof and not be stayed absent the grant of such stay under Bankruptcy Rule 8005 after a hearing upon notice to the Debtors and the Lenders.

Dated: <u>**August 20, 2009**</u>
New York, New York

<u>**s/ Robert E. Gerber**</u>
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A
# NEW YORK I CREDIT AGREEMENT

# EXHIBIT B
# NEW YORK II CREDIT AGREEMENT