THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

In re:                                          :    Chapter 11
                                                :
SOLSTICE, LLC, *et al.*,                        :    Case No. 09-11010 (REG)
                                                :    (Jointly Administered)
                           Debtors.             :
------------------------------------------------------------------x

## DISCLOSURE STATEMENT WITH RESPECT TO
## PLAN OF LIQUIDATION UNDER
## <u>CHAPTER 11 OF THE BANKRUPTCY CODE</u>

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Arthur J. Steinberg, Esq.
Heath D. Rosenblat, Esq.
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

*Counsel for the Debtors*

Dated:  April [__], 2010

# DISCLOSURE STATEMENT

## DATED APRIL [__], 2010

## PLAN OF LIQUIDATION UNDER
## CHAPTER 11 OF THE BANKRUPTCY CODE

> **THE DEADLINE TO ACCEPT OR REJECT THE PLAN IS 4:00 P.M. (PREVAILING EASTERN TIME) ON [_____], 2010, UNLESS EXTENDED BY ORDER OF THE BANKRUPTCY COURT.**

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT (THE "DISCLOSURE STATEMENT") IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE (THE "PLAN") AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT, REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN ARE ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN CAREFULLY, IN THEIR ENTIRETY, BEFORE VOTING. IN MAKING ITS VOTING DECISION, EACH HOLDER MUST RELY ON ITS OWN EXAMINATION OF THE DEBTORS AND THE PLAN, INCLUDING THE MERITS AND RISKS INVOLVED, AND NO SUCH HOLDER SHOULD CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE. EACH SUCH HOLDER SHOULD, THEREFORE, CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, VOTING, THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN (AND ANY EXHIBITS AND SCHEDULES ANNEXED TO THE PLAN AND THIS DISCLOSURE STATEMENT). THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF.

THIS DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN PROVISIONS OF THE PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN DOCUMENTS RELATING TO THE PLAN AND CERTAIN FINANCIAL INFORMATION. ALTHOUGH THE DEBTORS BELIEVE SUCH SUMMARIES ARE FAIR AND ACCURATE, THE SUMMARIES ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS. THE DEBTORS DO NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS WITHOUT ANY MATERIAL INACCURACY OR OMISSION.

CERTAIN STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING PROJECTED FINANCIAL INFORMATION AND OTHER FORWARD-LOOKING

STATEMENTS, ARE BASED ON ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL BE REFLECTIVE OF ACTUAL OUTCOMES. SUCH STATEMENTS ARE PROVIDED PURSUANT TO THE SAFE HARBOR ESTABLISHED UNDER THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995 AND IN RELIANCE UPON THE EXEMPTION PROVIDED BY SECTION 1145(a)(1) OF THE BANKRUPTCY CODE, AND SHOULD BE EVALUATED IN THE CONTEXT OF THE ESTIMATES, ASSUMPTIONS, UNCERTAINTIES AND RISKS DESCRIBED IN THIS DISCLOSURE STATEMENT.

**THE TERMS OF THE PLAN GOVERN IN THE EVENT OF ANY INCONSISTENCY WITH THE SUMMARIES CONTAINED IN THIS DISCLOSURE STATEMENT.**

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS (*I.E.,* CAUSES OF ACTION), THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER. THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NONBANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE REORGANIZATION AS TO THE HOLDERS OF CLAIMS OR EQUITY INTERESTS.

IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT AND BECOMES EFFECTIVE, ALL HOLDERS OF CLAIMS OR EQUITY INTERESTS (INCLUDING THOSE WHO REJECTED OR WHO ARE DEEMED TO HAVE REJECTED OR ACCEPTED THE PLAN AND THOSE WHO DID NOT SUBMIT BALLOTS TO ACCEPT OR REJECT THE PLAN) SHALL BE BOUND BY THE TERMS OF THE PLAN.

## OVERVIEW OF THE PLAN

Solstice, LLC ("Solstice"), its management company Solstice Management, LLC ("Management"), and certain direct or indirect subsidiaries (collectively, the "Subsidiary Debtors")[1], as debtors and debtors-in-possession herein (collectively, the "Debtors") submit this Disclosure Statement pursuant to Section 1125 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* ("Bankruptcy Code"), for use in the solicitation of votes to accept or reject the Plan proposed by the Debtors, and filed with the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"). A copy of the Plan is annexed hereto as Exhibit A. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

The following is a general overview only, and is qualified in its entirety by, and should be read in conjunction with, the more detailed discussions, information and financial statements appearing elsewhere in this Disclosure Statement and the Plan. This Disclosure Statement contains, among other things, descriptions and summaries of the Plan. The Debtors are reserving the right to amend or modify the Plan consistent with Section 1127 of the Bankruptcy Code and Rule 3019 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

### A.      General Structure of the Plan

The Plan provides for the transferring of the Debtors' assets to a liquidating trust ("Liquidating Trust") that will be administered by a liquidating trust administrator ("Liquidating Trust Administrator") to handle, among other things (a) the Claims resolution process, (b) the distribution process for Allowed General Unsecured Claims, (c) the pursuit, prosecution and/or resolution and compromise and settlement of the Causes of Action which the Debtors have as of the Effective Date, (d) the payment of all amounts under the Plan, including, without limitation, Administrative Expense Claims, and (e) the wind down process of the Debtors including the dissolution of the Debtors and the filing of final tax returns.

After the Effective Date of the Plan, the Bankruptcy Court will retain jurisdiction with respect to certain matters, as more fully described herein and in the Plan, that relate to the Liquidating Trust. The affairs of the Liquidating Trust will be managed by a Liquidating Trust Administrator, and monitored by an Advisory Board, comprised of former members of the Creditors' Committee.

### B.      Requirements for Confirmation of the Plan

The Plan places claims against, or equity interests in, the Debtors into various classes. The Bankruptcy Code requires that each class or equity interest in a class be "substantially similar" to the other claims or equity interests in the class. Under the Bankruptcy Code, classes of claims or equity interests are either "impaired" or "unimpaired." In general, a class is unimpaired if the plan leaves unaltered the legal, equitable or contractual rights to which such claim or equity interest entitles the holder of such claim or equity interest. For example, a claim paid in full on the effective date of a plan is unimpaired, as is a secured claim in respect of which the holder is recovering 100% of the underlying collateral.

In order for a plan of reorganization to be approved, the Bankruptcy Court requires that each class of impaired claims vote to accept the plan, except to the extent a "cramdown" is available under Section 1129(b) of the Bankruptcy Code. (In a cramdown scenario, a plan may be confirmed, notwithstanding rejection by one or more impaired classes, if (a) the plan has been accepted by at least one impaired class, (b) the plan does not "discriminate unfairly" and is "fair and equitable" as to each non-accepting class, and (c) the other requirements for confirmation are met). Only the holders of impaired claims or interests are entitled to vote on a plan. Furthermore, if the holder of an impaired claim or interest is not receiving or retaining any property under the plan, then the holder is deemed

---

[1]      The Subsidiary Debtors consist of the following fourteen (14) entities: (i) Solstice Ownership I, LLC; (ii) Solstice Ownership II, LLC; (iii) Solstice Ownership III, LLC; (iv) Solstice Ownership IV, LLC; (v) Solstice Ownership V, LLC; (vi) Solstice Ownership VI, LLC; (vii) Solstice Ownership VII, LLC; (viii) Sea Vision I, LLC; (ix) Parallel I LLC; (x) Parallel Aspen, LLC; (xi) Parallel Management LLC; (xii) 163 Charles Street No. 4 New York, LLC; (xiii) 163 Charles Street No. 5 New York, LLC; and (xiv) Solstice Ownership 7, S.r.l.

to have rejected the plan and such holder's vote will not be solicited. With respect to voting, acceptance by an impaired class of claims requires acceptances by the holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of claims in the class who actually vote. Holders who are entitled to vote and who fail to vote are not counted as either accepting or rejecting the plan but may still participate in distributions under the plan to the extent of the allowed amount of their claims.

Assuming that the required votes are received, or that a cramdown is available, a plan must then be approved, or "confirmed," by the Bankruptcy Court. In order to confirm a plan, the Bankruptcy Court must make a series of determinations, including (a) that the plan has classified claims and interests in a permissible manner; (b) that the plan complies with the requirements of Chapter 11 of the Bankruptcy Code; (c) that the plan was proposed in good faith, and (d) that the disclosures, as required by Chapter 11 of the Bankruptcy Code, have been adequate and have included information concerning all payments made or promised under the plan. The Bankruptcy Code requires, further, that the plan be "feasible" (*i.e.*, that there be a reasonable prospect that confirmation of the plan is not likely to be followed by a liquidation or the need for further financial reorganization); and that the plan is in the "best interests" of all impaired creditors and equity security holders (that is, that impaired creditors and equity security holders will receive at least as much under the plan as they would in a Chapter 7 liquidation). To confirm the Plan, the Bankruptcy Court must find all of these conditions are met with respect to the Plan. Thus, even if the Plan is accepted by the required number of votes, the Bankruptcy Court must make independent findings respecting the Plan's feasibility and whether it satisfies the "best interests" test before the Plan may be confirmed.

## C. Summary of Treatment of Claims and Equity Interests

The following is a brief summary of the treatment of Claims and Equity Interests under the Plan. A Claim is placed in a particular Class for purposes of voting on the Plan and receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim.

### 1. Class of Claims

| Class Description | Proposed Treatment under the Plan |
|---|---|
| **Other Priority Claims (Class 1)**<br><br>Estimated Range of Allowed Claims: $0.00 to $70,000<br>Estimated Recovery:          100% | Class 1 is unimpaired by the Plan.<br><br>Except to the extent that a holder of an Allowed Other Priority Claim agrees to a different treatment, each holder of an Allowed Other Priority Claim shall receive, in full satisfaction of such unpaid Other Priority Claim, Cash in the full amount of such claim on or as soon as reasonably practicable following the later to occur of (x) the Effective Date or as soon thereafter as is reasonably practicable and (y) the date on which such Claim becomes Allowed. |
| **Other Secured Claims (Class 2)**<br><br>Estimated Range of Allowed Claims: $0.00 to $50,000<br>Estimated Recovery:          100% | Class 2 is unimpaired by the Plan.<br><br>Except to the extent that a holder of an Allowed Other Secured Claim agrees to a different treatment, each holder of an Allowed Other Secured Claim shall receive, in full satisfaction of such unpaid Other Secured Claim, (a) the property securing such Allowed Other Secured Claim, or (b) Cash in an amount equal to the value of the property securing such Allowed Other Secured Claim. |

| | |
|---|---|
| **General Unsecured Claims (Class 3)**<br><br>Estimated Range of Allowed Claims:  $70 million to $75 million<br><br>Estimated Recovery Range:  1% to 10% | Class 3 is impaired by the Plan.<br><br>Except to the extent that a holder of an Allowed General Unsecured Claim agrees to a different treatment, on the Effective Date or as soon as practicable thereafter, and on subsequent Distribution Dates as determined by the Liquidating Trust Administrator, each holder of an Allowed General Unsecured Claim, shall receive its Pro Rata Share of the Liquidating Trust Assets available for distribution on account of Allowed General Unsecured Claims.  The Wind Down Expense Reserve shall not be utilized to pay Allowed General Unsecured Claims until all obligations that the Wind Down Expense Reserve is intended to pay, are satisfied in full. |
| **Subordinated Fortress Penalty Claim (Class 4)**<br><br>Estimated Allowed Claims:  $608,264.95<br><br>Estimated Recovery:  0.0% | Class 4 is impaired by the Plan.  Fortress Subordinated Penalty Claim, approved by the January 13, 2010 Stipulation and Consent Order of the Bankruptcy Court in the amount of $608,264.95, is subordinated to Allowed General Unsecured Claims.<br><br>Holders of Class 4 claims will not get a distribution under the Plan until all Allowed General Unsecured Claims have been paid in full. |
| **Equity Interests (Class 5)**<br><br>Estimated Recovery:  0.0% | Class 5 is impaired by the Plan.<br><br>Holders of the existing Equity Interests shall not receive or retain any distribution or payment on account of such Equity Interests.  The Equity Interests shall be deemed cancelled as of the Effective Date.  The equity interests held by Solstice in the other Debtors, or by any Debtor (other than Solstice) in another Debtor shall be deemed cancelled under the Plan as of the Effective Date, except to the extent requested by Zodiac, prior to the Confirmation Date, to effectuate the Asset Sale for certain of the Debtors.  Under the Asset Sale, Zodiac had the option to acquire the capital stock of a Debtor (other than Solstice) in lieu of purchasing the assets of such Debtor. |

## 2.    Substantive Consolidation

      The Plan contemplates and is predicated upon substantive consolidation of the Debtors into a single entity for purpose of all actions under the Plan.  Entry of the Confirmation Order shall constitute approval, pursuant to Section 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Chapter 11 Cases for all purposes related to the Plan, including, without limitation, for purposes of voting, confirmation and distribution.  On and after the Effective Date, (i) all assets and liabilities of the Debtors shall be deemed merged so that all of the assets of the Debtors shall be available to pay all of the liabilities under the Plan as if it were one company, (ii) no distributions shall be made under the Plan on account of Intercompany Claims among the Debtors, (iii) no distributions will be made under the Plan on account of any Equity Interests held by a Debtor, (iv) all guarantees of the Debtors of the obligations of any other Debtor shall be deemed eliminated so that any claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of the Debtors shall be deemed to be one obligation of the consolidated Debtors, and (v) each and every Claim filed or to be filed in the Chapter 11 Case against any of the Debtors shall be deemed filed against the consolidated Debtors, and shall be deemed one Claim against and obligation of the consolidated Debtors.

3.    **Member Settlement**

The Plan contemplates a settlement with each Member that paid cash to the Debtors prior to the Commencement Date as a deposit for its membership in the Debtors destination club.  Under the Plan, each Member shall have an Allowed General Unsecured Claim for the amount of the cash deposit made that was not repaid, and shall have no other Allowed General Unsecured Claim in the Chapter 11 Cases.  A schedule of the Member Allowed General Unsecured Claims is attached to the Disclosure Statement as <u>Exhibit B</u>.  By agreeing to this settlement, a Member will not be releasing or reducing its claim against any person which is a non-Debtor.

**THE DEBTORS BELIEVE THAT THE PLAN PROVIDES THE BEST RECOVERIES POSSIBLE FOR THE HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN EACH DEBTOR, AND, ACCORDINGLY, <u>STRONGLY RECOMMEND</u> THAT YOU VOTE TO ACCEPT THE PLAN.**

<u>TABLE OF CONTENTS</u>

                                                                                    **Page**

ARTICLE I INTRODUCTION ......................................................................................... 1

ARTICLE II VOTING INSTRUCTIONS AND PROCEDURES .......................................... 1
    2.1    Notice to Holders of Claims or Equity Interests ................................... 1
    2.2    Solicitation Package ............................................................................ 2
    2.3    Classes Entitled to Vote ...................................................................... 2
    2.4    Record Date ......................................................................................... 2
    2.5    Ballots; Voting Deadline ...................................................................... 2
    2.6    Confirmation Hearing; Objections ....................................................... 3

ARTICLE III BACKGROUND OF THE DEBTORS ............................................................ 4
    3.1    Corporate Structure .............................................................................. 4
    3.2    The Debtors' Destination Club Businesses and Membership Therein ... 4
    3.3    The Debtors' Pre-Petition Debt Structure ............................................ 5
    3.4    The Debtors Reasons For Filing For Chapter 11 .................................. 5

ARTICLE IV THE CHAPTER 11 CASES ........................................................................... 6
    4.1    Commencement of the Chapter 11 Cases ............................................. 6
    4.2    Creditors' Committee ........................................................................... 6
    4.3    Schedules and Statements of Financial Affairs .................................... 6
    4.4    Bar Date .............................................................................................. 6

ARTICLE V CERTAIN EVENTS THAT OCCURRED IN THE CHAPTER 11 CASES ....... 7
    5.1    The Adequate Protection Stipulation ................................................... 7
    5.2    Debtor-In-Possession Financing .......................................................... 7
    5.3    Sale of the Phase I Properties .............................................................. 7
    5.4    New York Properties Refinancing ........................................................ 8
    5.5    Asset Sale ............................................................................................ 8
    5.6    Litigations .......................................................................................... 8

ARTICLE VI SUMMARY OF THE PLAN ......................................................................... 9
    6.1    Overall Structure of the Plan ............................................................... 9
    6.2    Substantive Consolidation ................................................................... 9
    6.3    Compromise and Settlement ............................................................... 10
    6.4    Classification of Claims and Equity Interests ..................................... 11
    6.5    Treatment of Claims and Equity Interests .......................................... 11

ARTICLE VII IMPLEMENTATION OF THE PLAN ......................................................... 13
    7.1    Purpose of the Liquidating Trust ........................................................ 13
    7.2    Liquidating Trust Administrator; Termination of the Board and Officers of the Debtors ............ 13
    7.3    Transfer of Assets .............................................................................. 13
    7.4    Valuation of Assets ............................................................................ 14
    7.5    Responsibilities and Authority of the Liquidating Trust Administrator ...... 14
    7.6    Powers of the Liquidating Trust Administrator .................................. 14
    7.7    Enforcement of Causes of Action ...................................................... 15
    7.8    Compensation of Liquidating Trust Administrator ............................. 15
    7.9    Retention and Payment of Professionals ............................................ 15
    7.10    Limitation on Liability of the Liquidating Trust Administrator ........... 15
    7.11    Termination of the Liquidating Trust ................................................. 15
    7.12    Appointment of Advisory Board ........................................................ 16
    7.13    Rights and Powers of the Advisory Board .......................................... 16
    7.14    Exculpation ........................................................................................ 16

| | | |
|---|---|---|
| 7.15 | Distributions Under the Plan | 16 |
| 7.16 | Cancellation of Existing Agreements and Equity Interests | 17 |
| 7.17 | Wind Down Reserve | 18 |
| 7.18 | Taxes and Tax Reporting | 18 |
| 7.19 | Rejection of Any Remaining Executory Contracts and Unexpired Leases | 18 |
| 7.20 | Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan | 19 |

**ARTICLE VIII EFFECT OF CONFIRMATION** .......... 19

| | | |
|---|---|---|
| 8.1 | Vesting of Assets | 19 |
| 8.2 | Binding Effect | 19 |
| 8.3 | Injunction or Stay | 19 |
| 8.4 | Terms of Injunction or Stay | 19 |
| 8.5 | Reservation of Causes of Action/Reservation of Rights | 20 |
| 8.6 | Exculpation | 20 |

**ARTICLE IX CERTAIN RISK FACTORS** .......... 20

| | | |
|---|---|---|
| 9.1 | Nature of Financial Information | 20 |
| 9.2 | Certain Bankruptcy Law Considerations–Alternatives to the Plan | 20 |
| 9.3 | Possible Adverse Effects from Delay | 21 |
| 9.4 | Possible Adverse Effects from Modification of the Plan | 21 |
| 9.5 | Unknown Claims | 21 |
| 9.6 | Dilution | 21 |
| 9.7 | Liquidation of Non-Cash Assets | 21 |

**ARTICLE X LIQUIDATING TRUST MATTERS** .......... 21

| | | |
|---|---|---|
| 10.1 | Issuance and Resale of Securities | 21 |
| 10.2 | Non-Transferability of Liquidating Trust Interests | 22 |

**ARTICLE XI CERTAIN FEDERAL INCOME TAX CONSEQUENCES** .......... 22

| | | |
|---|---|---|
| 11.1 | Federal Tax Consequences to the Debtors and Equity Interest Holders | 23 |
| 11.2 | Consequences to Holders of Certain Allowed Claims | 23 |

**ARTICLE XII CONFIRMATION OF THE PLAN** .......... 25

| | | |
|---|---|---|
| 12.1 | Classification of Claims and Equity Interests | 25 |
| 12.2 | Acceptance of the Plan | 25 |
| 12.3 | Best Interests Test | 26 |
| 12.4 | Feasibility | 26 |
| 12.5 | Confirmation Without Acceptance by All Impaired Classes – Cramdown | 27 |
| 12.6 | Conditions to Effective Date of the Plan | 27 |
| 12.7 | Post-Effective Date Jurisdiction | 28 |

**ARTICLE XIII RECOMMENDATION** .......... 30

# DISCLOSURE STATEMENT

## ARTICLE I

## INTRODUCTION

The Debtors submit this Disclosure Statement pursuant to Section 1125 of the Bankruptcy Code, for use in the solicitation of votes in respect of the Plan, a copy of which is annexed hereto as <u>Exhibit A</u>. The Debtors are the "proponents of the plan," within the meaning of Section 1129 of the Bankruptcy Code.

This Disclosure Statement sets forth certain information regarding the Debtors' prepetition operations and financial history, the need to seek Chapter 11 relief, significant events that occurred during the Chapter 11 Cases, and the operation of the Liquidating Trust by the Liquidating Trust Administrator in furtherance of the terms of the Plan. This Disclosure Statement also describes the terms and provisions of the Plan, including certain effects of confirmation of the Plan and the manner in which distributions will be made under the Plan. In addition, this Disclosure Statement discusses the confirmation process and procedures that holders of Claims entitled to vote on the Plan must follow for their votes to be counted.

FOR A DESCRIPTION OF THE PLAN AND CERTAIN RISKS AND OTHER FACTORS PERTAINING TO THE PLAN AS IT RELATES TO HOLDERS OF CLAIMS AND EQUITY INTERESTS, <u>SEE</u> ARTICLE VII BELOW, "SUMMARY OF THE PLAN," AND ARTICLE IX BELOW, "CERTAIN RISK FACTORS."

## ARTICLE II

## VOTING INSTRUCTIONS AND PROCEDURES

### 2.1     <u>Notice to Holders of Claims or Equity Interests</u>

This Disclosure Statement is being transmitted to the holders of Claims entitled under the Bankruptcy Code to vote to accept or reject the Plan. See Section 2.3 below for a discussion and listing of those holders entitled to vote on the Plan and those not entitled to vote on the Plan. The purpose of this Disclosure Statement is to provide adequate information to enable those holders entitled to vote to make a reasonably informed decision with respect to the Plan prior to exercising their right to vote either to accept or reject the Plan.

[The Bankruptcy Court has approved the Disclosure Statement as containing information of a kind and in sufficient and adequate detail to enable holders of Claims who are entitled to vote on the Plan to make an informed judgment to accept or reject the Plan. APPROVAL BY THE BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE A GUARANTEE OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, NOR DOES IT CONSTITUTE AN ENDORSEMENT OF THE PLAN BY THE BANKRUPTCY COURT.]

HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN ARE STRONGLY ENCOURAGED TO READ THIS DISCLOSURE STATEMENT, ITS EXHIBITS, THE PLAN AND THE PLAN SUPPLEMENT CAREFULLY AND IN THEIR ENTIRETIES PRIOR TO VOTING.

THIS DISCLOSURE STATEMENT IS THE ONLY DOCUMENT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES ON THE PLAN. No solicitation of votes on the Plan may be made except after distribution of this Disclosure Statement, and no Person has been authorized to distribute any information concerning the Debtors or the Plan other than the information contained in this Disclosure Statement.

CERTAIN OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS BY ITS NATURE FORWARD LOOKING AND CONTAINS ESTIMATES, ASSUMPTIONS AND PROJECTIONS THAT MAY BE MATERIALLY DIFFERENT FROM ACTUAL, FUTURE RESULTS. Except as otherwise specifically stated herein, this Disclosure Statement does not reflect any events that may occur subsequent to the

date hereof and that may have a material impact on the information contained in this Disclosure Statement. Further, the Debtors do not anticipate that any amendments or supplements to this Disclosure Statement will be distributed to reflect such occurrences. Accordingly, the delivery of this Disclosure Statement shall not under any circumstance imply that the information herein is correct or complete as of any time subsequent to the date hereof.

**EXCEPT WHERE SPECIFICALLY NOTED, THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT OR ANY ATTACHMENT HERETO HAS NOT BEEN AUDITED BY A CERTIFIED PUBLIC ACCOUNTING FIRM AND HAS NOT BEEN PREPARED IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPLES.**

## 2.2     Solicitation Package

Along with the mailing of this Disclosure Statement, as part of the solicitation of acceptances of the Plan, the Debtors will send or cause to be sent copies of (i) the Plan (as an exhibit to this Disclosure Statement); (ii) notice of, among other things, the time for submitting Ballots to accept or reject the Plan, the date, time and place of the hearing to consider confirmation of the Plan and related matters, and the time for filing objections to confirmation of the Plan (the "Confirmation Hearing Notice"); and (iii) if you are the holder of Claims entitled to vote on the Plan, one or more Ballots (and return envelopes) to be used by you in voting to accept or reject the Plan. Holders of Unimpaired Claims, or Impaired Claims in respect of which they will not receive or retain any property under the Plan, or Claims designated as Disputed, Contingent or Unliquidated, will, in lieu of the solicitation materials described above, receive a "Notice of Non-Voting Status", in a form approved by the Bankruptcy Court, providing certain information relevant to such Claims including the date, time and place for the Confirmation Hearing and the procedure and deadline for objections to confirmation of the Plan.

## 2.3     Classes Entitled to Vote

Only Classes of Claims that are Impaired under the Plan are entitled to vote to accept or reject the Plan. Classes of Claims that are Unimpaired are not entitled to vote and are treated as having accepted the Plan. Classes of Claims or Equity Interests that receive no distributions under the Plan are deemed as a matter of law to have rejected the Plan, so their votes will not be solicited. The Bankruptcy Court may estimate and allow a disputed, unliquidated or contingent Claim for purposes of voting on the Plan. Any party in interest may seek an order of the Bankruptcy Court temporarily allowing, for voting purposes, a Disputed Claim.

Classes 1 and 2 are Unimpaired, and are deemed to have accepted the Plan. Holders of Equity Interests in Class 5 are not entitled to receive or retain any property under the Plan, and are therefore deemed to have rejected the Plan. As a result, only the holders of impaired Claims in Classes 3 and 4 are entitled to vote, and votes are being solicited only from such holders.

## 2.4     Record Date

April [14], 2010, is the record date for all Claims for voting purposes (the "Record Date"); Persons that did not hold such a Claim as of the Record Date will not be permitted to vote to accept or reject the Plan.

## 2.5     Ballots; Voting Deadline

Ballots are being provided only to the holders of Claims entitled to vote on the Plan. If you are entitled to vote Claims in more than one Class, you will receive separate Ballots that must be used for each Class. Other forms of Ballot are not acceptable and will not be counted. After reviewing this Disclosure Statement, the Plan and the instructions accompanying your Ballot, please indicate your acceptance or rejection of the Plan by voting in favor of or against the Plan on the enclosed Ballot. You must complete and sign your original Ballot (copies will not be accepted) and return it in the envelope provided.

IN ORDER FOR YOUR VOTE TO BE COUNTED, YOUR BALLOT MUST BE PROPERLY COMPLETED AS SET FORTH ABOVE AND IN ACCORDANCE WITH THE VOTING INSTRUCTIONS ON THE BALLOT AND RECEIVED **NO LATER THAN [_____], 2010, AT 4:00 P.M. (PREVAILING EASTERN TIME)** (THE "VOTING DEADLINE") BY THE FOLLOWING:

> King & Spalding LLP
> Counsel for the Debtors
> Attn: Heath D. Rosenblat
> 1185 Avenue of the Americas
> New York, New York 10036
> Telephone: (212) 556-2100
> Facsimile: (212) 556-2222

If you have questions about (i) the procedure for voting your Claims or with respect to the packet of materials you received or (ii) the amount of your Claim, or if you wish to obtain, at your own expense (unless otherwise specifically required by Bankruptcy Rule 3017(d)), an additional copy or copies of the Plan, this Disclosure Statement or any appendices or exhibits to such documents, please contact Debtors' counsel using the information provided above.

DO NOT RETURN STOCK CERTIFICATES, DEBT INSTRUMENTS OR OTHER DOCUMENTATION RELATING TO YOUR CLAIM WITH YOUR BALLOT.

**2.6     Confirmation Hearing; Objections**

Pursuant to Section 1128 of the Bankruptcy Code and Bankruptcy Rule 3017(c), the Confirmation Hearing is scheduled to commence on **[_____], 2010, at [\_\_]:00 a.m. (prevailing Eastern time)**, before the Honorable Robert E. Gerber, in Courtroom 621 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004-1408. The Confirmation Hearing may be adjourned from time-to-time by the Debtors or the Bankruptcy Court without further notice other than by announcement of the adjournment date at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014. Such objections, if any, must be in writing, must provide the name, current address and telephone number of the objecting party and counsel, must set forth with specificity all factual and legal bases for the objection, must specify the amount of such party's Claims or Equity Interests, and must be filed and served so as to be *actually received* by the Bankruptcy Court and each of the following not later than **[_____], 2010 at 4:00 p.m. (prevailing Eastern time)**:

To the Debtors:

Solstice LLC
601 Union Street, Suit 4200
Seattle, Washington 98101
Attn: Carolynn Rockafellow
Telephone: (415) 843-5113

Counsel to the Debtors:

King & Spalding LLP
1185 Avenue of the Americas
New York, New York 10036
Attn: Arthur J. Steinberg
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

Counsel to the Committee:

Arent Fox LLP
1675 Broadway
New York, New York 10019
Attn: Schuyler G. Carroll
Telephone: (212) 484-3900
Facsimile: (212) 484-3990

Counsel to the U.S. Trustee:

Office of the U.S. Trustee
33 Whitehall St., 21st floor
New York, NY 10004
Attn: Gregory M. Zipes
Telephone: (212) 510-0500

The Bankruptcy Court may confirm the Plan only if it determines that the Plan complies with the requirements of Chapter 11 of the Bankruptcy Code.

## ARTICLE III

## BACKGROUND OF THE DEBTORS

### 3.1    Corporate Structure

Solstice is a holding company that owns, directly or indirectly, 100% of the stock of Management and the Subsidiary Debtors, with the limited exception of owning 98% of the equity interest of Parallel Management LLC.

Further, Solstice has four classes of equity interests; specifically, Class A units held by 10 holders, and Class B, C and D units, each class of which is held by one holder. The holders of these units are classified in Class 5 of the Plan and will not receive or retain any property under the Plan.

### 3.2    The Debtors' Destination Club Businesses and Membership Therein

The Debtors previously owned and operated a destination club business. They owned or leased luxury destination homes in various locations in the United States, Latin America and Europe (collectively, the "Properties").

With regard to the Properties that were owned by the Debtors: (a) Parallel I was the holding company for Parallel Aspen, which held title to a luxury destination home in Aspen, Colorado; (b) Solstice I held title to a luxury destination home in Cabo San Lucas, Mexico; (c) Solstice II was the beneficial owner of a luxury destination home in Telluride, Colorado[2]; (d) Solstice III held title to a luxury destination home in St. Barts, French Caribbean; (e) Solstice IV held title to a luxury destination home and an undeveloped parcel (the "Napa Lot") in Napa Valley, California; (f) Solstice V held title to a luxury destination home in Paris, France; (g) Solstice VI held title to a luxury destination home in Aspen, Colorado; (h) Solstice VII is the holding company for (1) Solstice Ownership 7 (an Italian Societa a Responsibilita Limitata, *i.e.*, a limited liability company) that managed and operated a luxury destination home in Florence, Italy and (2) Solstice Bellaviue SA (a non-debtor), which managed and operated a luxury destination home in Verbier, Switzerland; (i) 163 Charles Street No. 4 held title to a three (3) bedroom luxury

---

[2]    Graham Kos, a former member of the Board of Directors of Solstice, held legal title (but not the beneficial interest) to the real property in Telluride. Prior to the Petition Date, Kos delivered a deed in lieu of foreclosure to Fortress. The Debtors received an approximate $2.6 million reduction in the indebtedness due to Fortress for the transfer of the Debtors' beneficial interest in the Telluride Property to the Fortress designee.

destination apartment in New York, New York; (j) 163 Charles Street No. 5 held title to a one (1) bedroom luxury destination apartment in New York, New York; and (k) Sea Vision held title to a luxury yacht.

The Debtors had approximately seven (7) corporate employees as of the Commencement Date. The Debtors also utilized the services of approximately eleven (11) independent contractors to service the Properties. Subsequent to the Commencement Date, the Debtors reduced the number of employees to four (4). Following the Asset Sale, the Debtors terminated all of their paid employees effective December 31, 2009 and have been using the services of one (1) independent contractor to assist with the remaining administrative tasks.

Prior to the Commencement Date, parties that were interested in utilizing the Properties paid a one-time deposit ("Membership Deposit(s)") to become members ("Member(s)"). The Debtors offered three membership packages ("Membership Package(s)"), listed in descending order of the level of access provided to Members: (i) Sky Package, which required a $1.95 million Membership Deposit, (ii) Platinum Package, which required a $975,000 Membership Deposit, and (iii) Signature Package, which required a $615,000 Membership Deposit (collectively, "Membership Package(s)"). Membership Deposits were actually paid subject to market conditions and ranged from a low of $120,000 to a high of $2.49 million over an approximate five (5) year period. As of the Commencement Date, the Debtors had ninety-four (94) Members, (i) forty-five (45) of which were Platinum Members, (ii) forty-one (41) of which were Signature Members, and (iii) eight (8) of which were Sky Members.

Members also paid annual dues ("Annual Dues") depending on the Membership Package to which they belonged. Prior to the Commencement Date, Annual Dues were as follows: (i) $34,000 for Signature Package Members, (ii) $54,000 for Platinum Package Members, and (iii) $86,000 for Sky Package Members.

### 3.3    The Debtors' Pre-Petition Debt Structure

Prior to the Commencement Date, the Debtors entered into an Amended and Restated Loan and Security Agreement, dated as of May 31, 2007 (the "Fortress Agreement"), with Fortress Credit Funding III LP and Fortress Credit Funding IV LP (collectively "Fortress"). The Fortress Agreement was secured by most of the Properties. The principal balance due as of the Commencement Date under the Fortress Agreement was approximately $23.6 million. As of the Commencement Date, the Debtors were in default under the Fortress Agreement.

The unsecured obligations owed to the Members by the Debtors is approximately $68 million. The Debtors estimate that other third party unsecured claims are in the approximate range of $2 to $6 million.

### 3.4    The Debtors Reasons For Filing For Chapter 11

In the latter half of 2008, one of the Debtors' shareholders sued the Debtors management in Delaware Chancery Court for, among other things, fraud, waste and mismanagement. The litigation continued until the Commencement Date. During this period, Graham Kos ("Kos"), a founder of Solstice and a defendant in the aforementioned Delaware action, was replaced as the chief executive officer and subsequently resigned as a director of Solstice. He was replaced as chief executive officer by Carolynn Rockafellow, a Member, who did not receive a salary for her services.

While the Delaware action was being litigated, the Fortress Agreement matured and Fortress indicated that unless a satisfactory result could be promptly reached, it would foreclose on its collateral, which were the Properties used by the Members.

The Debtors were also in default with regard to certain sizeable obligations owed to third party non-Members, and judgments were beginning to mount against the Debtors. Certain Members were seeking to withdraw from the destination club and a return of their deposits. The Debtors also had essentially run out of cash, and the Members were not paying their annual dues, because, in part, of the overhang caused by the financial turmoil described above.

On a macro level, the world economy was suffering through an unprecedented upheaval that was negatively impacting the credit markets and the real estate market -- critical components of the Debtors' business prospects. These negative conditions also adversely impacted the Debtors' ability to attract new Members.

In order, *inter alia*, (a) to attract new financing and convince Members to pay their dues, and (b) to achieve a breathing spell from the litigations and creditor actions described above, and to assess their reorganization alternatives, the Debtors commenced the Chapter 11 Cases.

## ARTICLE IV

## THE CHAPTER 11 CASES

### 4.1 Commencement of the Chapter 11 Cases

On March 5, 2009, each of the Debtors (other than SRL) filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Southern District of New York. The cases were assigned to Bankruptcy Judge Robert E. Gerber. On June 12, 2009, SRL filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, also in the Southern District of New York, and the case was also assigned to Judge Gerber. The Chapter 11 Cases were consolidated for procedural purposes only and have been jointly administered.

### 4.2 Creditors' Committee

On March 16, 2009, the U.S. Trustee appointed the Creditors' Committee pursuant to Section 1102(a) of the Bankruptcy Code. The Committee was originally comprised of three (3) members and was later reformulated on April 21, 2010 to include five (5) members, specifically, Diane Rice (a Member), McColl Partners, LLC, Summit Engineering, Inc., 2M Group, and Two Man Crew, Inc. The Creditors Committee has retained as its counsel Arent Fox LLP. The Debtors have conferred regularly with counsel to the Creditors' Committee, and the Plan is jointly proposed by the Debtors and the Creditors' Committee.

### 4.3 Schedules and Statements of Financial Affairs

On May 18, 2009, the Debtors filed their Consolidated Schedules of Assets and Liabilities and Statements of Financial Affairs with the Bankruptcy Court. Such Schedules and Statements set forth the claims of known creditors against the Debtors as of the Debtors' Commencement Date, according to the Debtors' books and records.

### 4.4 Bar Date

On July 7, 2009, the Bankruptcy Court entered an order (the "Bar Date Order") establishing the general deadline for filing proofs of claim against the Debtors (the "Bar Date"). The deadline established by the Bankruptcy Court was August 14, 2009 at 5:00 pm (prevailing Eastern time) for Claims other than (i) Claims based upon the rejection of executory contracts or unexpired leases (in which case, if the lease was rejected by order dated on or before July 7, 2009, the deadline was August 14, 2009 at 5:00 pm (prevailing Eastern time), and if the lease was rejected after such time, the deadline is as established in the rejection order or, if no date is set in such order, the date thirty (30) days after the effective date of such rejection) or (ii) Governmental Claims which had Bar Dates of September 11, 2009 or December 9, 2009 (with respect to SRL). On July 8, 2009, the Debtors provided notice of the Bar Date by mailing, to each known holder of a Claim or Equity Interest, a notice of the Bar Date, a proof of claim form and a statement as to whether the Claim was Scheduled as unliquidated, contingent and/or disputed. In addition, on July 13, 2009, the Debtors caused notice of the Bar Date to be published in The Wall Street Journal (Global Edition).

**ARTICLE V**

**CERTAIN EVENTS THAT OCCURRED IN THE CHAPTER 11 CASES**

**5.1     The Adequate Protection Stipulation**

In and around the Commencement Date, the Debtors and Fortress negotiated and entered into an agreement ("Adequate Protection Stipulation") that was approved by the Court on April 3, 2009, which, among other things, provided the Debtors with a breathing spell to assess their reorganization alternatives.

Under the terms of the Adequate Protection Stipulation, the Debtors, *inter alia*, agreed to repay the Fortress indebtedness by, if necessary, selling the Properties in two (2) phases (*i.e.*, Phase I and Phase II). The Phase I Properties (specifically, the Yacht, one of the Aspen, Colorado properties to be designated by the Debtors by July 10, 2009, the Napa Lot, and both of the New York properties (collectively, the "New York Properties")) were to be sold by no later than August 10, 2009 at minimum amounts agreed to by the Debtors and Fortress (the "Reserve Prices").[3] If any Phase I Property was not sold by August 10, 2009, the Debtors would return the unsold Phase I Property to Fortress by deed-in-lieu and obtain a credit equal to the Reserve Price against the amounts owed to Fortress under the Fortress Agreement. The remaining Properties, the Phase II Properties, were to be sold by no later than December 31, 2009. With respect to the Phase I Properties, the Debtors and Fortress agreed to extend the deadline to August 31, 2009, to allow the Debtors to finalize the sale of the Napa Lot and close the refinancing transactions respecting the New York Properties, each of which are more fully discussed below.

**5.2     Debtor-In-Possession Financing**

On the Commencement Date, the Debtors sought and subsequently obtained Bankruptcy Court approval to enter into a post-petition financing agreement ("March DIP")in the aggregate amount of no less than $1,000,000 and not greater than $1,500,000. This March DIP was entered into by and among the Debtors and twenty-four (24) lenders; each of the lenders were Members. Ultimately, the Debtors received $1.3 million.

**5.3     Sale of the Phase I Properties**

The first property sold by the Debtors was the Yacht. On March 16, 2009, the Debtors filed a motion to sell the Yacht; the motion was approved by the Court on April 15, 2009. Ultimately, in addition to the "stalking horse" bidder, there were 2 bidders interested in purchasing the Yacht. An auction was conducted and, as a result of the auction process, the Yacht was sold for $630,000 in cash proceeds plus additional consideration (payment of certain pre-petition claims of the Yacht's service providers). This was $280,000 better than the original "stalking horse" offer and $380,000 better than the minimum sale price required under the Adequate Protection Stipulation.

The sale process was complicated by the commencement of an arrest action ("Arrest Action") by certain of the Yacht's service providers just prior to the Commencement Date. The Arrest Action was ultimately resolved.

With respect to the real property, it was originally envisioned that the Debtors would sell the Phase I Properties in a typical bankruptcy sale process; that being, find a stalking horse bidder, have an auction, and get Bankruptcy Court approval after notice to creditors. However, the Debtors were getting feedback from their brokers that the typical bankruptcy sale process was not optimal. It was a "buyers ' market" and there were many similar residential properties offered for sale. Sellers (such as the Debtors) needed to act quickly, with minimal barriers to closing.

---

[3]     The minimum reserve prices for each of the Phase I and Phase II Properties were:  (1) $1.5 million for the Cabo property, (2) $6.5 million for the St. Barts property, (3) $5 million for the Napa I property (developed parcel), (4) $700,000 for the Napa II lot (*i.e.*, Napa Lot), (5) $1.5 million for the Paris property, (6) $3 million for the Aspen I property, (7) $3.5 million for the Aspen II property, (8) $3 million for the New York I (three (3) bedroom property), and (9) $1.5 million for the New York II (one (1) bedroom property).

As a result of the market conditions, the Debtors filed a motion on March 20, 2009 to streamline the sale process of the Phase I Properties so as to make them a more viable player, as seller, in the relevant residential real estate market. Essentially, the motion sought advanced approval to sell the Phase I Properties, free and clear of all encumbrances, provided that the amount received was above the Reserve Prices. The Court granted this relief on April 2, 2009.

Next, the Debtors sold the Aspen II property. In April 2009, the Debtors received a $4 million offer, $500,000 more than the Reserve Price, for Aspen II. The sale closed at the end April 2009, and resulted in a $3,680,000 reduction to the Debtors' debt under the Fortress Agreement. Pursuant to the Adequate Protection Stipulation, a portion of the legal fees incurred in connection with the Aspen Colorado property were reimbursed by Fortress to the Debtors.

The Debtors also sold the Napa Lot. The sale of the Napa Lot was approved by the Bankruptcy Court by order entered on August 4, 2009, and ultimately closed on or about August 31, 2009. As result of the sale of the Napa Lot, the Debtors' estate realized $850,000, $150,000 above the Reserve Price, along with a critical option to repurchase the Napa Lot for $900,000 by January 15, 2010. As part of the Debtors' goal to preserve as many of the Properties as possible and to maintain the possibility of realizing the full value of the combined (developed and undeveloped) Napa properties, a repurchase option was highly advantageous. The repurchase option was part of the consideration offered in connection with the asset sale to Zodiac and was subsequently exercised.

## 5.4   New York Properties Refinancing

The New York Properties also were required to be sold or returned to Fortress by August 31, 2009, at or above the Reserve Price. There were no offers received by the Debtors that, after selling expenses, exceeded the Reserve Prices set in the Adequate Protection Stipulation for the New York Properties. There are not many available properties in New York City that would accommodate a destination club. The Debtors wanted to preserve the New York Properties as part of the destination club business while they continued to pursue their restructuring/sale alternatives. Accordingly, the Debtors decided to pursue a refinancing alternative (with Fortress's consent) relating to the New York Properties.

Ultimately, two (2) separate Member sponsored debtor-in-possession financings ("August DIPs") totaling in the aggregate $4.5 million were consummated. More specifically, one of the transactions involved one (1) Member loaning the Debtors $3 million to refinance and pay Fortress the Reserve Price on the three (3) bedroom unit (i.e., New York I). The second transaction involved ten (10) Members loaning the Debtors $1.5 million to refinance and pay Fortress the Reserve Price on the one (1) bedroom unit (i.e., New York II).

## 5.5   Asset Sale

The Debtors put forth considerable effort to preserve the Debtors' business as a going concern and were successful in doing so, as described above. In December 2009, the Debtors consummated a sale of substantially all of their assets ("Asset Sale") to Zodiac, who agreed to continue operating a destination club with the Properties purchased from the Debtors, and offer new memberships to the Members. The Members constitute the clear majority of unsecured claims in the Chapter 11 Cases. A substantial majority of the Members joined Zodiac's new destination club. As disclosed as part of the Asset Sale, an affiliate of Zodiac held an equity interest in Solstice.

## 5.6   Litigations

During the bankruptcy case, the Debtors, with the approval of the Bankruptcy Court, hired a contingency lawyer, Carcione, Cattermole, Dolinski, Okimoto, Stucky, Ukshini, Markowitz & Carcione LLP, to commence litigation against certain entities that the Debtors believed were largely responsible for their financial problems. On or about November 12, 2009, the Debtors commenced litigation in California State Court against the following parties: (i) Kos (former CEO and board member of Solstice); (ii) Tim Wolff (former member of Solstice's board of directors); (iii) Tim Weller (former member of Solstice's board of directors); (iv) Chad Morse (former member of Solstice's board of directors); (v) James Kime (former Comptroller of Solstice); (vi) Shay, LLC (holder of all of Solstices's Class B Equity Interest); (vii) Beale LLC; (viii) Winston & Strawn LLP (former law firm of the Debtors);

(ix) Jonathan Cohen (an attorney with defendant Winston & Strawn LLP); (x) Novogradac & Company LLP (former accounting firm of the Debtors); (xi) Jon Krabbenschmidt (accountant with defendant Novogradac & Company LLP); and (xii) Shay Kos (wife of Kos and former consultant to the Debtors).

Certain of the defendants have sought to move the litigation against them from the California State Court to the Bankruptcy Court. The litigation is in its early phase. The Debtors believe that certain of the defendants have insurance policies that might be available to pay a judgment against them.

In addition to this litigation, the Debtors commenced litigation against Kos for violations of the automatic stay with respect to actions taken by him relating to certain furniture of the Debtors. In addition, the Debtors believe that Kos has violated the automatic stay with respect to certain actions taken by him in Italy with respect to the Florence Italy property. The matter has been adjourned so the Court has not ruled on these asserted stay violations.

The proceeds generated from the Asset Sale were sufficient to repay March DIP and August DIPs in full. In addition, Fortress agreed to bifurcate its claim; the secured portion was paid in full from the Asset Sale proceeds, and the unsecured portion (a portion of the penalty fee) was subordinated to the claims of all other general unsecured creditors. The subordinated penalty claim is classified in Class 4 of the Plan.

## ARTICLE VI

## SUMMARY OF THE PLAN

THE FOLLOWING IS A SUMMARY OF SOME OF THE SIGNIFICANT ELEMENTS OF THE PLAN. THIS DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE MORE DETAILED INFORMATION SET FORTH IN THE PLAN AND THE ATTACHMENTS THERETO.

### 6.1    Overall Structure of the Plan

On the Effective Date, the Debtors shall transfer to the Liquidating Trust all of the Debtors remaining property (*i.e.*, the Liquidating Trust Assets), from which the proceeds thereof will be utilized, among other things, for the payments to Creditors in Class 3 on account of the beneficial interests obtained by them for their Allowed General Unsecured Claims. The Debtors shall relinquish any and all rights in and to the Liquidating Trust Assets which shall be transferred to the Liquidating Trust free and clear of all Claims and Liens in accordance with Section 1141 of the Bankruptcy Code. The Liquidating Trust shall be established for the purpose of liquidating assets for and on behalf of holders of Allowed General Unsecured Claims, in accordance with Treas. Reg. §301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. The Liquidating Trust Administrator shall also make the payments required by the Plan, and wind down the Debtors. The Liquidating Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein. The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the beneficiaries treated as grantors and owners of the trust.

The Classes created under the Plan and their treatment are discussed in detail in Sections 6.4 and 6.5 below.

The Plan shall become effective when the Bankruptcy Court has entered the Confirmation Order, in form and substance acceptable to the Debtors; the Confirmation Order has become final and non-appealable, and all other conditions to consummation have been satisfied. The Debtors may elect to allow the Plan to become effective even if the Confirmation Order is still subject to appeal, as long as there is no stay.

On the Effective Date, the Creditors' Committee and the Debtors will be dissolved.

### 6.2    Substantive Consolidation

The Plan contemplates and is predicated upon substantive consolidation of the Debtors into a single entity for purpose of all actions under the Plan. Entry of the Confirmation Order shall constitute approval, pursuant to Section 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the

Chapter 11 Cases for all purposes related to the Plan, including, without limitation, for purposes of voting, confirmation and distribution. On and after the Effective Date, (i) all assets and liabilities of the Debtors shall be deemed merged so that all of the assets of the Debtors shall be available to pay all of the liabilities under the Plan as if it were one company, (ii) no distributions shall be made under the Plan on account of Intercompany Claims among the Debtors, (iii) no distributions will be made under the Plan on account of any Equity Interests held by a Debtor, (iv) all guarantees of the Debtors of the obligations of any other Debtor shall be deemed eliminated so that any claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of the Debtors shall be deemed to be one obligation of the consolidated Debtors, and (v) each and every Claim filed or to be filed in the Chapter 11 Case against any of the Debtors shall be deemed filed against the consolidated Debtors, and shall be deemed one Claim against and obligation of the consolidated Debtors.

**6.3    Compromise and Settlement.**

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution, releases and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan. All Plan distributions made to creditors holding Allowed Claims in any Class are intended to be and shall be final, and no Plan distribution to the holder of a Claim in one Class shall be subject to being shared with or reallocated to the holders of any Claim in another Class by virtue of any prepetition collateral trust agreement, shared collateral agreement, subordination agreement or other similar inter-creditor arrangement. For every Member that paid cash to the Debtors prior to the Commencement Date, as a deposit for its Membership (*i.e.*, the Membership Deposits) in the Debtors' Destination Club, the Member shall have an Allowed General Unsecured Claim for the amount of the cash deposit made that was not repaid, and shall have no other Allowed General Unsecured Claim in the Chapter 11 Cases. A schedule of the Member Allowed General Unsecured Claims is attached to this Disclosure Statement as <u>Exhibit B</u>. By agreeing to this settlement, a Member will not be releasing or reducing its claim against any Person which is a non-Debtor.

The Debtors believe that the settlement is important for a number of reasons including:

**(a)**    The Debtors' counsel have examined the Solstice Membership Agreements, which have also been provided to the Creditors' Committee. Based on the Debtors' counsel's review, the Debtors believe that the members are unsecured creditors who contractually bargained for the return of the their Membership Deposits.

**(b)**    There are various forms of Solstice Membership Agreements with slightly different terms as it relates to the return of the Membership Deposits. The differences among the Membership Agreements are not significant, especially in view of the anticipated dividend in the Chapter 11 Cases. Moreover, many members have asserted that they have tort claims against the Debtors (such as a fraud in the inducement claim). The Debtors believe that their formula of fixing claims based on the dollars paid to the Debtors, which encapsulates the members contractual and tort claims, is fair and reasonable under the circumstances. Among other things, it eliminates all Member disputes as to how their particular claim should be calculated.

**(c)**    The Debtors scheduled the Members based on their Membership Deposit amounts. Most Members did not file claims, thus, implicitly accepting the formula set forth in this settlement. If the settlement is denied, the entire claims process relating to the Members would need to be restarted. This would create a material additional cost to the Debtors Estates, the Members individually, and would delay distributions to all creditors, both Member and non-member unsecured creditors.

**(d)**    The Member claims are the largest remaining claims in the Chapter 11 Cases. The fixing of these Claims through a global settlement will save the Debtors' Estates material expenses and, just as important, will expedite a distribution to all creditors by fixing a major component of the liability side of the Debtors' balance sheet.

At the Confirmation Hearing, the Debtors will seek approval of this settlement as part of confirming the Plan.

**6.4     Classification of Claims and Equity Interests**

　　　　Section 1122 of the Bankruptcy Code provides that a plan of reorganization must classify the claims against and interests in a debtor, for purposes of voting, confirmation and distributions (other than Administrative Claims and Priority Tax Claims, which, pursuant to Section 1123(a)(1) of the Bankruptcy Code, do not need to be classified). Section 1122 of the Bankruptcy Code further requires that all claims against or interests in a particular class be substantially similar to all other claims or interests in such class. The Plan classifies Claims and Equity Interests separately and provides different treatment for different Classes of Claims and Equity Interests in accordance with the Bankruptcy Code. As described more fully below, the Plan provides, separately for each Class, that holders of Allowed Claims will receive consideration based on the different rights of the holders of Claims in each Class. A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, withdrawn or otherwise resolved prior to the Effective Date.

　　　　The Debtors believe that the Plan has classified all Claims and Equity Interests in compliance with the provisions of Section 1122 of the Bankruptcy Code and applicable case law, but it is possible that a holder of a Claim or Equity Interest may challenge the Debtors' classifications, and that the Bankruptcy Court may find that a different classification is required in order to confirm the Plan. In that event, the Debtors' intend, to the extent permitted by applicable law or the Bankruptcy Court, to make such modifications to the classifications as may be appropriate to permit confirmation, and to use acceptances received in this solicitation for purposes of obtaining the approval of the reconstituted Class or Classes of which each accepting holder ultimately is deemed to be a member.

　　　　The amount of any impaired Claim ultimately allowed by the Bankruptcy Court may vary from any estimate of such impaired Claim in this Disclosure Statement, and, accordingly, the total Claims allowed by the Bankruptcy Court with respect to each impaired Class of Claims may also vary from any estimates contained herein with respect to the aggregate Claims in any impaired Class. Thus, the value of the property that ultimately will be received by a particular holder of an Allowed Claim under the Plan may be adversely or favorably affected by the aggregate amount of Claims ultimately allowed in the applicable Class.

　　　　The classification of Claims and Equity Interests and the nature of distributions to members of each Class are summarized below. The consideration, if any, provided under the Plan to holders of Claims and Equity Interests reflects an appropriate resolution of their Claims and Equity Interests, taking into account the differing nature and priority (including applicable contractual and statutory subordination) of such Claims and Equity Interests and the fair value of the Debtors' assets. In view of the deemed rejection by certain Classes, however, the Debtors will seek confirmation of the Plan pursuant to the "cramdown" provisions of the Bankruptcy Code. Specifically, Section 1129(b) of the Bankruptcy Code permits confirmation of a Chapter 11 plan in certain circumstances even if the plan has not been accepted by all impaired classes of claims and interests.

　　　　The Plan classifies Claims and Equity Interests into five (5) distinct Classes, as follows:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Other Priority Claims | Unimpaired | No (deemed to accept) |
| Class 2 | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 3 | General Unsecured Claims | Impaired | Yes |
| Class 4 | Subordinated Fortress Penalty Claim | Impaired | Yes |
| Class 5 | Equity Interests | Impaired | No (deemed to reject) |

**6.5     Treatment of Claims and Equity Interests**

(a)   **Other Priority Claims (Class 1)**

   (1)   <u>Impairment and Voting.</u> Class 1 is unimpaired by the Plan.

   (2)   <u>Distributions.</u> Except to the extent that a holder of an Allowed Other Priority Claim agrees to a different treatment, each holder of an Allowed Other Priority Claim shall receive, in full satisfaction of such unpaid Other Priority Claim, Cash in the full amount of such claim on or as soon as reasonably practicable following the later to occur of (x) the Effective Date or as soon thereafter as is reasonably practicable and (y) the date on which such Claim becomes Allowed.

   (3)   The Debtors estimate that Claims in this Class will be in the range of $0.00 to $70,000.

(b)   **Other Secured Claims (Class 2)**

   (1)   <u>Impairment and Voting.</u> Class 2 is unimpaired by the Plan.

   (2)   <u>Distributions.</u> Except to the extent that a holder of an Allowed Other Secured Claim agrees to a different treatment, each holder of an Allowed Other Secured Claim shall receive, in full satisfaction of such other unpaid Other Secured Claim, (a) the property securing such Allowed Other Secured Claim, or (b) Cash in an amount equal to the value of the property securing such Allowed Other Secured Claim.

   (3)   The Debtors estimate that Claims in this Class will be in the range of $0.00 to $50,000.

(c)   **General Unsecured Claims (Class 3)**

   (1)   <u>Impairment and Voting.</u> Class 3 is impaired by the Plan.

   (2)   <u>Distributions.</u> Except to the extent that a holder of an Allowed General Unsecured Claim agrees to a different treatment, on the Effective Date or as soon as practicable thereafter, and on subsequent Distribution Dates as determined by the Liquidating Trust Administrator, each holder of an Allowed General Unsecured Claim, shall receive its Pro Rata Share of the Liquidating Trust Assets available for distribution on account of Allowed General Unsecured Claims. The Wind Down Expense Reserve shall not be utilized to pay Allowed General Unsecured Claims until all obligations that the Wind Down Expense Reserve is intended to pay, are satisfied in full.

   (3)   The Debtors believe that there are approximately $70 to $75 million of Allowed General Unsecured Claims in this Class.

(d)   **Subordinated Fortress Penalty Claim (Class 4).**

   (1)   <u>Impairment and Voting.</u> Class 4 is impaired by the Plan. Fortress Subordinated Penalty Claim, approved by the January 13, 2010 Stipulation and Consent Order of the Bankruptcy Court in the amount of $608,264.95, is subordinated to Allowed General Unsecured Claims.

   (2)   <u>Distributions.</u> Holders of Class 4 claims will not get a distribution under the Plan until all Allowed General Unsecured Claims have been paid in full.

(e)   **Equity Interests (Class 5).**

   (1)   <u>Impairment and Voting.</u> Class 5 is impaired by the Plan.

   (2)   <u>Distributions.</u> Holders of the existing Equity Interests shall not receive or retain any distribution or payment on account of such Equity Interests. The Equity Interests shall be deemed cancelled as of the Effective Date. The equity interests held by Solstice in the other Debtors, or by any Debtor (other than Solstice) in another Debtor shall be deemed cancelled under the Plan as of the Effective Date, except to the extent requested

by Zodiac, prior to the Confirmation Date, to effectuate the Asset Sale for certain of the Debtors. Under the Asset Sale, Zodiac had the option to acquire the equity interests of a Debtor (other than Solstice) in lieu of purchasing the assets of such Debtor.

## ARTICLE VII

## IMPLEMENTATION OF THE PLAN

### 7.1    Purpose of the Liquidating Trust

On the Effective Date, the Debtors shall transfer to the Liquidating Trust, the Liquidating Trust Assets from which the proceeds thereof will be utilized, among other things, for the payments to Creditors in Class 3 on account of the beneficial interests obtained by them for their Allowed General Unsecured Claims. The Debtors shall relinquish any and all rights in and to the Liquidating Trust Assets which shall be transferred to the Liquidating Trust free and clear of all Claims and Liens in accordance with Section 1141 of the Bankruptcy Code. The Liquidating Trust shall be established for the purpose of liquidating assets for and on behalf of holders of Allowed General Unsecured Claims, in accordance with Treas. Reg. §301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. The Liquidating Trust Administrator shall also make the payments required by the Plan, and wind down the Debtors. The Liquidating Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein. The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes and, to the extent permitted by applicable law, for state and local income tax purposes, with the beneficiaries treated as grantors and owners of the trust.

### 7.2    Liquidating Trust Administrator; Termination of the Board and Officers of the Debtors

The retention of the Liquidating Trust Administrator shall be pursuant to the Liquidating Trust Agreement acceptable in all respects to the Debtors, substantially in the form annexed to the Plan as Exhibit A. Upon the recommendation of the Creditors' Committee the Liquidating Trust Administrator shall be U.S. Bank National Association, Corporate Trust Services. The Liquidating Trust Administrator shall be deemed to have been appointed as the Debtors' Estates' representative by the Bankruptcy Court pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code.

In the event that the Liquidating Trust Administrator resigns, is removed, terminated or otherwise unable to serve as the Liquidating Trust Administrator, then the Advisory Board shall have the right to select a successor. Any successor Liquidating Trust Administrator appointed shall be bound by and comply with the terms of the Plan, the Confirmation Order and the Liquidating Trust Agreement.

On the Effective Date, the Liquidating Trust Administrator will be the sole authorized representative and signatory of the Liquidating Trust. The powers, authority, responsibilities and duties of the Liquidating Trust Administrator shall be governed by the Plan, the Confirmation Order, the Liquidating Trust Agreement and the Bankruptcy Code. The Liquidating Trust Administrator may execute, deliver, file or record such documents, instruments, releases and other agreements, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Liquidating Trust. On the Effective Date, the board of directors and the officers of the Debtors shall no longer be in control over the Debtors' assets, all of which shall be transferred to the Liquidating Trust. In addition, the Liquidating Trust Administrator shall be in full control over the wind down of the Debtors. To be specific, after the Effective Date, the Board of Directors or the officers of the Debtors shall not take any action relating to the Debtors. All employees of the Debtors, not otherwise terminated by the Effective Date, shall be deemed terminated as of the Effective Date, and all employment contracts with the Debtors not otherwise terminated by the Effective Date, shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code.

### 7.3    Transfer of Assets

The transfer of the Liquidating Trust Assets to the Liquidating Trust will be made for the benefit of the beneficiaries thereof, but only to the extent such beneficiaries are entitled to distributions under the Plan. Upon

completion of the transfer of the Liquidating Trust Assets into the Liquidating Trust, the Debtors will have no interest in, or with respect to, Liquidating Trust Assets, or the Liquidating Trust. For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trust Administrator and the beneficiaries) will treat the transfer of assets to the Liquidating Trust in accordance with the terms of the Plan (other than any amounts allocated as of the Effective Date for the funding of the Wind Down Expense Reserve and the Carve-Out), as a transfer to the beneficiaries, followed by a transfer by such beneficiaries to the Liquidating Trust, and the beneficiaries will be treated as the grantors and owners thereof.

**7.4    Valuation of Assets**

120 days after the Effective Date, or as soon as practicable thereafter, the Liquidating Trust Administrator shall apprise the beneficiaries of the Liquidating Trust of the estimated value of the Liquidating Trust Assets (excluding any amounts allocated as of the Effective Date for the Wind Down Expense Reserve and the Carve-Out). The valuation shall be used consistently by all parties (including the Liquidating Trust Administrator and the beneficiaries of the Liquidating Trust) for all federal income tax purposes. The purpose of the valuation is to comply with the general criteria for obtaining an IRS ruling that an entity created pursuant to a confirmed plan of reorganization under Chapter 11 of the Bankruptcy Code will be classified as a liquidating trust. Any dispute regarding the valuation of these assets shall be resolved by the Bankruptcy Court, provided, however, that the determination of the Liquidating Trust Administrator shall be reviewed under the standards governing decisions of the Board of Directors of a corporation formed under the laws of the state of Delaware.

**7.5    Responsibilities and Authority of the Liquidating Trust Administrator**

The responsibilities and authority of the Liquidating Trust Administrator shall include (a) calculating and implementing all distributions for Class 3; (b) administering and paying taxes, including, among other things, (i) filing of tax returns (including tax returns of the Debtors for periods prior to the Effective Date), and (ii) representing the interest and account of the Liquidating Trust before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit; (c) periodic reporting to the beneficiaries of the Liquidating Trust of the status of the General Unsecured Claims resolution process, distributions on Allowed General Unsecured Claims, and prosecution of Causes of Action; (d) liquidating the assets of the Liquidating Trust and providing payments to any Person in accordance with the provisions of the Plan; (e) retaining and paying at normal and customary rates or contingency fee basis, on a monthly basis, professionals in connection with the Liquidating Trust Administrator's duties; (f) reviewing, analyzing, and objecting to General Unsecured Claims, including the prosecution of such objections as described more fully in the Liquidating Trust Agreement; (g) distributing information statements as required for federal income tax and other applicable tax purposes; and (f) such other responsibilities as may be vested in the Liquidating Trust Administrator pursuant to the Plan, Liquidating Trust Agreement or Bankruptcy Court order or as may be necessary and proper to carry out the provisions of the Plan.

**7.6    Powers of the Liquidating Trust Administrator**

The powers of the Liquidating Trust Administrator to administer the Liquidating Trust shall, without any further Bankruptcy Court approval in each of the following cases, include, without limitation, (a) the power to invest funds, in accordance with Section 345 of the Bankruptcy Code, in, and withdraw, make distributions and pay taxes and other obligations owed by the Liquidating Trust from funds held by the Liquidating Trust Administrator in accordance with the Plan and Liquidating Trust Agreement, (b) the power to engage and compensate without prior Bankruptcy Court order or approval employees and Professional Persons to assist the Liquidating Trust Administrator with respect to his responsibilities, (c) the power to pursue, prosecute, resolve and compromise and settle Causes of Action on behalf of or against the Liquidating Trust without prior Bankruptcy Court approval but in accordance with the Liquidating Trust Agreement, (d) the power to object to claims, including, without limitation, the power to subordinate and recharacterize claims by objection, motion, or adversary proceeding, and (e) such other powers as may be vested in or assumed by the Liquidating Trust Administrator pursuant to the Plan, the Liquidating Trust Agreement, Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan. Except as expressly set forth herein and in the Liquidating Trust Agreement, the Liquidating Trust Administrator, on behalf of the Liquidating Trust, shall have absolute discretion to pursue or not to pursue any and all claims, rights, Causes of Action, as he determines is in the best interests of the beneficiaries and consistent with the purposes of the Liquidating Trust, and shall have no liability for the outcome of his decision, other than those decisions constituting

gross negligence or willful misconduct. The Liquidating Trust Administrator may incur any reasonable and necessary expenses in liquidating and converting the assets in the Liquidating Trust to Cash.

### 7.7    Enforcement of Causes of Action

Pursuant to Bankruptcy Code Section 1123(b), the Liquidating Trust Administrator, on behalf of and for the benefit of the Liquidating Trust, shall be vested with and shall retain and may enforce any and all Causes of Action held by, through, or on behalf of the Debtors, [the Creditors' Committee] and/or the Estate against any other Person, arising before the Effective Date that have not been fully resolved or disposed of prior to the Effective Date, whether or not such Claims or Causes of Action are specifically identified in the Disclosure Statement accompanying the Plan and whether or not litigation with respect to same has been commenced prior to the Effective Date. With respect to the Avoidance Actions, the Debtors have not yet undertaken a detailed analysis of the nature and amount of any Avoidance Actions and therefore do not have a specific list which includes all of the Avoidance Actions that may be brought by the Liquidating Trust Administrator on behalf of the Liquidating Trust for the benefit of all holders of Allowed General Unsecured Claims. For the avoidance of doubt, this Plan preserves and transfers to the Liquidating Trust Causes of Actions that Exist as the Effective Date.

The recoveries from the Causes of Action will be deposited into the Liquidating Trust.

### 7.8    Compensation of Liquidating Trust Administrator

The Liquidating Trust Administrator shall fully comply with the terms, conditions and rights set forth in the Plan, Confirmation Order and the Liquidating Trust Agreement. The Liquidating Trust Administrator shall not be required to file a fee application to receive compensation. The compensation for the Liquidating Trust Administrator is set forth in Exhibit A to the Liquidating Trust Agreement.

### 7.9    Retention and Payment of Professionals

The Liquidating Trust Administrator shall have the right to retain the services of attorneys, accountants, and other professionals and agents, including, without limitation, the Professional Persons in the discretion of the Liquidating Trust Administrator to assist and advise the Liquidating Trust Administrator in the performance of his duties and compensate such professionals from the assets of the Liquidating Trust. Any fees (including filing fees and other expenses) if any, of the Liquidating Trust Administrator may be paid from the Liquidating Trust.

### 7.10    Limitation on Liability of the Liquidating Trust Administrator

The Liquidating Trust Administrator and his professionals shall be entitled to indemnification out of the assets of the Liquidating Trust against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that the Liquidating Trust Administrator or his professionals may incur or sustain by reason of being or having been a Liquidating Trust Administrator or professional of the Liquidating Trust Administrator or for performing any functions incidental to such service; however, the foregoing shall not relieve the Liquidating Trust Administrator or his professional from liability for bad faith, willful misfeasance, reckless disregard of duty, gross negligence, fraud, self-dealing or breach of financial duty.

### 7.11    Termination of the Liquidating Trust

The existence of the Liquidating Trust and the authority of the Liquidating Trust will commence as of the Effective Date and will remain and continue in full force and effect until all of the Liquidating Trust Assets are liquidated in accordance with the Plan, the funds in the Liquidating Trust have been completely distributed in accordance with the Plan, all tax returns and any other filings or reports have been filed with the appropriate state or federal regulatory authorities and the Order closing the Chapter 11 Cases is a Final Order. At such time as the Liquidating Trust has been fully administered (i.e., when all things requiring action by the Liquidating Trust Administrator have been done, and the Plan has been substantially consummated) and in all events within sixty (60) days after the final Distribution Date, the Liquidating Trust Administrator will file an application for approval of its final report and the entry of the final decree by the Bankruptcy Court.

**7.12    Appointment of Advisory Board**

A creditor "Advisory Board" shall be created on the Effective Date. The Advisory Board shall consist of the members of the Creditors' Committee willing to serve on the Advisory Board. The Advisory Board shall adopt bylaws, as it may deem appropriate. In the event of any vacancies, the remaining members shall have the authority to fill such vacancy. In the event any position is vacant for more than thirty (30) days, the Liquidating Trust Administrator shall have the authority, without need of notice to the remaining members of the Advisory Board, to fill such vacancy. Upon certification by the Liquidating Trust Administrator that all Causes of Action and Disputed General Unsecured Claims have been concluded and all distributions in accordance with the Plan have been made, the Advisory Board shall be disbanded without need for further notice or action.

**7.13    Rights and Powers of the Advisory Board**

The Advisory Board shall be entitled to monitor the status and progress of Disputed Claims and Causes of Action. The Advisory Board may meet and/or consult periodically with the Liquidating Trust Administrator and keep itself apprised of the affairs of the Liquidating Trust. The Advisory Board shall have the authority to remove the Liquidating Trust Administrator and appoint a successor Liquidating Trust Administrator in accordance with the terms of the Liquidating Trust Agreement.

**7.14    Exculpation**

No Holder of a Claim or any other party-in-interest will have, or otherwise pursue, any Claim or Cause of Action against the Liquidating Trust Administrator, the Advisory Board, the Liquidating Trust or the employees or professionals thereof (solely in the performance of their duties thereas), for making payments in accordance with the Plan or for fulfilling any functions incidental to implementing the provisions of the Plan or the Liquidating Trust, except for any acts or omissions to act that are the result of willful misconduct or gross negligence.

**7.15    Distributions Under the Plan**

    **(a)**    *Method of Distributions*

        **(1)**    Distributions to holders of Claims against the Debtors shall be made by the Liquidating Trust Administrator in accordance with the terms of the Plan and the Liquidating Trust Agreement.

        **(2)**    All payments due under the Plan, other than payments to be made on account of Allowed General Unsecured Claims, shall be made by the Liquidating Trust Administrator from the Wind Down Expense Reserve.

        **(3)**    At reasonable periodic intervals determined by the Liquidating Trust Administrator, in his sole discretion, the Liquidating Trust Administrator shall make distributions to holders of Class 3 claims in accordance with the Liquidating Trust Agreement and the Plan.

    **(b)**    *Distributions on Allowed General Unsecured Claims*

All Allowed General Unsecured Claims held by a single creditor shall be aggregated and treated as a single Claim. At the written request of the Liquidating Trust Administrator, any creditor holding multiple Allowed General Unsecured Claims shall provide to the Liquidating Trust Administrator, as the case may be, a single address to which any distributions shall be sent.

    **(c)**    *Date of Distributions*

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**(d)**     *Delivery of Distributions*

Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtors or its agents, as applicable, unless the Debtors or the Liquidating Trust Administrator have been notified in writing of a change of address, including, without limitation, by the filing of a proof of Claim by such holder that contains an address for such holder different than the address of such holder as set forth on the Schedules. A holder of an Allowed Claim shall not receive a distribution under this Plan unless it provides to the Liquidating Trust Administrator, to the extent required, a tax identification number. Nothing in the Plan shall require the Liquidating Trust Administrator to attempt to locate any holder of an Allowed Claim.

**(e)**     *Unclaimed Distributions*

All distributions under the Plan that are unclaimed for a period of six (6) months after distribution thereof shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code and any entitlement of any holder of any Claims to such distributions and future distributions shall be extinguished and forever barred and such unclaimed distributions shall be redistributed *pro rata* to the holders of Allowed Claims.

**(f)**     *Distribution Record Date*

With respect to holders of all General Unsecured Claims, on the Distribution Record Date, the Claims register shall be closed and any transfer of any Claim therein shall be prohibited. The Liquidating Trust Administrator shall have no obligation to recognize any transfer of any such Claims occurring after the close of business after such date.

**(g)**     *Manner of Payment*

At the option of the Liquidating Trust Administrator, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

**(h)**     *De Minimus Distributions*

No payment of Cash less than $50.00 shall be made to any holder of an Allowed Claim unless a request therefor is made in writing to the Liquidating Trust Administrator.

**(i)**     *Setoffs and Recoupment*

The Debtors may, but shall not be required to, setoff against or recoup from any Claim and the payments to be made pursuant to the Plan in respect of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trust of any such Claim it may have against such Creditor.

**(j)**     *Distributions After Effective Date*

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

**7.16    <u>Cancellation of Existing Agreements and Equity Interests</u>**

Except (a) as otherwise expressly provided in the Plan, (b) with respect to executory contracts or unexpired leases that have been assumed and assigned by the Debtors, or (c) for purposes of evidencing a right to distributions under the Plan, on the Effective Date, all Equity Interests and other instruments evidencing any Claims against the Debtors shall be deemed automatically cancelled without further act or action under any applicable agreement, law, regulation, order or rule.

**7.17** **Wind Down Reserve**

The Plan requires that the Liquidating Trust Administrator establish a Wind Down Reserve to pay (a) Administrative Expenses accrued through the Effective Date, (b) priority tax claims, (c) the amounts due pursuant to Section 2.4 of the Plan, (d) the amounts due for Allowed Claims in Classes 1 and 2, and (e) for expenses relating to the wind down of the Debtors. The Wind Down Expense Reserve shall be administered by the Liquidating Trust Administrator. The Carve Out shall be utilized by the Liquidating Trust Administrator to pay the professional fees described in Section 1.1(d) of the Plan of the definition of Administrative Expense Claim.

**7.18** **Taxes and Tax Reporting**

**(a)** **Tax Treatment of the Liquidating Trust**

**(1)** **Grantor Trust Tax Status**

The Plan provides that the Liquidating Trust is established as a liquidating trust under Treasury Regulation § 301.7701-4(d). Accordingly, the Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes.

**(2)** **Allocation of the Liquidating Trust's Taxable Income, Gain, Loss, Deductions or Credits**

For federal income tax purposes, participants in the Liquidating Trust shall be allocated items of income, gain, loss, deduction or credit of the Liquidating Trust in a manner, to be determined by the Liquidating Trust Administrator, that reflects their respective interests in the interim and final distributions to be made by the Liquidating Trust. Each participant in the Liquidating Trust shall be required to take into account such holder's allocable share of the income, gain, loss, deduction or credit in determining the holder's taxable income for federal income tax purposes. The Liquidating Trust shall be responsible for distributing information statements to the trust participants, setting forth, *inter alia*, each such participant's allocable share of the income, gain, loss, deduction or credit.

**(b)** **Withholding and Reporting**

In connection with the Plan and all instruments issued in connection herewith and distributions hereunder, the Debtors and the Liquidating Trust Administrator shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.

**(c)** **Exemption from Transfer Taxes**

To the greatest extent permitted under applicable law, pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of debt or equity securities under the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

**7.19** **Rejection of Any Remaining Executory Contracts and Unexpired Leases**

Pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that exist between any of the Debtors and any person or entity shall be deemed rejected by the Debtors as of the Effective Date, except for any executory contract or unexpired lease (a) that has been rejected by a Final Order of the Bankruptcy Court prior to the Effective Date, (b) that has been assumed or assumed and assigned pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, or (c) as to which a motion for approval of the assumption of such executory contract or unexpired lease has been filed and served prior to the Confirmation Date.

**7.20** **Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan**

Proofs of Claim for damages arising out of the rejection of an executory contract or unexpired lease pursuant to Section 8.1 of the Plan must be filed with the Bankruptcy Court and served on the Liquidating Trust Administrator, no later than forty-five (45) days after notice of entry of the Confirmation Order. **If such proofs of Claim are not filed within such time, such Creditor will be deemed forever barred from asserting any such claim against the Debtors and their Estates or the Liquidating Trust or the assets in the Liquidating Trust.**

ARTICLE VIII

EFFECT OF CONFIRMATION

**8.1** **Vesting of Assets**

On the Effective Date, the Debtors, their properties and interests in property and their operations shall be released from the custody and jurisdiction of the Bankruptcy Court, and all property of the Debtors' Estates shall continue to vest in the Liquidating Trust free and clear of all Claims and Liens, except as provided in the Plan.

**8.2** **Binding Effect**

Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtors and such holder's respective successors and assigns, whether or not the Claim or interests including any Equity Interest of such holder is impaired under the Plan, whether or not such holder has accepted the Plan and whether or not such holder is entitled to a distribution under the Plan.

**8.3** **Injunction or Stay**

**Except as otherwise expressly provided herein or in the Confirmation Order, all Persons or entities who have held, hold or may hold Claims against or Equity Interests in the Debtors are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against the Debtors, the Liquidating Trust or the Liquidating Trust Administrator (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any of the Debtors, the Liquidating Trust or the Liquidating Trust Administrator with respect to such Claim or Equity Interest, (c) creating, perfecting or enforcing any encumbrance of any kind against the Debtors, the Liquidating Trust or the Liquidating Trust Administrator or against the property or interests in property of any of the Debtors or the Liquidating Trust, (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due to the Debtors, the Liquidating Trust or the Liquidating Trust Administrator or against the property or interests in property of the Debtors or the Liquidating Trust, (e) acting or proceeding in any manner in any place whatsoever, that does not conform to or comply with the provisions of the Plan, (f) commencing, continuing, or asserting in any manner any action or other proceeding of any kind with respect to any claims which are extinguished or released pursuant to the Plan, and (g) taking any actions to interfere with the implementation or consummation of the Plan.**

**8.4** **Terms of Injunction or Stay**

**All injunctions or stays arising under or entered during the Chapter 11 Cases under Section 105 or 362 of the Bankruptcy Code, or otherwise, that are in existence on the Confirmation Date shall remain in full force and effect until the Effective Date. On or after the Effective Date, the provisions of the Plan shall protect the Debtors, the Liquidating Trust and the assets transferred to the Liquidating Trust.**

**8.5**    **Reservation of Causes of Action/Reservation of Rights**

Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or Causes of Action that the Debtors, or the Liquidating Trust may have or may choose to assert against non-Debtor Persons.

**8.6**    **Exculpation**

None of the Debtors, the Liquidating Trust Administrator, the Creditors' Committee, or any of such parties' respective officers, directors, managers, members accountants, financial advisors, investment bankers, agents, restructuring advisors, attorneys and representatives (solely in their capacity as officers, directors, managers, members, accountants, financial advisors, investment bankers, agents, restructuring advisors, attorneys, consultants and representatives) shall have or incur any liability for any Claim, Cause of Action or other assertion of liability for any act taken or omitted to be taken in connection with, or arising out of, the Chapter 11 Cases, the formulation, dissemination, confirmation, consummation or administration of the Plan, property to be distributed under the Plan or any other act or omission in connection with the Chapter 11 Cases, the Plan, the Disclosure Statement or any contract, instrument, document or other agreement related thereto; provided, however, that the foregoing shall not affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct or gross negligence.

The Debtors believe that their officers and directors are entitled to the exculpation for the conduct described above. In particular, the exculpation only applies to postpetition acts, and carves out gross negligence or fraud. Moreover, every "out of the ordinary" business action taken by the Debtors during the pendency of the Chapter 11 Cases was done on proper notice to creditors and after obtaining Bankruptcy Court approval. In addition, the Debtors believe that the officers and directors are entitled to indemnity protection for these postpetition acts, and such Claims are entitled to an administrative priority ahead of unsecured creditors. The failure to deal with this issue now, will lead to complications in reserving for such contingent administrative claims and, thus, create additional expense and delay distributions to Class 3 (General Unsecured Claims).

**ARTICLE IX**

**CERTAIN RISK FACTORS**

THE HOLDERS OF CLAIMS AGAINST ANY DEBTOR SHOULD READ AND CAREFULLY CONSIDER THE FOLLOWING FACTORS, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT AND THE DOCUMENTS DELIVERED HEREWITH OR INCORPORATED BY REFERENCE HEREIN BEFORE VOTING TO ACCEPT OR TO REJECT THE PLAN.

**9.1**    **Nature of Financial Information**

Although the Debtors used best efforts to ensure the accuracy of the financial information provided herein or attached hereto, such information has not been audited and is based upon an analysis of data provided by the Debtors at the time of preparation of the Plan and this Disclosure Statement. Although the Debtors believe that such financial information fairly reflects the finances of the Debtors, the Debtors do not represent or warrant that the information contained herein and attached hereto is without inaccuracies.

**9.2**    **Certain Bankruptcy Law Considerations–Alternatives to the Plan**

After careful review and consideration of the Debtors' prospects and estimated recoveries if the Chapter 11 Cases were converted to ones under Chapter 7 of the Bankruptcy Code, [and after consultation with the Creditors' Committee,] the Debtors have concluded that the recovery to the Debtors' creditors will be maximized through a liquidating plan of reorganization (*i.e.*, the Plan). There is also a risk that an alternative plan of reorganization could be proposed on less favorable terms. Under any of these possible scenarios, the holders of Allowed General Unsecured Claims (Class 3) might receive less than they will under the Plan.

### 9.3 Possible Adverse Effects from Delay

Any delays of Confirmation or the Effective Date could result in, among other things, increased Professional Fee Claims and other Administrative Claims. Delay could further endanger the ultimate approval of the Plan by the Bankruptcy Court.

### 9.4 Possible Adverse Effects from Modification of the Plan

The Debtors have specifically reserved in the Plan the right to modify its terms in order to obtain confirmation. Any such modifications could result in a less favorable treatment of any non-accepting Class or Classes, as well as of any Classes junior to such non-accepting Classes.

### 9.5 Unknown Claims

It is possible that there are Claims of which the Debtors are not aware at this time. There can be no assurance that recoveries by the Debtors' creditors will not be materially and adversely affected by any such unknown Claims. Note, however, that the Bar Date for filing proofs of claim for "General Claims" in these Chapter 11 Cases was August 14, 2009, and September 11, 2009 or December 9, 2009 (with respect to SRL) for "Governmental Claims".

### 9.6 Dilution

No final determination has been made as to which Claims will be Disputed Claims, and it is possible that the number of Disputed Claims may be material and that the amounts allowed in respect of Disputed Claims may be materially in excess of the estimates of Allowed Claims used to develop the Plan. The holders of Allowed Claims are subject to the risk of dilution if actual Allowed Claims exceeds such estimates. Accordingly, distributions to the holders of Allowed Claims are at risk of being adversely affected by the total amount of Allowed Claims.

### 9.7 Liquidation of Non-Cash Assets

The Liquidating Trust Administrator's ability to make the distributions required under the Plan depends in part upon the amounts realized from the Debtors' non-cash assets (e.g., Causes of Action) and the timing of receipt of such amounts. The Liquidating Trust Administrator shall endeavor to maximize the value of the assets transferred to the Liquidating Trust for the benefit of its participants. However, the value of the Debtors' non-cash assets is inherently uncertain, and may vary as a result of a number of factors, including litigation outcomes and other factors beyond the Liquidating Trust Administrator's control. The Debtors and the Liquidating Trust Administrator are not making any representation or warranty as to the timing or amount of any distributions.

## ARTICLE X

## LIQUIDATING TRUST MATTERS

### 10.1 Issuance and Resale of Securities

Section 1145(a)(1) of the Bankruptcy Code exempts the offer or sale of securities pursuant to a plan of reorganization from the registration requirements of section 5 of the Securities Act and from registration under state and local securities laws if the following conditions are satisfied: (i) the securities are issued by a debtor or its affiliate or successor under a plan of reorganization; (ii) the recipients of the securities hold a claim against, an interest in, or a claim for an administrative expense against, the debtor; and (iii) the securities are issued in exchange for the recipients' claims against or interests in the debtor, or principally in such exchange and partly for cash or property. In reliance upon this exemption, the interests in the Liquidating Trust to be issued on the Effective Date, and the transfer of such interests to the holders of certain Allowed Claims on the Effective Date in exchange for such Allowed Claims, generally will be exempt from the registration requirements of the Securities Act and state and local securities laws. In reliance on such exemption, the Debtors have not filed a registration statement under

the Securities Act or any other federal or state laws with respect to securities offered pursuant to the Disclosure Statement or sold pursuant to the Plan.

THE DISCUSSION ABOVE IS A SUMMARY OF REGISTRATION REQUIREMENTS OF THE SECURITIES LAWS ON ISSUANCE AND RESALE OF SECURITIES RECEIVED UNDER THE PLAN. THE EFFECTS MAY VARY BASED ON YOUR INDIVIDUAL CIRCUMSTANCES. THE SEC HAS NOT REVIEWED OR PASSED ON ANY ASPECT OF THESE MATTERS. YOU ARE URGED TO CONSULT WITH YOUR ATTORNEYS ON FEDERAL, STATE AND FOREIGN SECURITIES LAW REQUIREMENTS.

**10.2** **Non-Transferability of Liquidating Trust Interests**

Under the Plan, participant's interest in the Liquidating Trust will be non-transferable, except with respect to the following transfers: (a) transfers under the laws of descent or intestate succession, including transfers from an estate or testamentary trust; and (b) transfers by operation of law or by order of a court of competent jurisdiction. In respect of such transfers, the transferor shall provide the Liquidating Trust Administrator with written notice thirty (30) days prior to the proposed transfer, including all pertinent facts and, if applicable, documents relating to the transfer. The Liquidating Trust Administrator shall approve or disapprove the transfer and impose any conditions with respect to the transfer that the Liquidating Trust Administrator deems necessary or advisable in its sole discretion. The Liquidating Trust Administrator may require from the transferor or counsel to the Liquidating Trust (at his option) an opinion, in form and substance satisfactory to the Liquidating Trust Administrator, that the transfer will not cause the Liquidating Trust to be taxable as a corporation for federal income tax purposes. The Liquidating Trust Administrator may require the transferor to reimburse the Liquidating Trust for any expenses incurred in connection with the proposed transfer, whether or not approved. The Liquidating Trust Administrator shall determine in his sole discretion and record on the books and records of the Liquidating Trust the effective date of any transfer. Any transfer not approved pursuant to the procedures set forth herein shall be null and void. Any transfer so approved shall be a "Permitted Transfer." Upon a Permitted Transfer, the transferee shall be admitted as a participant of the Liquidating Trust, shall succeed to the transferring participant's interest, and the Liquidating Trust Administrator shall record on the books and records of the Liquidating Trust such transfer and new participant.

**ARTICLE XI**

**CERTAIN FEDERAL INCOME TAX CONSEQUENCES**

A summary description of certain income tax consequences of the Plan is provided below. The description is for informational purposes only, and, due to a lack of definitive judicial or administrative authority or interpretation, substantial uncertainties exist with respect to various tax consequences of the Plan as discussed herein. Only the principal consequences of the Plan for certain Debtors and for holders of Claims who are entitled to vote to accept or reject the Plan are discussed below. This summary does not purport to address all of the federal income tax consequences that may be applicable to the Debtors or to any particular holder in light of such holder's own individual circumstances. This summary does not address the federal income tax consequences of the Plan to holders of claims that may be subject to special rules, such as foreign persons, S corporations, insurance companies, financial institutions, regulated investment companies, broker-dealers and tax-exempt organizations. This summary does not discuss foreign, state, local, estate or gift tax consequences of the Plan, nor does it discuss federal income tax consequences to holder of Claims or Equity Interests being satisfied in full or otherwise Unimpaired under the Plan or not receiving any recovery under the Plan. No opinion of counsel has been sought or obtained with respect to any tax consequences of the Plan. No rulings or determinations of the IRS or any other tax authorities have been sought or obtained with respect to the tax consequences of the Plan, and the discussion below is not binding upon the IRS or such other authorities. The Debtors and the Liquidating Trust Administrator are not making any representations regarding the particular tax consequences of the confirmation and consummation of the Plan as to the holder of any Claim or Equity Interests, and are not rendering any form of legal opinion as to such tax consequences.

The discussion of federal income tax consequences below is based on the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"), the Treasury Regulations promulgated thereunder, judicial decisions, and published positions of the IRS and other applicable authorities, all as in effect on the date hereof and all of which is subject to change – *e.g.*, legislative, judicial or administrative changes – possibly with retroactive effect.

EACH AND EVERY HOLDER OF A CLAIM OR EQUITY INTEREST IS STRONGLY URGED TO CONSULT A PROFESSIONAL TAX ADVISOR REGARDING THE FEDERAL, STATE AND LOCAL, AND ANY FOREIGN, TAX CONSEQUENCES OF THE TRANSACTIONS DESCRIBED HEREIN AND THE PLAN.

## 11.1    Federal Tax Consequences to the Debtors and Equity Interest Holders

It is anticipated that the consummation of the Plan will not result in any federal income tax liability on the part of the Debtors. Solstice must report the amount of cancellation of debt ("COD") income and other tax items on its final federal income tax return and on the Schedules K-1 issued to Equity Interest holders for taxable periods through the Effective Date. COD income is the amount by which the indebtedness of a taxpayer that is discharged exceeds any consideration given by the taxpayer in exchange therefor. Certain statutory or judicial exceptions can apply to limit the amount of COD income that is included in gross income for federal income tax purposes (such as where the discharge occurs in a bankruptcy case involving the taxpayer under certain circumstances or the payment of the canceled debt would have given rise to a tax deduction).

As a result of the discharge and satisfaction of Claims pursuant to the Plan, the Debtors may incur significant COD income. Such COD income must be allocated among the Equity Interest holders. The Debtors do not offer an opinion as to any federal, state, or local tax consequences to the Equity Interest holders that may result from the Debtors' allocation of COD income to the Equity Interest holders, or from any other tax consequences to the Equity Interest holders arising in connection with the Plan or otherwise.

Pursuant to the Plan, the transfer of the Liquidating Trust Assets to the Liquidating Trust will be made for the benefit of the beneficiaries thereof, but only to the extent such beneficiaries are entitled to distributions under the Plan. Upon completion of the transfer of the Liquidating Trust Assets into the Liquidating Trust, the Debtors will have no interest in, or with respect to, Liquidating Trust Assets, or the Liquidating Trust. For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trust Administrator and the beneficiaries) will treat the transfer of assets to the Liquidating Trust in accordance with the terms of the Plan (other than any amounts allocated as of the Effective Date for the funding of the Wind Down Expense Reserve and the Carve-Out), as a transfer to the beneficiaries, followed by a transfer by such beneficiaries to the Liquidating Trust, and the beneficiaries will be treated as the grantors and owners thereof.

The transfer of the Debtors' assets pursuant to the Plan will constitute a taxable disposition of such assets. Such transfers will not result in any federal income tax liability to the Debtors.

EACH AND EVERY EQUITY INTEREST HOLDER IS STRONGLY URGED TO CONSULT A PROFESSIONAL TAX ADVISOR REGARDING THE FEDERAL, STATE AND LOCAL, AND ANY FOREIGN, TAX CONSEQUENCES OF THE TRANSACTIONS DESCRIBED HEREIN AND IN THE PLAN.

## 11.2    Consequences to Holders of Certain Allowed Claims

### (a)    Gain or Loss

Pursuant to the Plan, the Debtors will transfer all of their assets, either directly or indirectly, to holders of Allowed Claims in satisfaction and discharge of such Allowed Claims.

In general, each holder of an Allowed Claim will realize gain or loss in an amount equal to the difference between (i) the "amount realized" by such holder in satisfaction of its Claim (other than any Claim for accrued but unpaid interest) and (ii) such holder's adjusted tax basis in such Claim (other than any Claim for accrued but unpaid interest). In general, the "amount realized" by a holder will equal the sum of any cash and the aggregate fair market value of any other property received by such holder pursuant to the Plan (for example, such holder's undivided beneficial interest in the assets of its respective Debtor(s), which are then deemed contributed to the Liquidating Trust). In general, any gain realized by a holder will be recognized for federal income tax purposes, and will be treated as capital gain or ordinary income based on the particular circumstances of the holder. Whether any loss

realized by a holder is recognized for federal income tax purposes, and the treatment of such loss if recognized, depends on the particular circumstances of the holder.

The Debtors do not offer an opinion as to any federal, state and local, or other tax consequences to holders of Claims as a result of the confirmation and execution of the Plan. HOLDERS OF CLAIMS ARE STRONGLY URGED TO CONSULT A PROFESSIONAL TAX ADVISOR REGARDING THE FEDERAL, STATE AND LOCAL, AND ANY FOREIGN, TAX CONSEQUENCES OF THE TRANSACTIONS DESCRIBED HEREIN AND IN THE PLAN.

### (b)    Distribution in Discharge of Accrued Unpaid Interest

Pursuant to the Plan, a distribution received in respect of Allowed Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest. However there is no assurance that the IRS would respect such allocation for federal income tax purposes. In general, to the extent that an amount received (whether stock, cash or other property) by a holder of debt is received in satisfaction of interest that accrued during its holding period, such amount will be taxable to the holder as interest income if not previously included in the holder's gross income. Conversely, a holder generally recognizes a deductible loss to the extent that it does not receive payment of interest that has previously been included in its income. Holders of Claims are urged to consult with their tax advisors regarding the allocation of consideration and deductibility of unpaid interest.

### (c)    Information Reporting and Withholding

All distributions to holders of Allowed Claims under the Plan are subject to any applicable withholding tax requirements. Under federal income tax law, interest, dividends, and other reportable payments, may, under certain circumstances, be subject to "backup withholding," currently at a rate of 28% but subject to adjustment in future years. Backup withholding generally applies if the holder (a) fails to furnish its social security number or other taxpayer identification number ("TIN"), (b) furnishes an incorrect TIN, (c) fail properly to report interest or dividends, or (d) under certain circumstances, fails to provide a certified statement, signed under penalty of perjury, that the TIN provided is its correct number and that it is not subject to backup withholding. Backup withholding is not an additional tax but merely an advance payment, which may be refunded to the extent it results in an overpayment of tax. Certain persons are exempt from backup withholding, including, in certain circumstances, corporations and financial institutions.

### (d)    Holding Participant Interests in the Liquidating Trust

The Liquidating Trust is expected to be treated as a partnership for federal tax purposes. Creditors that are participants of the Liquidating Trust will be allocated items of income, gain, loss, deduction and credit of the Liquidating Trust in a manner, to be determined by the Liquidating Trust Administrator, that reflects their respective interests in the interim and final distributions to be made by the Liquidating Trust. These respective interests may shift from time-to-time as the result of the disallowance of Disputed Claims. Each participant of the Liquidating Trust will be required to take into account its allocable share of the Liquidating Trust's income, gain, loss, deduction or credit in determining its taxable income for federal income tax purposes. The Liquidating Trust Administrator will be responsible for filing informational returns on behalf of the Liquidating Trust and distributing information statements to the participants of the Liquidating Trust setting forth each participant's allocable share of the Liquidating Trust's income, gain, loss, deduction or credit. Each participant will be taxed on its allocable share of the Liquidating Trust income for the taxable year regardless of the amount, if any, distributed by the Liquidating Trust to such participant in such taxable year. The Liquidating Trust will initially hold its assets at a tax basis equal to the fair market value of the assets on the Effective Date.

Participants of the Liquidating Trust will have an initial tax basis equal to the fair market value of the participant's interests on the Effective Date. Participant's tax bases will increase to reflect allocations of income, gain or credit; will decrease to reflect the allocation of loss or deduction; and will decrease to reflect distributions. Distributions of money by the Liquidating Trust to a participant generally are not taxable to the participant unless the amount of such distributions exceeds the participant's adjusted basis in the participant's interest in the Liquidating Trust. A participant will recognize gain to the extent that cash distributions exceed the tax basis of the participant's interest with respect to which the cash was distributed. Such gain will be treated as if realized from the

disposition of the participant's interest. Participants will recognize loss, as if from the disposition of their interests, to the extent of any tax basis remaining in their interests following final distributions required under the Plan.

**THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE ABOVE DISCUSSION IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, HOLDERS OF CLAIMS OR EQUITY INTERESTS ARE STRONGLY ENCOURAGED TO CONSULT THEIR TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE AND LOCAL, AND ANY APPLICABLE FOREIGN, INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.**

## ARTICLE XII

## CONFIRMATION OF THE PLAN

In order to confirm the Plan, the Bankruptcy Court must make a series of determinations concerning the Plan, including that (a) the Plan has classified Claims and Equity Interests in a permissible manner; (b) the Plan complies with the technical requirements of Chapter 11 of the Bankruptcy Code; (c) the Plan was proposed in good faith, and (d) the disclosures, as required by Chapter 11 of the Bankruptcy Code, have been adequate and have included information concerning all payments made or promised under the Plan. The Debtors believe all of these conditions will be met by the Confirmation Hearing and will seek determinations to such effect at the Confirmation Hearing.

### 12.1    Classification of Claims and Equity Interests

The Bankruptcy Code requires that each claim or interest in a class be "substantially similar" to the other claims or interests in such class. The Debtors believe the Claims and Equity Interests in each Class under the Plan are substantially similar and that the classifications proposed in the Plan are appropriate under the Bankruptcy Code.

### 12.2    Acceptance of the Plan

#### (a)    Impaired Classes

As a condition to confirmation, the Bankruptcy Code requires that each Class of impaired Claims vote to accept the Plan, except to the extent that a "cramdown" is available under section 1129(b) of the Bankruptcy Code. Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of claims in that class, but for that purpose counts only those who actually vote. Thus, a Class will have voted to accept the Plan only if two-thirds (2/3) in amount and a majority in number actually voting in such Class cast their Ballots in favor of acceptance. Holders entitled to vote who fail to vote are not counted as either accepting or rejecting a plan.

#### (b)    Presumed Acceptances by Unimpaired Classes

Under section 1126(f) of the Bankruptcy Code, the holders of claims in classes that are not impaired under a plan are deemed to have accepted the plan, and there votes on the plan need not be solicited. Holders of Allowed Claims in Classes 1 and 2 are Unimpaired under the Plan. Hence, such holders are conclusively presumed to have accepted the Plan, and votes in respect of such Claims will not be solicited.

#### (c)    Classes Deemed to have Rejected the Plan

Under section 1126(g) of the Bankruptcy Code, the holders of claims or interests who are not entitled to receive or retain property in respect thereof are deemed to have rejected the plan. The holders of Equity Interests in

Class 5 of the Plan are not entitled to receive or retain any assets or property under the Plan: Hence, such holders are deemed to have rejected the Plan, and their votes in respect of such Equity Interests will not be solicited.

**(d)    Classes Entitled to Vote to Accept or Reject the Plan**

As a result of Sections 12.2 (b) and (c) above, votes to accept or reject the Plan will be solicited only from the holders of Claims or Equity Interests in Classes 3 and 4.

## 12.3    Best Interests Test

Even if a plan is accepted by the holders of each class of claims and interests, the Bankruptcy Code requires that the court determine that the plan is in the best interests of all holders of claims or interests that are impaired by the plan and have not accepted the plan. The "best interests" test, as set forth in section 1129(a)(7) of the Bankruptcy Code, requires a court to find either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover under a hypothetical Chapter 7 liquidation. The "best interests" test does not apply to the holders of Unimpaired Claims.

Except for the Causes of Action and the Excluded Assets under the Asset Sale, the Debtors already have liquidated their assets. In these circumstances, the Chapter 7 scenario and the Plan are not very different. Nevertheless, the Debtors submit that the value of distributions in a liquidation under Chapter 7 of the Bankruptcy Code would be substantially less than the value of the distributions required under the Plan. In Chapter 7 there would be additional administrative expenses that would need to be paid in advance of any distributions in respect of unsecured claims, including the additional expenses involved in the appointment of a Chapter 7 trustee and attorneys, accountants and other professionals to assist such trustee. The Chapter 7 trustee and his counsel and other professionals would need to become familiar with the Debtors, the Debtors' prior conduct of their operations and the Chapter 11 Cases, the terms of numerous underlying transactions related to the Debtors' assets and the terms of the Claims against the Debtors. Such a process would involve substantial time and expense. The Chapter 7 trustee's professionals would be entitled to compensation at their normal hourly rates and to reimbursement of costs incurred in this process. The Chapter 7 trustee would typically be entitled to a fee based on monies disbursed to creditors in the Chapter 7 case of 25% on the first $5,000 or less, 10% on any amount in excess of $5,000 but not in excess of $50,000, 5% on any amount in excess of $50,000 but not in excess of $1,000,000 and reasonable compensation not to exceed 3% of such monies in excess of $1,000,000. These fees and expenses would be in addition to the allowed fees and expenses of the Debtors' and Committee's professionals incurred during the Chapter 11 Cases. The additional fees and expenses attributable to the Chapter 7 case would be deducted from assets of the Debtor otherwise available for distribution to holders of Allowed Claims under the Plan.

In addition and just as important, there are other factors supporting the Debtors' belief that distributions in a liquidation under Chapter 7 of the Bankruptcy Code would not be as advantageous as the Plan to holders of Allowed Claims:

•       Whereas, under the Plan, initial distributions will be made on or about the Effective Date, and interim distributions will be made at the Liquidating Trust Administrator's discretion, distributions in a Chapter 7 case may not occur for a substantial period of time, typically not until the Chapter 7 trustee concludes all activities and files a final report, which is likely to take years, thereby reducing their present value.

•       The structure of the Liquidating Trust may be more tax advantageous than a Chapter 7 liquidation, and holders of Allowed General Unsecured Claims may be able to recognize tax losses under a Chapter 11 plan with a liquidating trust earlier than in a Chapter 7 scenario.

## 12.4    Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires a finding that confirmation is not likely to be followed by a liquidation or need for further financial reorganization. The Debtors submit that the requirement is

not applicable in the liquidating plan context, and in any event they believe that the Liquidating Trust and the Liquidating Trust Administrator will be able to perform their duties under the Plan without requiring a further liquidation or financial reorganization.

## 12.5 Confirmation Without Acceptance by All Impaired Classes – Cramdown

Section 1129(b) of the Bankruptcy Code provides that, notwithstanding rejection of a plan by one or more impaired classes, the plan may still be confirmed, provided that the plan has been accepted by at least one impaired class of claims, the plan "does not discriminate unfairly" and is "fair and equitable" as to each impaired, non-accepting, class, and the other requirements for confirmation (except acceptance by all impaired classes) are met.

The holders of Claims identified in Section 12.2(c) above will not receive or retain any property in respect of such Claims or Equity Interests under the Plan. Accordingly, under Section 1126(g) of the Bankruptcy Code, that Class is conclusively presumed to have rejected the Plan. The Debtors will (a) request confirmation of the Plan under section 1129(b) of the Bankruptcy Code notwithstanding the deemed rejection of the Plan by such Class and (b) reserve the right to seek confirmation of the Plan under Section 1129(b) of the Bankruptcy Code notwithstanding the rejection of the Plan by any other Classes of Claims or Equity Interests.

### (a) Plan Does Not Discriminate Unfairly

A plan does not discriminate unfairly within the meaning of the Bankruptcy Code if dissenting classes are treated equally with respect to classes of equal rank. The Debtors believe that the Plan does not discriminate unfairly.

### (b) Plan is Fair and Equitable as to Impaired, Non-Accepting Classes

A plan is fair and equitable as to a class of secured claims that rejects such plan if the plan provides either: (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim, or (iii) the property securing the claim is sold free and clear of liens, with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds to be as provided in clause (i) or (ii) of this subparagraph.

A plan is fair and equitable as to a class of unsecured claims that rejects such plan if the plan provides either: (i) each impaired unsecured creditor receives or retains under the plan property of a value, measured as of the effective date of the Plan, equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive or retain any property under the plan.

A plan is fair and equitable as to a class of equity interests that rejects such plan if the plan provides either: (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled, or the value of the interest or (ii) the holder of an interest that is junior to the non-accepting class will not receive or retain any property under the plan.

The Debtors believe that the Plan is "fair and equitable" as to each impaired, non-accepting Class.

## 12.6 Conditions to Effective Date of the Plan

The following are conditions precedent to the occurrence of the Effective Date: (a) the Confirmation Order, in form and substance acceptable to the Debtors shall have been entered and is a Final Order; (b) all actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plan are effected or executed and delivered, as applicable, in form and substance satisfactory to the Debtors; and (c) all authorizations, consents and regulatory approvals, if any, required by the Debtors in connection with the consummation of the Plan are obtained and not revoked. Those conditions may be waived in writing by the Debtors, without any notice to parties in interest or the Bankruptcy Court and without a hearing, unless such waiver is

prohibited by applicable law. The Plan further provides that if an appeal from the Confirmation Order or any other such order is filed but no stay is granted in connection therewith, the Debtors may elect to permit the Effective Date to occur, notwithstanding such appeal.

In the event the foregoing conditions to the Effective Date have not been satisfied or waived, then, upon written notification filed by the Debtors with the Bankruptcy Court and served upon counsel to the Debtors, the Creditors' Committee and the U.S. Trustee, (a) the Confirmation Order shall be vacated, (b) no distributions under the Plan shall not be made, (c) the Debtors and all holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and (d) all obligations of each Debtor with respect to the Claims and Equity Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any Claims against the Debtors, the Debtors or the Estates against any other Person or to prejudice in any manner the rights of the Debtors or any other Person in any further proceedings.

## 12.7 Post-Effective Date Jurisdiction

The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code, including, without limitation:

(1)     To hear and determine pending applications for the rejection of executory contracts or unexpired leases and Claims resulting therefrom;

(2)     To determine any and all adversary proceedings, applications and contested matters;

(3)     To hear and determine all applications for compensation and reimbursement of expenses under Sections 330, 331 and 503(b) of the Bankruptcy Code;

(4)     To hear and determine any timely objections to, or requests for estimation of Disputed Claims, in whole or in part;

(5)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(6)     To issue such orders in aid of execution of the Plan, to the extent authorized by Section 1142 of the Bankruptcy Code;

(7)     To consider any amendments to or modifications of the Plan or to cure any defect or omission, or reconcile any inconsistency, in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(8)     To hear and determine disputes or issues arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, any agreement, instrument, or other document governing or relating to any of the foregoing or any settlement approved by the Bankruptcy Court;

(9)     To hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code (including, without limitation, any request by the Debtors prior to the Effective Date or request by the Liquidating Trust Administrator after the Effective Date for an expedited determination of tax under Section 505(b) of the Bankruptcy Code);

(10)     To hear and determine all disputes involving the existence, scope and nature of the injunctions granted under the Plan, the Confirmation Order or the Bankruptcy Code;

(11)     To issue injunctions and effect any other actions that may be necessary or appropriate to restrain interference by any Person with the consummation, implementation or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court;

**(12)** To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

**(13)** To hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtors or the Liquidating Trust pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory;

**(14)** To recover all assets of the Debtors and property of the Debtors' Estates, wherever located;

**(15)** To enter a final decree closing the Chapter 11 Cases; and

**(16)** To hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XIII

## RECOMMENDATION

The Debtors believe that the Plan affords holders of Claims or Equity Interests the potential for the greatest realization from the assets of the Debtors' Estates and, therefore, is in the best interests of all holders of Claims or Equity Interests. Accordingly, the Debtors recommend that all holders of Claims vote to accept the Plan.

Dated:   New York, New York
         April [__], 2010

                              KING & SPALDING LLP


                              By: _____
                              Arthur J. Steinberg
                              Heath D. Rosenblat
                              1185 Avenue of the Americas
                              New York, NY 10036
                              Telephone: (212) 556-2100
                              Facsimile: (212) 556-2222

                              *Counsel for the Debtors*

## EXHIBITS TO DISCLOSURE STATEMENT

Exhibit A       Plan Of Liquidation Under Chapter 11 Of The Bankruptcy Code

Exhibit B       Schedule of Member Allowed General Unsecured Claims

**Exhibit A to Disclosure Statement**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| SOLSTICE, LLC, *et al.,* | : | Case No. 09-11010 (REG) |
| | : | (Jointly Administered) |
| Debtors. | : | |

-------------------------------------------------------------------x

# PLAN OF LIQUIDATION UNDER
# <u>CHAPTER 11 OF THE BANKRUPTCY CODE</u>

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Arthur J. Steinberg, Esq.
Heath D. Rosenblat, Esq.
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

*Counsel for the Debtors*

Dated: March 11, 2010

## ARTICLE I
## DEFINITIONS AND INTERPRETATION

### A.    Definitions.

The following terms used herein shall have the respective meanings set forth below:

1.1    ***Administrative Expense Claim*** means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases under Sections 330, 503(b), 507(a)(2) and 507(b) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtors' Estates, (b) any actual and necessary costs and expenses of operating the Debtors' businesses, (c) any indebtedness or obligations incurred or assumed by the Debtors in Possession during the Chapter 11 Cases, and (d) any compensation for professional services rendered and reimbursement of expenses by a Professional Person incurred through the Effective Date.  Any fee or charge assessed against the Debtor' Estates under Section 1930 of chapter 123 of Title 28 of the United States Code is excluded from the definition of Administrative Expense Claim and will be paid in accordance with Section 2.4 of the Plan.

1.2    ***Advisory Board*** means those members of the Creditors' Committee that agree to serve after the Effective Date on the Advisory Board and shall meet and/or consult periodically with the Liquidating Trust Administrator and keep themselves apprised of the affairs of the Liquidating Trust.

1.3    ***Allowed*** means, with reference to any Claim against the Debtors, (a) any Claim against any Debtor that has been listed by the Debtors in the Schedules (as such Schedules may be amended by the Debtors from time-to-time in accordance with Bankruptcy Rule 1009) as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed or no timely objection to allowance or request for estimation has been interposed, (b) any timely filed proof of Claim as to which no objection has been or is interposed in accordance with Section 7.1 of the Plan or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder of such Claim, (c) any Claim expressly allowed by a Final Order or under the Plan, including the General Unsecured Claims of Members to the extent set forth in Section 5.2 of the Plan, (d) any Claim that is compromised, settled or otherwise resolved pursuant to a Final Order of the Bankruptcy Court, or under Section 7.3 of the Plan.  Unless otherwise specified in the Plan or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest on such Claim from and after the Commencement Date.

1.4    ***Amended and Restated Credit Agreement*** means that certain Amended and Restated Loan and Security Agreement, by and among the Debtors and Fortress dated May 31, 2007, as such agreement has been amended from time-to-time.

1.5 **Asset Sale** means the transaction approved by the Sale Order.

1.6 **Avoidance Actions** means any actions commenced, or that may be commenced before or after the Effective Date, pursuant to Sections 544, 545, 547, 548, 550, 551 or 553 of the Bankruptcy Code.

1.7 **Bankruptcy Code** means Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended from time-to-time, as applicable to these Chapter 11 Cases.

1.8 **Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of New York or any other court of the United States having jurisdiction over these Chapter 11 Cases.

1.9 **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of Title 28 of the United States Code, as amended from time-to-time.

1.10 **Business Day** means any day other than a Saturday, Sunday or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.11 **Cash** means lawful currency of the United States, including, but not limited to, bank deposits, checks, and other similar items.

1.12 **Carve-Out** means the $50,000 that was set aside, pursuant to order of the Bankruptcy Court, as part of the Fortress adequate protection stipulation and order, for the payment of fees to Professional Persons.

1.13 **Causes of Action** means any and all Claims, Avoidance Actions, and rights of the Debtors, including claims of a Debtor against a non-Debtor entity.

1.14 **Chapter 11 Cases** means the jointly administered cases commenced by the Debtors styled as "In re Solstice, LLC, *et al.*" and being jointly administered in the Bankruptcy Court under case number 09-11010 (REG) under Chapter 11 of the Bankruptcy Code.

1.15 **Claim** has the meaning set forth in Section 101(5) of the Bankruptcy Code.

1.16 **Class** means any group of substantially similar Claims or Equity Interests classified by the Plan pursuant to Section 1122 of the Bankruptcy Code.

1.17 **Collateral** means any property or interest in property of the Debtors' Estates subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable law.

1.18 **Commencement Date** means March 5, 2009, the date on which each of the Debtors (other than SRL) filed its voluntary petition under Chapter 11 of the Bankruptcy

Code. With respect to SRL, June 12, 2009, is the date on which the SRL filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

1.19 **_Confirmation Date_** means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

1.20 **_Confirmation Order_** means the Final Order of the Bankruptcy Court confirming the Plan.

1.21 **_Contingent Claim_** means any Claim, the liability for which attaches or is dependent upon the occurrence or happening of, or is triggered by, an event, which event has not yet occurred, happened or been triggered as of the date on which such Claim is sought to be estimated or an objection to such Claim is filed.

1.22 **_Creditor_** shall mean a person which holds a Claim.

1.23 **_Creditors' Committee_** means the committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to Section 1102(a) of the Bankruptcy Code.

1.24 **_Debtors_** means each of the following sixteen (16) entities (i) Solstice; (ii) Solstice Management, LLC; (iii) Solstice Ownership I, LLC; (iv) Solstice Ownership II, LLC; (v) Solstice Ownership III, LLC; (vi) Solstice Ownership IV, LLC; (vii) Solstice Ownership V, LLC; (viii) Solstice Ownership VI, LLC; (ix) Solstice Ownership VII, LLC; (x) Sea Vision I, LLC; (xi) Parallel I LLC; (xii) Parallel Aspen, LLC; (xiii) Parallel Management LLC; (xiv) 163 Charles Street No. 4 New York, LLC; (xv) 163 Charles Street No. 5 New York, LLC; and (xvi) SRL.

1.25 **_Debtors-in-Possession_** means the Debtors in their capacity as Debtors-in-Possession in the Chapter 11 Cases under Sections 1107(a) and 1108 of the Bankruptcy Code.

1.26 **_Disclosure Statement_** means that certain disclosure statement for this Plan, dated as of April [14], 2010, including, without limitation, all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time-to-time, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

1.27 **_Disputed_** means, with reference to any Claim, (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under Sections 502 or 503 of the Bankruptcy Code, (b) which has been or hereafter is listed by the Debtors on the Schedules as unliquidated, disputed or contingent and which has not been resolved by written agreement with the Debtors, pursuant to Section 7.3 of the Plan or a Final Order, or (c) as to which the Debtors or any other party in interest has interposed a timely objection and/or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order. Prior to the earlier of the time an objection has been timely filed and the expiration of the time within which to object to such Claim set forth herein or otherwise established by order of the Bankruptcy Court, a Claim shall be considered a Disputed Claim if the amount of the Claim specified in a proof of Claim

exceeds the amount of the Claim scheduled by the Debtors as not disputed, contingent or unliquidated.

1.28 ***Distribution Date*** means a date or dates, as determined by the Liquidating Trust Administrator, on which the Liquidating Trust Administrator makes a distribution to holders of Allowed General Unsecured Claims.

1.29 ***Distribution Record Date*** means the Confirmation Date.

1.30 ***Effective Date*** means the first Business Day on which (a) no stay of the Confirmation Order is in effect and (b) all the conditions precedent to the effectiveness of the Plan specified in Section 9.1 of the Plan shall have been satisfied or waived as provided in Section 9.2 of the Plan.

1.31 ***Equity Interest*** means the interest of any holders of equity in Solstice represented by any instrument evidencing a present ownership interest in Solstice, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest.

1.32 ***Estates*** means the Debtors' Estates created pursuant to Section 541 of the Bankruptcy Code upon the filing of the Chapter 11 Cases.

1.33 ***Final Order*** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari* or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a new trial, reargument or rehearing shall then be pending or, (b) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, *certiorari* shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order.

1.34 ***Fortress*** means, collectively, Fortress Credit Funding III LP, a Delaware limited partnership, and Fortress Credit Funding IV LP, a Delaware limited partnership.

1.35 ***General Unsecured Claim*** means any Claim against the Debtors other than an Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, Secured Claim, or Subordinated Fortress Penalty Claim.

1.36 ***Intercompany Claim*** means any Claim against any Debtor held by another Debtor.

1.37 *Lien* has the meaning set forth in Section 101(37) of the Bankruptcy Code.

1.38 *Liquidating Trust* means that trust established as a liquidating trust as described in Treasury Regulation §301.7701-4(d) pursuant to the Liquidating Trust Agreement.

1.39 *Liquidating Trust Administrator* means the person or entity selected by the Debtors and the Creditors' Committee charged with overseeing, *inter alia*, (a) the Claims resolution process, (b) the distribution process for Allowed General Unsecured Claims, (c) the pursuit, prosecution and/or resolution and compromise and settlement of the Causes of Action which the Debtors have as of the Effective Date, (d) the payment of all amounts under the Plan, including, without limitation, Administrative Expense Claims, and (e) the wind down process of the Debtors including the dissolution of the Debtors and the filing of final tax returns.

1.40 *Liquidating Trust Agreement* means that certain agreement dated [_____], 2010, substantially in the form attached hereto as <u>Exhibit A</u>. If there are any inconsistencies between the Liquidating Trust Agreement and the Plan, the provisions of the Liquidating Trust Agreement shall be controlling.

1.41 *Liquidating Trust Assets* means (i) the remaining cash of the Debtors' as of the Effective Date, (ii) Causes of Actions, and (iii) any other asset of the Debtors not sold or otherwise disposed of or abandoned as of the Effective Date.

1.42 *Local Bankruptcy Rules* means the Local Bankruptcy Rules for the Southern District of New York, as amended from time-to-time.

1.43 *Member* shall mean a person who made a deposit and paid dues, at any time, to use the Debtors' destination club business.

1.44 *Other Priority Claim* means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment under Section 507(a)(3), (4), (5), (6), (7), (9) or (10) of the Bankruptcy Code.

1.45 *Other Secured Claims* means any Secured Claim not paid by the Debtors that is secured by the Debtors Collateral.

1.46 *Person* means an individual, partnership, corporation, limited liability company, cooperative, trust, unincorporated organization, association, joint venture, government or agency or political subdivision thereof or any other form of legal entity.

1.47 *Plan* means this Plan of Liquidation Under Chapter 11 of the Bankruptcy Code, dated as of March 12, 2010, including, without limitation, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.48    ***Plan Supplement*** means the supplement or supplements to the Plan containing certain documents relevant to the implementation of the Plan to be filed with the Bankruptcy Court no later than ten (10) calendar days prior to the deadline set to file objections to confirmation of the Plan.

1.49    ***Priority Tax Claim*** means any Claim of a governmental unit of the kind entitled to priority in payment as specified in Section 507(a)(8) of the Bankruptcy Code.

1.50    ***Pro Rata Share*** shall mean a fraction of (a) the numerator of which is the amount of a Creditor's Allowed General Unsecured Claims, and (b) the denominator of which is the aggregate amount of all Allowed General Unsecured Claims and all Disputed General Unsecured Claims.

1.51    ***Professional Person*** shall mean that Person retained by either the Debtors or the Creditors Committee pursuant to Sections 327 or 1103 of the Bankruptcy Code.

1.52    ***Sale Order*** means that certain order dated December 17, 2009, authorizing and approving the Debtors, *inter alia*, to sell substantially all of the Debtors' assets to Zodiac.

1.53    ***Schedules*** means, collectively, the schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases and statements of financial affairs filed by the Debtors under Section 521 of the Bankruptcy Code, Bankruptcy Rule 1007 and the Official Bankruptcy Forms in the Chapter 11 Cases, as may have been amended or supplemented through the Confirmation Date pursuant to Bankruptcy Rule 1007.

1.54    ***Secured Claim*** means any Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to a permissible setoff under Section 553 of the Bankruptcy Code, to the extent of such permissible setoff.

1.55    ***Solstice*** means Solstice, LLC, the direct or indirect managing member of each of the other Debtors.

1.56    ***SRL*** means Solstice Ownership 7, S.r.l.

1.57    ***Unliquidated Claim*** means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law or otherwise, as of the date on which such Claim is asserted or sought to be estimated.

1.58    ***U.S. Trustee*** means the United States Trustee appointed under Section 581 of Title 28 of the United States Code to serve in the Southern District of New York.

1.59    ***Wind Down Expense Reserve*** shall mean the cash set aside by the Liquidating Trust Administrator, from time-to-time, to pay (a) Administrative Expenses accrued through the Effective Date, (b) priority tax claims, (c) the amounts due pursuant to

Section 2.4 of the Plan, (d) the amounts due for Allowed Claims in Class 1 and 2, and (e) for expenses relating to the wind down of the Debtors. The Wind Down Expense Reserve shall be administered by the Liquidating Trust Administrator. The Carve Out shall be utilized by the Liquidating Trust Administrator to pay the professional fees described in Section 1.1(d) of the definition of Administrative Expense Claim.

1.60 *Zodiac* shall mean Zodiac Real Estate Limited, or its designee(s).

**B.    Interpretation; Application of Definitions and Rules of Construction.**

The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the construction of the Plan. Whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural, and each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and the neuter. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II
## PROVISIONS FOR PAYMENT OF ADMINISTRATIVE
## EXPENSES AND PRIORITY TAX CLAIMS

2.1    *Administrative Expense Claims.*

Subject to Section 2.2 of the Plan, and except to the extent that any entity entitled to payment of any Allowed Administrative Expense Claim agrees to a less favorable treatment and/or has been paid during the Chapter 11 Cases, each holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Allowed Administrative Expense Claim on or as soon as reasonably practicable following the later to occur of (a) Effective Date and (b) the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; provided, however, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors shall be paid in full in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions.

2.2    *Professional Compensation and Reimbursement Claims.*

Each Professional Person seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under Sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (a) file, on or before the date that is forty-five (45) days after the Effective Date their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and (b) be paid in full, in Cash, in

such amounts as are Allowed by the Bankruptcy Court in accordance with the order relating to or allowing any such Administrative Expense Claim.

### 2.3 *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, settlement, and release of and in exchange for such Allowed Priority Tax Claim, payment in Cash in the full amount of such Allowed Priority Tax Claim, on or as soon as reasonably practicable following the later to occur of (x) the Effective Date, and (y) the date on which such claim becomes Allowed.

### 2.4 *Statutory Fees.*

All fees payable under Section 1930 of Chapter 123 of Title 28 of the United States Code shall be paid on the Effective Date.

### 2.5 *Administrative Expense Claim Bar Date For Non-Professional Persons.*

Each Administrative Expense Claim holder, other than a Professional Person (which is governed by Section 2.2 hereof), which has not been paid by the Confirmation Date, shall file an Administrative Expense Claim with the Bankruptcy Court and counsel for the Debtors by no later than forty-five (45) days after the Effective Date. The failure to file such Administrative Expense Claim by such deadline shall mean that such holder of the Administrative Expense Claim shall be deemed to have waived such Administrative Expense Claim, and such holder shall be *forever barred* from asserting such Administrative Expense Claim against the Debtors or the Liquidating Trust.

### ARTICLE III
### CLASSIFICATION OF CLAIMS AND
### EQUITY INTERESTS, IMPAIRMENT AND VOTING

The following table designates the classes of Claims against and Equity Interests in the Debtors and specifies which of those classes are impaired or unimpaired by the Plan and entitled to vote to accept or reject the Plan in accordance with Section 1126 of the Bankruptcy Code or deemed to reject the Plan.

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Other Priority Claims | Unimpaired | No (deemed to accept) |
| Class 2 | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 3 | General Unsecured Claims | Impaired | Yes |
| Class 4 | Subordinated Fortress Penalty Claim | Impaired | Yes |
| Class 5 | Equity Interests | Impaired | No (deemed to reject) |

### ARTICLE IV
### TREATMENT OF CLAIMS AND EQUITY INTERESTS

4.1     *Other Priority Claims (Class 1).*

      (a)    <u>Impairment and Voting.</u> Class 1 is unimpaired by the Plan.

      (b)    <u>Distributions.</u> Except to the extent that a holder of an Allowed Other Priority Claim agrees to a different treatment, each holder of an Allowed Other Priority Claim shall receive, in full satisfaction of such other unpaid Other Priority Claim, (a) Cash in the full amount of such claim on or as soon as reasonably practicable following the later to occur of (x) the Effective Date or as soon thereafter as is reasonably practicable and (y) the date on which such Claim becomes Allowed.

4.2     *Other Secured Claims (Class 2).*

      (a)    <u>Impairment and Voting.</u> Class 2 is unimpaired by the Plan.

      (b)    <u>Distributions.</u> Except to the extent that a holder of an Allowed Other Secured Claim agrees to a different treatment, each holder of an Allowed Other Secured Claim shall receive, in full satisfaction of such other unpaid Other Secured Claim, (a) the property securing such Allowed Other Secured Claim, or (b) Cash in an amount equal to the value of the property securing such Allowed Other Secured Claim.

4.3     *General Unsecured Claims (Class 3).*

      (a)    <u>Impairment and Voting.</u> Class 3 is impaired by the Plan.

      (b)    <u>Distributions.</u> Except to the extent that a holder of an Allowed General Unsecured Claim agrees to a different treatment, on the Effective Date or as soon as practicable thereafter, and on subsequent Distribution Dates as determined by the Liquidating Trust Administrator, each holder of an Allowed General Unsecured Claim, shall receive its Pro Rata Share of the Liquidating Trust Assets available for distribution on account of Allowed General Unsecured Claims. The Wind Down Expense Reserve shall not be utilized to pay Allowed General Unsecured Claims until all obligations that the Wind Down Expense Reserve is intended to pay, are satisfied in full.

4.4     *Subordinated Fortress Penalty Claim (Class 4).*

      (a)    <u>Impairment and Voting.</u> Class 4 is impaired by the Plan. Fortress Subordinated Penalty Claim, approved by the January 13, 2010 Stipulation and Consent Order of the Bankruptcy Court in the amount of $608,264.95, is subordinated to Allowed General Unsecured Claims.

      (b)    <u>Distributions.</u> Holders of Class 4 claims will not get a distribution under the Plan until all Allowed General Unsecured Claims have been paid in full.

4.5     *Equity Interests (Class 5).*

      (a)    <u>Impairment and Voting.</u> Class 5 is impaired by the Plan.

(b)     Distributions. Holders of the existing Equity Interests shall not receive or retain any distribution or payment on account of such Equity Interests. The Equity Interests shall be deemed cancelled as of the Effective Date. The equity interests held by Solstice in the other Debtors, or by any Debtor (other than Solstice) in another Debtor shall be deemed cancelled under the Plan as of the Effective Date, except to the extent requested by Zodiac, prior to the Confirmation Date, to effectuate the Asset Sale for certain of the Debtors. Under the Asset Sale, Zodiac had the option to acquire the capital stock of a Debtor (other than such Solstice) in lieu of purchasing the assets of such Debtor.

## ARTICLE V
## MEANS OF IMPLEMENTATION

### 5.1     *Substantive Consolidation.*

The Plan contemplates and is predicated upon substantive consolidation of the Debtors into a single entity for purpose of all actions under the Plan. Entry of the Confirmation Order shall constitute approval, pursuant to Section 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Chapter 11 Cases for all purposes related to the Plan, including, without limitation, for purposes of voting, confirmation and distribution. On and after the Effective Date, (i) all assets and liabilities of the Debtors shall be deemed merged so that all of the assets of the Debtors shall be available to pay all of the liabilities under the Plan as if it were one company, (ii) no distributions shall be made under the Plan on account of Intercompany Claims among the Debtors, (iii) no distributions will be made under the Plan on account of any Equity Interests held by a Debtor, (iv) all guarantees of the Debtors of the obligations of any other Debtor shall be deemed eliminated so that any claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of the Debtors shall be deemed to be one obligation of the consolidated Debtors, and (v) each and every Claim filed or to be filed in the Chapter 11 Case against any of the Debtors shall be deemed filed against the consolidated Debtors, and shall be deemed one Claim against and obligation of the consolidated Debtors.

### 5.2     *Settlement of Certain Claims Including General Unsecured Claims of Members.*

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution, releases and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan. All Plan distributions made to creditors holding Allowed Claims in any Class are intended to be and shall be final, and no Plan distribution to the holder of a Claim in one Class shall be subject to being shared with or reallocated to the holders of any Claim in another Class by virtue of any prepetition collateral trust agreement, shared collateral agreement, subordination agreement or other similar inter-creditor arrangement. For every Member that paid cash to the Debtors prior to the Commencement Date, as a deposit for its Membership in the Debtors' Destination Club, the Member shall have an Allowed General Unsecured Claim for the amount of the cash deposit made that was not repaid, and shall have no other Allowed General Unsecured Claim in the Chapter 11 Cases. A schedule of the Member Allowed General Unsecured Claims is attached to the Disclosure Statement. By agreeing to this

settlement, a Member will not be releasing or reducing its claim against any Person which is a non-Debtor.

### 5.3 *Liquidating Trust.*

(a) <u>Purpose of the Liquidating Trust</u>. On the Effective Date, the Debtors shall transfer to the Liquidating Trust, the Liquidating Trust Assets from which the proceeds thereof will be utilized, among other things, for the payments to Creditors in Class 3 on account of the beneficial interests obtained by them for their Allowed General Unsecured Claims. The Debtors shall relinquish any and all rights in and to the Liquidating Trust Assets which shall be transferred to the Liquidating Trust free and clear of all Claims and Liens in accordance with Section 1141 of the Bankruptcy Code. The Liquidating Trust shall be established for the purpose of liquidating assets for and on behalf of holders of Allowed General Unsecured Claims, in accordance with Treas. Reg. §301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. The Liquidating Trust Administrator shall also make the payments required by the Plan, and wind down the Debtors. The Liquidating Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein. The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes and, to the extent permitted by applicable law, for state and local income tax purposes, with the beneficiaries treated as grantors and owners of the trust.

(b) <u>Liquidating Trust Administrator; Termination of the Board and Officers of the Debtors</u>. The retention of the Liquidating Trust Administrator shall be pursuant to the Liquidating Trust Agreement acceptable in all respects to the Debtors, substantially in the form annexed to the Disclosure Statement. The Liquidating Trust Administrator shall be deemed to have been appointed as the Debtors' Estates' representative by the Bankruptcy Court pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code.

In the event that the Liquidating Trust Administrator resigns, is removed, terminated or otherwise unable to serve as the Liquidating Trust Administrator, then the Advisory Board shall have the right to select a successor. Any successor Liquidating Trust Administrator appointed shall be bound by and comply with the terms of the Plan, the Confirmation Order and the Liquidating Trust Agreement.

On the Effective Date, the Liquidating Trust Administrator will be the sole authorized representative and signatory of the Liquidating Trust. The powers, authority, responsibilities and duties of the Liquidating Trust Administrator shall be governed by the Plan, the Confirmation Order, the Liquidating Trust Agreement and the Bankruptcy Code. The Liquidating Trust Administrator may execute, deliver, file or record such documents, instruments, releases and other agreements, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Liquidating Trust. On the Effective Date, the board of directors and the officers of the Debtors shall no longer be in control over the Debtors' assets, all of which shall be transferred to the Liquidating Trust. In addition, the Liquidating Trust Administrator shall be in full control over the wind down of the Debtors. To be specific, after the Effective Date, the Board of Directors or the officers of the Debtors shall not take any action relating to the Debtors. All employees of the Debtors, not otherwise terminated by the Effective Date, shall be deemed terminated as of the Effective Date,

and all employment contracts with the Debtors not otherwise terminated by the Effective Date, shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code.

(c)     Transfer of Assets. The transfer of the Liquidating Trust Assets to the Liquidating Trust will be made for the benefit of the beneficiaries thereof, but only to the extent such beneficiaries are entitled to distributions under the Plan. Upon completion of the transfer of the Liquidating Trust Assets into the Liquidating Trust, the Debtors will have no interest in, or with respect to, Liquidating Trust Assets, or the Liquidating Trust. For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trust Administrator and the beneficiaries) will treat the transfer of assets to the Liquidating Trust in accordance with the terms of the Plan (other than any amounts allocated as of the Effective Date for the funding of the Wind Down Expense Reserve and the Carve-Out), as a transfer to the beneficiaries, followed by a transfer by such beneficiaries to the Liquidating Trust, and the beneficiaries will be treated as the grantors and owners thereof.

(d)     Valuation of Assets. 120 days after the Effective Date, or as soon as practicable thereafter, the Liquidating Trust Administrator shall apprise the beneficiaries of the Liquidating Trust of the estimated value of the Liquidating Trust Assets (excluding any amounts allocated as of the Effective Date for the Wind Down Expense Reserve and the Carve-Out). The valuation shall be used consistently by all parties (including the Liquidating Trust Administrator and the beneficiaries of the Liquidating Trust) for all federal income tax purposes. The purpose of the valuation is to comply with the general criteria for obtaining an IRS ruling that an entity created pursuant to a confirmed plan of reorganization under Chapter 11 of the Bankruptcy Code will be classified as a liquidating trust. Any dispute regarding the valuation of these assets shall be resolved by the Bankruptcy Court, provided, however, that the determination of the Liquidating Trust Administrator shall be reviewed under the standards governing decisions of the Board of Directors of a corporation formed under the laws of the state of Delaware.

(e)     Responsibilities and Authority of the Liquidating Trust Administrator. The responsibilities and authority of the Liquidating Trust Administrator shall include (a) calculating and implementing all distributions for Class 3; (b) administering and paying taxes, including, among other things, (i) filing of tax returns (including tax returns of the Debtors for periods prior to the Effective Date), and (ii) representing the interest and account of the Liquidating Trust before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit; (c) periodic reporting to the beneficiaries of the Liquidating Trust of the status of the General Unsecured Claims resolution process, distributions on Allowed General Unsecured Claims, and prosecution of Causes of Action; (d) liquidating the assets of the Liquidating Trust and providing payments to any Person in accordance with the provisions of the Plan; (e) retaining and paying at normal and customary rates or contingency fee basis, on a monthly basis, professionals in connection with the Liquidating Trust Administrator's duties; (f) reviewing, analyzing, and objecting to General Unsecured Claims, including the prosecution of such objections as described more fully in the Liquidating Trust Agreement; (g) distributing information statements as required for federal income tax and other applicable tax purposes; and (f) such other responsibilities as may be vested in the Liquidating Trust Administrator pursuant to the Plan, Liquidating Trust Agreement or Bankruptcy Court order or as may be necessary and proper to carry out the provisions of the Plan.

(f)     Powers of the Liquidating Trust Administrator.  The powers of the Liquidating Trust Administrator to administer the Liquidating Trust shall, without any further Bankruptcy Court approval in each of the following cases, include, without limitation, (a) the power to invest funds, in accordance with Section 345 of the Bankruptcy Code, in, and withdraw, make distributions and pay taxes and other obligations owed by the Liquidating Trust from funds held by the Liquidating Trust Administrator in accordance with the Plan and Liquidating Trust Agreement, (b) the power to engage and compensate without prior Bankruptcy Court order or approval employees and Professional Persons to assist the Liquidating Trust Administrator with respect to his responsibilities, (c) the power to pursue, prosecute, resolve and compromise and settle Causes of Action on behalf of or against the Liquidating Trust without prior Bankruptcy Court approval but in accordance with the Liquidating Trust Agreement, (d) the power to object to claims, including, without limitation, the power to subordinate and recharacterize claims by objection, motion, or adversary proceeding, and (e) such other powers as may be vested in or assumed by the Liquidating Trust Administrator pursuant to the Plan, the Liquidating Trust Agreement, Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan.  Except as expressly set forth herein and in the Liquidating Trust Agreement, the Liquidating Trust Administrator, on behalf of the Liquidating Trust, shall have absolute discretion to pursue or not to pursue any and all claims, rights, Causes of Action, as he determines is in the best interests of the beneficiaries and consistent with the purposes of the Liquidating Trust, and shall have no liability for the outcome of his decision, other than those decisions constituting gross negligence or willful misconduct. The Liquidating Trust Administrator may incur any reasonable and necessary expenses in liquidating and converting the assets in the Liquidating Trust to Cash.

(g)     Enforcement of Causes of Action.  Pursuant to Bankruptcy Code Section 1123(b), the Liquidating Trust Administrator, on behalf of and for the benefit of the Liquidating Trust, shall be vested with and shall retain and may enforce any and all Causes of Action held by, through, or on behalf of the Debtors, [the Creditors' Committee] and/or the Estate against any other Person, arising before the Effective Date that have not been fully resolved or disposed of prior to the Effective Date, whether or not such Claims or Causes of Action are specifically identified in the Disclosure Statement accompanying the Plan and whether or not litigation with respect to same has been commenced prior to the Effective Date. With respect to the Avoidance Actions, the Debtors have not yet undertaken a detailed analysis of the nature and amount of any Avoidance Actions and therefore do not have a specific list which includes all of the Avoidance Actions that may be brought by the Liquidating Trust Administrator on behalf of the  Liquidating Trust for the benefit of all holders of Allowed General Unsecured Claims.  For the avoidance of doubt, this Plan preserves and transfers to the Liquidating Trust Causes of Actions that Exist as the Effective Date.

The recoveries from the Causes of Action will be deposited into the Liquidating Trust.

(h)     Compensation of Liquidating Trust Administrator.     The Liquidating Trust Administrator shall fully comply with the terms, conditions and rights set forth in the Plan, Confirmation Order and the Liquidating Trust Agreement.  The Liquidating Trust Administrator shall not be required to file a fee application to receive compensation.  The compensation for the Liquidating Trust Administrator shall be set forth in the Liquidating Trust Agreement.

(i)     Retention and Payment of Professionals.  The Liquidating Trust Administrator shall have the right to retain the services of attorneys, accountants, and other professionals and agents, including, without limitation, the Professional Persons in the discretion of the Liquidating Trust Administrator to assist and advise the Liquidating Trust Administrator in the performance of his duties and compensate such professionals from the assets of the Liquidating Trust.  Any fees (including filing fees and other expenses) if any, of the Liquidating Trust Administrator may be paid from the Liquidating Trust.

(j)     Limitation on Liability of the Liquidating Trust Administrator. The Liquidating Trust Administrator and his professionals shall be entitled to indemnification out of the assets of the Liquidating Trust against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that the Liquidating Trust Administrator or his professionals may incur or sustain by reason of being or having been a Liquidating Trust Administrator or professional of the Liquidating Trust Administrator or for performing any functions incidental to such service; however, the foregoing shall not relieve the Liquidating Trust Administrator or his professional from liability for bad faith, willful misfeasance, reckless disregard of duty, gross negligence, fraud, self-dealing or breach of financial duty.

(k)     Termination of the Liquidating Trust.  The existence of the Liquidating Trust and the authority of the Liquidating Trust will commence as of the Effective Date and will remain and continue in full force and effect until all of the Liquidating Trust Assets are liquidated in accordance with the Plan, the funds in the Liquidating Trust have been completely distributed in accordance with the Plan, all tax returns and any other filings or reports have been filed with the appropriate state or federal regulatory authorities and the Order closing the Chapter 11 Cases is a Final Order.  At such time as the Liquidating Trust has been fully administered (i.e., when all things requiring action by the Liquidating Trust Administrator have been done, and the Plan has been substantially consummated) and in all events within sixty (60) days after the final Distribution Date, the Liquidating Trust Administrator will file an application for approval of its final report and the entry of the final decree by the Bankruptcy Court.

(l)     Appointment of Advisory Board.  A creditor "Advisory Board" shall be created on the Effective Date.  The Advisory Board shall consist of the members of the Creditors' Committee willing to serve on the Advisory Board.  The Advisory Board shall adopt bylaws, as it may deem appropriate.  In the event of any vacancies, the remaining members shall have the authority to fill such vacancy.  In the event any position is vacant for more than thirty (30) days, the Liquidating Trust Administrator shall have the authority, without need of notice to the remaining members of the Advisory Board, to fill such vacancy.  Upon certification by the Liquidating Trust Administrator that all Causes of Action and Disputed General Unsecured Claims have been concluded and all distributions in accordance with the Plan have been made, the Advisory Board shall be disbanded without need for further notice or action.

(m)     Rights and Powers of the Advisory Board.  The Advisory Board shall be entitled to monitor the status and progress of Disputed Claims and Causes of Action. The Advisory Board may meet and/or consult periodically with the Liquidating Trust Administrator and keep itself apprised of the affairs of the Liquidating Trust.  The Advisory Board shall have the authority to remove the Liquidating Trust Administrator and appoint a

successor Liquidating Trust Administrator in accordance with the terms of the Liquidating Trust Agreement.

(n)     Exculpation. No Holder of a Claim or any other party-in-interest will have, or otherwise pursue, any Claim or Cause of Action against the Liquidating Trust Administrator, the Advisory Board, the Liquidating Trust or the employees or professionals thereof (solely in the performance of their duties theras), for making payments in accordance with the Plan or for fulfilling any functions incidental to implementing the provisions of the Plan or the Liquidating Trust, except for any acts or omissions to act that are the result of willful misconduct or gross negligence.

(o)     Dissolution of Committee. On the Effective Date and upon the creation of the Liquidating Trust, the powers and duties of the Creditors' Committee will terminate and the Creditors' Committee will cease to exist, except with respect to the filings of any application for allowance of fees and expenses of the Professional Persons engaged by the Creditors' Committee and expenses of the members of the Creditors' Committee.

### 5.4     *Termination of the Debtors.*

On the Effective Date or as soon thereafter as possible, the Liquidating Trust Administrator will cause to be filed with the States of Delaware, California, Colorado, New York and any other governmental authority such certificate of dissolution or cancellation and other certificates or documents as may be or become necessary to implement the termination of the legal existence of the Debtors.

### 5.5     *Method of Distributions Under the Plan.*

(a)     Distributions to holders of Claims against the Debtors shall be made by the Liquidating Trust Administrator in accordance with the terms of the Plan and the Liquidating Trust Agreement.

(b)     All payments due under the Plan, other than payments to be made on account of Allowed General Unsecured Claims, shall be made by the Liquidating Trust Administrator from the Wind Down Expense Reserve.

(c)     At reasonable periodic intervals determined by the Liquidating Trust Administrator, in its sole discretion, the Liquidating Trust Administrator shall make distributions to holders of Class 3 claims in accordance with the Liquidating Trust Agreement and this Plan.

### 5.6     *Cancellation of Existing Agreements and Equity Interests.*

Except (a) as otherwise expressly provided in the Plan, (b) with respect to executory contracts or unexpired leases that have been assumed and assigned by the Debtors, or (c) for purposes of evidencing a right to distributions under the Plan, on the Effective Date, all Equity Interests and other instruments evidencing any Claims against the Debtors shall be deemed automatically cancelled without further act or action under any applicable agreement, law, regulation, order or rule.

# ARTICLE VI
## PROVISIONS GOVERNING VOTING AND DISTRIBUTIONS

6.1 *Voting of Claims.*

Each holder of an Allowed Claim in an impaired class of Claims that is entitled to vote on the Plan shall be entitled to vote separately to accept or reject the Plan, as provided in such order as is entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order of the Bankruptcy Court.

6.2 *Nonconsensual Confirmation.*

If any impaired class of Claims entitled to vote shall not accept the Plan by the requisite statutory majority provided in Section 1126(c) of the Bankruptcy Code, the Debtors reserve the right to amend the Plan or undertake to have the Bankruptcy Court confirm the Plan under Section 1129(b) of the Bankruptcy Code or both. With respect to impaired classes of Claims that are deemed to reject the Plan, the Debtors shall request that the Bankruptcy Court confirm the Plan pursuant to Section 1129(b) of the Bankruptcy Code.

6.3 *Tax Identification Numbers*

The Liquidating Trust Administrator, to the extent it deems it necessary to fulfill any obligation of the Liquidating Trust Administrator to any taxing authority, may require Persons who are to receive distributions under the Plan to provide the Liquidating Trust Administrator with appropriate taxpayer identification numbers and related withholding information before making a distribution to any such Person. If a Person shall fail to provide the Liquidating Trust Administrator with any requested taxpayer identification information within 120 days of the written request, this failure shall be deemed a waiver of all Claims against the Estates (including the right to any payment from the Liquidating Trust), and the funds that otherwise would have been distributed to said Person shall revert and be distributed in accordance with the Plan to other Persons that have provided the requested taxpayer identification information, or to the Liquidating Trust, as appropriate.

6.4 *Cooperation Between Debtors and Liquidating Trust Administrator*

The Debtors shall cooperate with the Liquidating Trust Administrator in providing tax reporting information to the Liquidating Trust Administrator before the Effective Date.

6.5 *Distributions on Allowed General Unsecured Claims.*

All Allowed General Unsecured Claims held by a single creditor shall be aggregated and treated as a single Claim. At the written request of the Liquidating Trust Administrator, any creditor holding multiple Allowed General Unsecured Claims shall provide to the Liquidating Trust Administrator, as the case may be, a single address to which any distributions shall be sent.

6.6 *Date of Distributions.*

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 6.7 *Delivery of Distributions.*

Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtors or its agents, as applicable, unless the Debtors or the Liquidating Trust Administrator have been notified in writing of a change of address, including, without limitation, by the filing of a proof of Claim by such holder that contains an address for such holder different than the address of such holder as set forth on the Schedules. Nothing in this Plan shall require the Liquidating Trust Administrator to attempt to locate any holder of an Allowed Claim.

### 6.8 *Unclaimed Distributions.*

All distributions under the Plan that are unclaimed for a period of six (6) months after distribution thereof shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code and any entitlement of any holder of any Claims to such distributions and future distributions shall be extinguished and forever barred and such unclaimed distributions shall be redistributed *pro rata* to the holders of Allowed Claims.

### 6.9 *Distribution Record Date.*

With respect to holders of all General Unsecured Claims, on the Distribution Record Date, the Claims register shall be closed and any transfer of any Claim therein shall be prohibited. The Liquidating Trust Administrator shall have no obligation to recognize any transfer of any such Claims occurring after the close of business after such date.

### 6.10 *Manner of Payment.*

At the option of the Liquidating Trust Administrator, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

### 6.11 *De Minimus Distributions.*

No payment of Cash less than $50.00 shall be made to any holder of an Allowed Claim unless a request therefor is made in writing to the Liquidating Trust Administrator.

### 6.12 *Setoffs and Recoupment.*

The Debtors may, but shall not be required to, setoff against or recoup from any Claim and the payments to be made pursuant to the Plan in respect of such Claim any Claims of any nature whatsoever that the Debtors may have against the Creditor , but neither the failure to

do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trust of any such Claim it may have against such Creditor.

### 6.13    *Distributions After Effective Date.*

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

### ARTICLE VII
### PROCEDURES FOR TREATING DISPUTED CLAIMS

### 7.1    *Objections.*

As of the Effective Date, objections to, and requests for estimation of, Claims against the Debtors may be interposed and prosecuted only by the Liquidating Trust Administrator. Such objections and requests for estimation, including, without limitation, any reduction, recharacterization, subordination or other modification in whole or in part that may be brought by motion, objection, or adversary proceeding, shall be served on the respective claimant and filed with the Bankruptcy Court on or before the latest of: (i) the later of one hundred and eighty (180) days after the Effective Date or (ii) such later date as may be fixed by the Bankruptcy Court.

### 7.2    *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim or Allowed Administrative Expense Claim, distributions, if any, shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Administrative Expense Claim becomes a Final Order, the Liquidating Trust Administrator will provide to the holder of such Administrative Expense Claim or Claim the distribution, if any, to which such holder is entitled under the Plan. The Liquidating Trust Administrator shall set up such reserves as may be required to ensure that a Disputed Creditor or a Disputed Administrative Expense Creditor will receive its distribution under the Plan, if, and to the extent, such Disputed Claim or Disputed Administrative Expense becomes Allowed by a Final Order.

### 7.3    *Resolution of Claims.*

On and after the Effective Date, the Liquidating Trust Administrator shall have the sole authority and discretion to compromise, settle, otherwise resolve or withdraw any objections to Claims, and to compromise, settle or otherwise resolve any Disputed Claims without approval of the Bankruptcy Court.

### 7.4    *Estimation of Claims.*

The Liquidating Trust Administrator may at any time request that the Bankruptcy Court estimate any Contingent Claim, Unliquidated Claim or Disputed Claim pursuant to

Section 502(c) of the Bankruptcy Code regardless of whether any of the Debtors or the Liquidating Trust Administrator previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Contingent Claim, Unliquidated Claim or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Liquidating Trust Administrator may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another.

### 7.5 *Interest.*

To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, the holder of such Claim shall not be entitled to any interest thereon that accrued after the Effective Date.

## ARTICLE VIII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 8.1 *Rejection of Any Remaining Executory Contracts and Unexpired Leases.*

Pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that exist between any of the Debtors and any person or entity shall be deemed rejected by the Debtors as of the Effective Date, except for any executory contract or unexpired lease (a) that has been rejected by a Final Order of the Bankruptcy Court prior to the Effective Date, (b) that has been assumed or assumed and assigned pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, or (c) as to which a motion for approval of the assumption of such executory contract or unexpired lease has been filed and served prior to the Confirmation Date.

### 8.2 *Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.*

Proofs of Claim for damages arising out of the rejection of an executory contract or unexpired lease pursuant to Section 8.1 of the Plan must be filed with the Bankruptcy Court and served on the Liquidating Trust Administrator, no later than forty-five (45) days after notice of entry of the Confirmation Order. **If such proofs of Claim are not filed within such time, such Creditor will be deemed forever barred from asserting any such claim against the Debtors and their Estates or the Liquidating Trust or the assets in the Liquidating Trust.**

## ARTICLE IX
## CONDITIONS PRECEDENT TO EFFECTIVE DATE

### 9.1 *Conditions Precedent to Effectiveness.*

The Effective Date shall not occur and the Plan shall not become effective unless and until the following conditions are satisfied in full or waived in accordance with Section 9.2 of the Plan:

(a) The Confirmation Order, in form and substance acceptable to the Debtors, shall have been entered and is a Final Order;

(b) All actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plan are effected or executed and delivered, as applicable, in form and substance satisfactory to the Debtors; and

(c) All authorizations, consents and regulatory approvals, if any, required by the Debtors in connection with the consummation of the Plan are obtained and not revoked as of the Effective Date.

### 9.2 *Waiver of Conditions.*

Each of the conditions precedent in Section 9.1 hereof may be waived, in whole or in part, by the Debtors. Subject to the foregoing sentence, any such waivers may be effected at any time, without notice, without leave or order of the Bankruptcy Court and without any formal action.

### 9.3 *Satisfaction of Conditions.*

Except as expressly provided or permitted in the Plan, any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action. In the event that one or more of the conditions specified in Section 9.1 of the Plan have not occurred or otherwise been waived pursuant to Section 9.2 of the Plan, (a) the Confirmation Order shall be vacated, (b) the Debtors and all holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred and (c) the Debtors' obligations with respect to Claims and Equity Interests shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors.

## ARTICLE X
## EFFECT OF CONFIRMATION

### 10.1 *Vesting of Assets.*

On the Effective Date, the Debtors, their properties and interests in property and their operations shall be released from the custody and jurisdiction of the Bankruptcy Court, and all property of the Debtors' Estates shall continue to vest in the Liquidating Trust free and clear of all Claims and Liens, except as provided in the Plan.

10.2 ***Binding Effect.***

Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtors and such holder's respective successors and assigns, whether or not the Claim or interests including any Equity Interest of such holder is impaired under the Plan, whether or not such holder has accepted the Plan and whether or not such holder is entitled to a distribution under the Plan.

10.3 ***Injunction or Stay.***

**Except as otherwise expressly provided herein or in the Confirmation Order, all Persons or entities who have held, hold or may hold Claims against or Equity Interests in the Debtors are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against the Debtors, the Liquidating Trust or the Liquidating Trust Administrator (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any of the Debtors, the Liquidating Trust or the Liquidating Trust Administrator with respect to such Claim or Equity Interest, (c) creating, perfecting or enforcing any encumbrance of any kind against the Debtors, the Liquidating Trust or the Liquidating Trust Administrator or against the property or interests in property of any of the Debtors or the Liquidating Trust, (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due to the Debtors, the Liquidating Trust or the Liquidating Trust Administrator or against the property or interests in property of the Debtors or the Liquidating Trust, (e) acting or proceeding in any manner in any place whatsoever, that does not conform to or comply with the provisions of the Plan, (f) commencing, continuing, or asserting in any manner any action or other proceeding of any kind with respect to any claims which are extinguished or released pursuant to the Plan, and (g) taking any actions to interfere with the implementation or consummation of the Plan.**

10.4 ***Terms of Injunction or Stay.***

**All injunctions or stays arising under or entered during the Chapter 11 Cases under Section 105 or 362 of the Bankruptcy Code, or otherwise, that are in existence on the Confirmation Date shall remain in full force and effect until the Effective Date. On or after the Effective Date, the provisions of the Plan shall protect the Debtors, the Liquidating Trust and the assets transferred to the Liquidating Trust.**

10.5 ***Reservation of Causes of Action/Reservation of Rights.***

Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or Causes of Action that the Debtors, the Creditors' Committee or the Liquidating Trust may have or may choose to assert against non-Debtor Persons.

10.6 ***Exculpation.***

None of the Debtors, the Liquidating Trust Administrator, the Creditors' Committee, or any of such parties' respective officers, directors, managers, members accountants, financial advisors, investment bankers, agents, restructuring advisors, attorneys and representatives (solely in their capacity as officers, directors, managers, members, accountants, financial advisors, investment bankers, agents, restructuring advisors, attorneys, consultants and representatives) shall have or incur any liability for any Claim, Cause of Action or other assertion of liability for any act taken or omitted to be taken in connection with, or arising out of, the Chapter 11 Cases, the formulation, dissemination, confirmation, consummation or administration of the Plan, property to be distributed under the Plan or any other act or omission in connection with the Chapter 11 Cases, the Plan, the Disclosure Statement or any contract, instrument, document or other agreement related thereto; provided, however, that the foregoing shall not affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct or gross negligence.

## ARTICLE XI
## RETENTION OF JURISDICTION

11.1    The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code, including, without limitation:

(a)    To hear and determine pending applications for the rejection of executory contracts or unexpired leases and Claims resulting therefrom;

(b)    To determine any and all adversary proceedings, applications and contested matters;

(c)    To hear and determine all applications for compensation and reimbursement of expenses under Sections 330, 331 and 503(b) of the Bankruptcy Code;

(d)    To hear and determine any timely objections to, or requests for estimation of Disputed Claims, in whole or in part;

(e)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(f)    To issue such orders in aid of execution of the Plan, to the extent authorized by Section 1142 of the Bankruptcy Code;

(g)    To consider any amendments to or modifications of the Plan or to cure any defect or omission, or reconcile any inconsistency, in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(h)    To hear and determine disputes or issues arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, any agreement, instrument, or other document

governing or relating to any of the foregoing or any settlement approved by the Bankruptcy Court;

(i)     To hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code (including, without limitation, any request by the Debtors prior to the Effective Date or request by the Liquidating Trust Administrator after the Effective Date for an expedited determination of tax under Section 505(b) of the Bankruptcy Code);

(j)     To hear and determine all disputes involving the existence, scope and nature of the injunctions granted under the Plan, the Confirmation Order or the Bankruptcy Code;

(k)     To issue injunctions and effect any other actions that may be necessary or appropriate to restrain interference by any Person with the consummation, implementation or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court;

(l)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)     To hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtors or the Liquidating Trust pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory;

(n)     To recover all assets of the Debtors and property of the Debtors' Estates, wherever located;

(o)     To enter a final decree closing the Chapter 11 Cases; and

(p)     To hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

12.1     *Effectuating Documents and Further Transactions.*

On or before the Effective Date, and without the need for any further order or authority, the Debtors shall file with the Bankruptcy Court or execute, as appropriate, such agreements and other documents that are in form and substance reasonably satisfactory to the Debtors as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Liquidating Plan Administrator is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

12.2     *Modification of Plan.*

Alterations, amendments or modifications of or to the Plan may be proposed in writing by the Debtors at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified satisfies the conditions of Sections 1122 and 1123 of the Bankruptcy Code and the Debtors shall have complied with Section 1125 of the Bankruptcy Code. The Plan may be altered, amended or modified at any time after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under Section 1129 of the Bankruptcy Code and the circumstances warrant such alterations, amendments or modifications. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan of Reorganization without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Equity Interests.

### 12.3 *Revocation or Withdrawal of the Plan*.

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtors revoke or withdraw the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors.

### 12.4 *Substantial Consummation*.

On the Effective Date, the Plan shall be deemed to be substantially consummated under Sections 1101 and 1127(b) of the Bankruptcy Code.

### 12.5 *Severability of Plan Provisions*.

In the event that, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable in accordance with its terms.

### 12.6 *Governing Law*.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent the Plan or Plan Supplement provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to its principles of conflict of laws.

12.7 *Notices.*

All notices, requests and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtors, to:

    Solstice LLC
    601 Union Street, Suit 4200
    Seattle, Washington 98101
    Attn: Carolynn Rockafellow
    Telephone: (415) 843-5113

    - and -

    King & Spalding LLP
    1185 Avenue of the Americas
    New York, New York 10036
    Attn:  Arthur J. Steinberg, Esq.
          Heath D. Rosenblat, Esq.
    Telephone: (212) 556-2100
    Facsimile: (212) 556-2222

If to the Creditors' Committee, to:

    Arent Fox LLP
    1675 Broadway
    New York, New York 10019
    Attn:  Schuyler G. Carroll, Esq.
          Ronni N. Arnold, Esq.
    Telephone: (212) 484-3900
    Facsimile: (212) 484-3990

*[Text Continued On Following Page]*

Dated: March 11, 2010
New York, New York

Respectfully Submitted,

Solstice,LLC, Solstice Management, LLC, Solstice
Ownership I, LLC, Solstice Ownership II, LLC, Solstice
Ownership III, LLC, Solstice Ownership IV, LLC, Solstice
Ownership V, LLC, Solstice Ownership VI, LLC, Solstice
Ownership VII, LLC, Sea Vision I, LLC, Parallel I LLC,
Parallel Aspen, LLC, Parallel Management LLC,
163 Charles Street No. 4 New York, LLC, 163 Charles
Street No. 5 New York, LLC, Solstice Ownership 7, S.r.l.

By: _____

Name:   Carolynn A. Rockafellow
Title:    CEO of Solstice, LLC, the managing
       member of each other Debtor

**Exhibit A to Plan of Liquidation**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| SOLSTICE, LLC, *et al.,* | : | Case No. 09-11010 (REG) |
| | : | (Jointly Administered) |
| Debtors.[1] | : | |

-------------------------------------------------------------------x

## LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement (the "Agreement") dated as of [_____], 2010, is entered into by and among the Debtors (the "Settlor") and U.S. Bank National Association, Corporate Trust Services, as the liquidating trust administrator (the "Liquidating Trust Administrator"), for the benefit of, *inter alia,* the holders of Allowed General Unsecured Claims in Class 3 (the "Beneficiaries") of the *Plan Of Liquidation Under Chapter 11 Of The Bankruptcy Code*, dated March 12, 2010 ("Plan").

### WITNESSETH

WHEREAS, the Plan was filed in the jointly-administered Chapter 11 Cases, Case No. 09-11010 (REG), and confirmed by the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"), by order dated [_____], 2010;

WHEREAS, the Liquidating Trust established by this Agreement is created pursuant to and for the purpose of effectuating the Plan;

---

[1] The Debtors consist of the following sixteen (16) entities: (i) Solstice, LLC; (ii) Solstice Management, LLC; (iii) Solstice Ownership I, LLC; (iv) Solstice Ownership II, LLC; (v) Solstice Ownership III, LLC; (vi) Solstice Ownership IV, LLC; (vii) Solstice Ownership V, LLC; (viii) Solstice Ownership VI, LLC; (ix) Solstice Ownership VII, LLC; (x) Sea Vision I, LLC; (xi) Parallel I, LLC; (xii) Parallel Aspen, LLC; (xiii) Parallel Management LLC; (xiv) 163 Charles Street No. 4 New York, LLC; (xv) 163 Charles Street No. 5 New York, LLC; and (xvi) Solstice Ownership 7, S.r.l.

WHEREAS, the Liquidating Trust shall have no objective to continue or to engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the purposes of the Liquidating Trust, this Agreement and the Plan;

WHEREAS, pursuant to the Plan, the Settlor, the Liquidating Trust Administrator, and the Beneficiaries are required to treat, for all federal income tax purposes, the transfer of the Liquidating Trust Assets to the Liquidating Trust (other than the funding of the Wind Down Expense Reserve and the Carve-Out) as a transfer of the Liquidating Trust Assets by the Settlor to the Beneficiaries in satisfaction of their Allowed General Unsecured Claims, followed by a transfer of the Liquidating Trust Assets by the Beneficiaries to the Liquidating Trust in exchange for the beneficial interest herein, and to treat the Beneficiaries as the grantors and owners of the Liquidating Trust in accordance with Treasury Regulation Section 301.7701-4(d);

WHEREAS, the Liquidating Trust is intended to be treated as a grantor trust for federal income tax purposes;

NOW, THEREFORE, for and in consideration of the mutual promises and covenants contained herein, in the Plan and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Settlor and the Liquidating Trust Administrator agree as follows:

## ARTICLE I

## DEFINITIONS AND INTERPRETATIONS

1.1     Definitions

     A.     *Agreement* shall mean this Liquidating Trust Agreement.

     B.     *Beneficiaries* shall collectively mean the holders of Allowed General Unsecured Claims in Class 3 under the Plan, or any successors to such Beneficiaries pursuant to Section 10.1 of this Agreement.

C.     *Creditor* shall mean a holder of an Allowed Claim under the Plan.

D.     *Effective Date* shall have the same meaning as set forth in the Plan.

E.     *Liquidating Trust* shall mean the Liquidating Trust established pursuant to the terms of this Agreement and the Plan.

F.     *Liquidating Trust Administrator* shall be the trustee of the Liquidating Trust and shall mean (x) initially, the persons/corporations named herein as the Liquidating Trust Administrator, and (y) any successors or replacements duly appointed under the terms of this Agreement.

G.     *Liquidating Trust Assets* shall mean the Liquidating Trust Assets as defined in the Plan, including the proceeds and/or income related thereto, held from time-to-time pursuant to this Agreement by the Liquidating Trust Administrator of the Liquidating Trust.

H.     *Settlor* shall mean the Debtors.

1.2    <u>Use of Plan Definitions</u>.  All capitalized terms used but not defined in this Agreement shall have the meanings ascribed to them in the Plan.  In the case of any inconsistency between the terms of this Agreement and the terms of the Plan, the terms of this Agreement shall govern and control.

1.3    <u>Interpretation</u>.  The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.  Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

1.4    <u>Particular Words</u>.  Reference in this Agreement to any Section or Article is, unless otherwise specified, to such Section or Article under this Agreement.  The words 'hereof,'

'herein,' and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

## ARTICLE II

## DECLARATION OF TRUST

2.1 <u>Creation and Name</u>. There is hereby created by this Agreement the Liquidating Trust, which shall be known as the "Solstice Liquidating Trust," and is the Liquidating Trust referred to as the Liquidating Trust in the Plan. The Liquidating Trust Administrator may conduct the affairs of the Liquidating Trust under the name of the "Solstice Liquidating Trust" only.

2.2 <u>Purpose of Liquidating Trust</u>.

A. The Settlor and the Liquidating Trust Administrator, pursuant to the Plan and in accordance with Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* ("<u>Bankruptcy Code</u>"), hereby create the Liquidating Trust for the purposes of collecting, distributing and liquidating the Liquidating Trust Assets for, *inter alia*, the benefit of the Beneficiaries in accordance with the terms of this Agreement and the Plan. The activities of the Liquidating Trust shall be limited to those activities set forth in Article III hereof and as otherwise contemplated by the Plan. The Liquidating Trust Administrator understands and agrees that the Liquidating Trust has no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the purposes of the Liquidating Trust.

B. The Liquidating Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or the Plan. The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes and, to the extent

permitted by applicable law, for state and local income tax purposes, with the beneficiaries treated as grantors and owners of the Liquidating Trust.

2.3    Transfer of Liquidating Trust Assets.

A.    The Settlor hereby grants, releases, assigns, conveys, transfers and delivers the Liquidating Trust Assets to the Liquidating Trust as of the Effective Date for the uses and purposes as specified in this Agreement and the Plan. The Settlor shall from time-to-time as and when reasonably requested by the Liquidating Trust Administrator execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate) and the Settlor shall take or cause to be taken such further action as the Liquidating Trust Administrator may reasonably deem necessary or appropriate, to vest or perfect in or confirm to the Liquidating Trust title to and possession of the Liquidating Trust Assets.

B.    For all federal income tax purposes, all parties (including, without limitation, the Settlor, the Liquidating Trust Administrator and the Beneficiaries) will treat the transfer of the Liquidating Trust Assets to the Liquidating Trust in accordance with the terms of this Agreement and the Plan (other than any amounts allocated as of the Effective Date for the funding of the Wind Down Expense Reserve and the Carve-Out), namely, as a transfer of the Liquidating Trust Assets by the Settlor to the Beneficiaries in satisfaction of their Allowed General Unsecured Claims, followed by a transfer of the Liquidating Trust Assets by the Beneficiaries to the Liquidating Trust in exchange for their beneficial interests in the Liquidating Trust. Thus, the Beneficiaries shall be treated as the grantors and owners of the Liquidating Trust.

2.4    Securities Law. Under Section 1145 of the Bankruptcy Code, the issuance of beneficial interests in the Liquidating Trust to the Beneficiaries under the Plan shall be exempt

from registration under the Securities Act of 1933, as amended, and all applicable state and local laws requiring registration of securities. If the Liquidating Trust Administrator determines, with the advice of counsel, that the Liquidating Trust is required to comply with the registration and reporting requirements of the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Liquidating Trust Administrator shall take any and all actions to comply with such reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.

## ARTICLE III

## ADMINISTRATION OF THE TRUST

3.1 <u>Rights, Powers and Privileges</u>. The Liquidating Trust Administrator shall have only the rights, powers and privileges expressly provided in this Agreement and in the Plan. The Liquidating Trust Administrator shall have the power to take the actions granted in the subsections below and any powers reasonably incidental thereto, which the Liquidating Trust Administrator, in its reasonable discretion, deems necessary or appropriate to fulfill the purposes of the Liquidating Trust, unless otherwise specifically limited or restricted by the Plan or this Agreement:

      A.     Hold legal title to any and all rights of the Settlor and the Beneficiaries (to the extent derived from the Settlor) in or arising from the Liquidating Trust Assets;

      B.     Maintain on the Liquidating Trust Administrator's books and records, a register evidencing the beneficial interest herein held by each Beneficiary;

      C.     Protect and enforce the rights of the Liquidating Trust respecting the Liquidating Trust Assets (including any Causes of Action) vested in the Liquidating Trust by the Plan and this Agreement by any method deemed appropriate including, without limitation, by judicial proceedings or otherwise;

D.   Calculate and make distributions to the Beneficiaries, as provided for in, or contemplated by, the Plan and this Agreement;

E.   Open and maintain bank accounts on behalf of or in the name of the Liquidating Trust;

F.   Liquidate the Liquidating Trust Assets and provide payment to any person in accordance with the provisions of the Plan

G.   Make all tax withholdings, file tax information returns (including the tax returns of the Debtors for periods prior to the Effective Date in connection with the Liquidating Trust Administrator's responsibilities more fully discussed in Section 3.1(N) below), make tax elections by and on behalf of the Liquidating Trust and file returns for the Liquidating Trust pursuant to the terms hereof;

H.   Send annually to each Beneficiary a separate statement as such is required by federal income tax and other applicable tax purposes stating the Beneficiary's Pro Rata Share of income, gain, loss, deduction or credit and instruct all such Beneficiaries to report such items on their federal tax returns;

I.   Report periodically to the Beneficiaries the status of the general unsecured claims resolution process, distributions on allowed general unsecured claims, and prosecution of Causes of Action.

J.   Establish such reserves for Disputed Claims, taxes, assessments, Liquidating Trust Administrator's fees, professional fees and other expenses of administration of the Liquidating Trust as may be necessary and appropriate for the proper operation of matters incident to the Liquidating Trust;

K.　　Pay all expenses and make all other payments relating to the Liquidating Trust Assets;

L.　　Retain and pay third parties pursuant to Article III, Section 3.2 hereof;

M.　　Carry insurance coverage or obtain a bond in such amounts as the Liquidating Trust Administrator deems advisable as an expense of the Liquidating Trust;

N.　　All powers provided under the Plan to the Liquidating Trust Administrator, including, without limitation, the right to allow, object to and/or reconcile General Unsecured Claims, pursue Causes of Action, marshal, liquidate, sell, abandon and/or distribute the Liquidating Trust Assets;

O.　　Invest any moneys, subject to Section 345 of the Bankruptcy Code, held as part of the Liquidating Trust Assets in accordance with the terms of Article III, Section 3.3 hereof;

P.　　Dissolve the Debtors, including causing all necessary documentation evidencing dissolution or cancellation and materials related thereto to be filed with the States of Delaware, California, Colorado and New York, as well as, administer the Wind-Down Reserve and Carve-Out pursuant to the terms of the Plan; and

Q.　　When appropriate after the final distribution to Beneficiaries has been made, terminate this Liquidating Trust and seek to close the Debtors' Chapter 11 Cases pursuant to Section 350(a) of the Bankruptcy Code.

R.　　Fill any position on the Advisory Board that has been vacant for more than thirty (30) days.

3.2　　<u>Agents and Professionals</u>.  The Liquidating Trust Administrator may, but shall not be required to, consult with and retain attorneys, accountants, appraisers, or other parties deemed

by the Liquidating Trust Administrator to have qualifications necessary to assist in the proper administration of the Liquidating Trust. The Liquidating Trust Administrator may pay the reasonable salaries, fees and expenses of such persons (including himself), including contingency fees, out of the Liquidating Trust Assets in the ordinary course of business. Legal fees for prosecution of Causes of Action by the Liquidating Trust Administrator may be made on a contingency fee arrangement which is acceptable to the Liquidating Trust Administrator. Fees of the Liquidating Trust Administrator will be paid in accordance with the schedule attached hereto as Exhibit A.

3.3 Investment and Safekeeping of Liquidating Trust Assets. All moneys and other Liquidating Trust Assets received by the Liquidating Trust (excluding the Wind-Down Reserve and Carve-Out) shall, until distributed or paid over as herein provided, be held in trust for the benefit of the Beneficiaries, but need not be segregated from other Liquidating Trust Assets, unless and to the extent required by law or the Plan. The Liquidating Trust Administrator shall be under no liability for interest or producing income on any moneys received by it herein and held for distribution or payment to the Beneficiaries, except as such interest shall actually be received by the Liquidating Trust Administrator. Investments of any moneys held by the Liquidating Trust shall be administered in accordance with Section 345 of the Bankruptcy Code and in the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs; provided, however, that the right and power of the Liquidating Trust Administrator to invest moneys held by the Liquidating Trust Administrator, the proceeds from any sale of shares of stock, or any income earned by the Liquidating Trust shall be limited to the right and power to invest such moneys, pending periodic distributions in accordance with Article IV hereof and the Plan. For the removal of doubt, the investment

powers of Liquidating Trust Administrator, other than those reasonably necessary to maintain the value of the Liquidating Trust Assets and to further the liquidating purpose of the Liquidating Trust, are limited to powers to invest in demand and time deposit, such as short-term certificates of deposits, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills.

3.4     <u>Limitations on Liquidating Trust Administrator</u>.     The Liquidating Trust Administrator shall not at any time, on behalf of the Liquidating Trust or Beneficiaries: (i) enter into or engage in any trade or business, and no part of the Liquidating Trust's Liquidating Trust Assets or the proceeds, revenue or income therefrom shall be used or disposed of by the Liquidating Trust in furtherance of any trade or business, or (ii) except as provided below, reinvest any Liquidating Trust Assets.

A.     The Liquidating Trust Administrator may only invest funds held in the Liquidating Trust consistent with the requirements of Article III, Section 3.3 hereof and Section 345 the Bankruptcy Code or any order of the Bankruptcy Court modifying such requirements and, provided that the Liquidating Trust Administrator does so, he shall have no liability in the event of insolvency of any institution in which he has invested any funds of the Liquidating Trust.

B.     The Liquidating Trust Administrator shall hold, collect, conserve, protect and administer the Liquidating Trust in accordance with the provisions of this Agreement and the Plan, and pay and distribute amounts as set forth herein for the purposes set forth in this Agreement.

3.5     <u>Bankruptcy Court Approval of Liquidating Trust Administrator Actions</u>. Except as provided in the Plan or otherwise specified in this Agreement, the Liquidating Trust

Administrator need not obtain the order or approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred hereunder, or account to the Bankruptcy Court. The Liquidating Trust Administrator shall exercise its business judgment for the benefit of the Beneficiaries in order to maximize the value of the Liquidating Trust Assets and distributions, giving due regard to the cost, risk, and delay of any course of action. Notwithstanding the foregoing, the Liquidating Trust Administrator shall have the right to submit to the Bankruptcy Court any question or questions regarding which the Liquidating Trust Administrator may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by the Liquidating Trust Administrator with respect to the Liquidating Trust Assets, this Liquidating Trust, the Agreement, the Plan, or the Debtors, including the administration and distribution of the Liquidating Trust Assets. The Bankruptcy Court shall retain jurisdiction for such purposes and shall approve or disapprove any such proposed action upon motion by the Liquidating Trust Administrator. In addition, the Liquidating Trust Administrator shall have the authority, but not the obligation, to seek Bankruptcy Court approval to sell any Liquidating Trust Asset free and clear of any and all liens, claims and encumbrances.

 3.6 <u>Valuation of Liquidating Trust Assets</u>. Pursuant to the Plan, 120 days after the Effective Date, or as soon as practicable thereafter, the Liquidating Trust Administrator shall apprise the beneficiaries of the Liquidating Trust of the estimated value of the Liquidating Trust Assets (excluding any amounts allocated as of the Effective Date for the Wind Down Expense Reserve and the Carve-Out). The valuation shall be used consistently by all parties (including the Liquidating Trust Administrator and the beneficiaries of the Liquidating Trust) for all federal income tax purposes. The purpose of the valuation is to comply with the general criteria for obtaining an IRS ruling that an entity created pursuant to a confirmed plan of reorganization

under Chapter 11 of the Bankruptcy Code will be classified as a liquidating trust. Any dispute regarding the valuation of these assets shall be resolved by the Bankruptcy Court, provided, however, that the determination of the Liquidating Trust Administrator shall be reviewed under the standards governing decisions of the Board of Directors of a corporation formed under the laws of the state of Delaware

## ARTICLE IV

## DISTRIBUTIONS FROM THE TRUST

4.1     Annual Distributions.    On at least an annual basis, the Liquidating Trust Administrator shall distribute to Beneficiaries an amount equal to the net income of the Liquidating Trust plus the net proceeds from the sale of Liquidating Trust Assets in accordance with the Plan; provided, however, that the Liquidating Trust Administrator must retain and reserve in the Liquidating Trust such amounts as are reasonably necessary to fund the Wind Down Expense Reserve and to satisfy amounts that would be distributable in respect of Disputed General Unsecured Claims if the Disputed General Unsecured Claims were allowed in the face amount of such Disputed General Unsecured Claim (the "Disputed Claim Reserve"), and any such other amounts (such as other claims or other contingent liabilities) as are reasonably necessary in his business judgment to fulfill his duties under the Plan or this Agreement. Except as provided in this subsection 4.1, the Liquidating Trust may not receive or retain cash or cash equivalent in excess of a reasonable amount to meet claims and contingent liabilities or to maintain the value of the assets during liquidation as described herein.

4.2     Pro Rata Share of Distributions.    Each Beneficiary shall receive its *Pro Rata* Share of any and all distributions to Class 3 in accordance with the Plan, except that the Liquidating Trust Administrator may withhold from amounts distributable to any Beneficiary, any and all amounts, determined in the Liquidating Trust Administrator's reasonable sole

discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

Subject to Bankruptcy Rule 9010, distributions and deliveries to the Beneficiaries shall be made at the address of each Beneficiary as set forth on the Proof of Claim filed by such Beneficiary (or at the last known address of such Beneficiary if no Proof of Claim is filed or if the Liquidating Trust Administrator has been notified by the Beneficiary of a change of address). If any Beneficiary's distribution is returned as undeliverable, no further distributions to such Beneficiary shall be made unless the Liquidating Trust Administrator is notified in writing within ninety (90) days of the distribution of such Beneficiary's then current address, at which time a check will be reissued to such Beneficiary without interest. All distributions under the Plan that are unclaimed for a period of six (6) months after distribution thereof shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code and revert to the Liquidating Trust for distribution by the Liquidating Trust Administrator to other Beneficiaries as provided herein and the Beneficiary of any undeliverable distribution shall not be entitled to participate in any further distributions under the Plan or this Agreement.

The Liquidating Trust Administrator, to the extent it deems it necessary to fulfill any obligation of the Liquidating Trust Administrator to any taxing authority, may require Persons who are to receive distributions under the Plan to provide the Liquidating Trust Administrator with appropriate taxpayer identification numbers and related withholding information before making a distribution to any such Person. If a Person shall fail to provide the Liquidating Trust Administrator with any requested taxpayer identification information within 120 days of the written request, this failure shall be deemed a waiver of all Claims against the Estates (including the right to any payment from the Liquidating Trust), and the funds that otherwise would have

been distributed to said Person shall revert and be distributed in accordance with the Plan to other Persons that have provided the requested taxpayer identification information, or to the Liquidating Trust, as appropriate.

4.3     Distributions After Allowance or Disallowance of a Disputed Claim. Within sixty (60) days of a Disputed Claim becoming an Allowed General Unsecured Claim, the Liquidating Trust Administrator shall distribute to the holder thereof, from the Disputed Claim Reserve, such amount of Liquidating Trust Assets as would have been distributed to such holder if its Claim had been an Allowed General Unsecured Claim on the Effective Date. The Liquidating Trust Administrator shall no longer reserve for and shall distribute to the Beneficiaries, pursuant to Article IV, Section 4.1 of this Agreement, the amount of any Disputed Claim that becomes disallowed.

4.4     Payments Limited to Liquidating Trust Assets. All payments to be made by the Liquidating Trust Administrator to or for the benefit of any Beneficiary shall be made only from the Liquidating Trust Assets. Each Beneficiary shall have recourse only to the Liquidating Trust Assets for distribution under this Agreement and the Plan.

4.5     Priorities of Distribution. Subject to the limitations set forth in the Plan and this Agreement, the Liquidating Trust Administrator must pay the operating and administrative expenses of the Liquidating Trust before approving distributions to or for the benefit of Beneficiaries.

4.6     United States Trustee Fees and Reports. After the Effective Date, the Liquidating Trust shall pay as an expense of the Liquidating Trust all fees incurred under 28 U.S.C. § 1930(a)(6) by reason of the Liquidating Trust's disbursements as may be required under the Confirmation Order until the Debtor's Chapter 11 Cases are closed. After the Confirmation

Date, the Liquidating Trust may prepare and serve on the Office of the U.S. Trustee such quarterly disbursement reports for the Liquidating Trust as required by the U.S. Trustee for as long as the Chapter 11 Cases remain open.

4.7     Time Bar to Payments.  Checks issued by the Liquidating Trust Administrator for distribution to any Beneficiary shall be null and void if not presented and honored within one-hundred-eighty (180) days after the date of issuance thereof.  All distributions under the Plan that are unclaimed for a period of six (6) months after distribution thereof shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code and shall revert to the Liquidating Trust for distribution by the Liquidating Trust Administrator to other Beneficiaries as provided herein and the Beneficiary of any such unclaimed distribution shall not be entitled to participate in any further distribution under the Plan or this Agreement.

4.8     *De Minimis* Distributions.  The Liquidating Trust Administrator shall not be required to make any distribution to any Beneficiary if the amount of said distribution on an Allowed General Unsecured Claim is less than $50, unless a request therefore is made in writing to the Liquidating Trust Administrator no later than thirty (30) days after the Effective Date.

## ARTICLE V

## BENEFICIARIES

5.1     Beneficial Interest Only.  The ownership of a beneficial interest in the Liquidating Trust shall not entitle any Beneficiary or the Settlor to any title in or to the Liquidating Trust Assets or to any right to call for a partition or division of such assets or to require an accounting, except as specifically provided herein.

5.2     Ownership of Beneficial Interests Hereunder.  Each Beneficiary shall own a beneficial interest herein equal in proportion to the Pro Rata Share of such Beneficiary's Allowed Claim in accordance with the Plan.

5.3     Evidence of Beneficial Interest.   Ownership of a beneficial interest in the Liquidating Trust (as described above herein) shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidating Trust by the Liquidating Trust Administrator.

5.4     Notice of Transfer of Beneficial Interest.   Any notice of a change of beneficial interest ownership subject to the terms of Article X, Section 10.1 of this Agreement shall be forwarded to the Liquidating Trust Administrator by registered or certified mail as set forth herein.   The notice shall be executed by both the transferee and the transferor, and the signatures of the parties shall be acknowledged before a notary public and as required by Bankruptcy Rule 3001(e).   The notice must clearly describe the interest to be transferred.   The Liquidating Trust Administrator may rely upon such signatures and acknowledgments as evidence of such transfer without the requirement of any further investigation.

## ARTICLE VI

## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1     Parties Dealing With the Liquidating Trust Administrator.   In the absence of actual knowledge to the contrary, any person dealing with the Liquidating Trust or the Liquidating Trust Administrator shall be entitled to rely on the authority of the Liquidating Trust Administrator or any of the Liquidating Trust Administrator's agents to act in connection with the Liquidating Trust Assets.

6.2     Limitation of Liquidating Trust Administrator's Liability.   Anything herein to the contrary notwithstanding, in exercising the rights granted herein, the Liquidating Trust Administrator shall exercise the Liquidating Trust Administrator's best judgment, to the end that the affairs of the Liquidating Trust shall be properly managed and the interests of all the Beneficiaries and the Settlors and the entities receiving payments under the Plan are safeguarded;

but the Liquidating Trust Administrator and his professionals shall not incur any responsibility or liability by reason of any error of law or of any matter or thing done or suffered or omitted to be done under this Agreement, except for gross negligence, willful misconduct, fraud, intentional misconduct, bad faith, reckless disregard of duty, self-dealing or breach of this Agreement..

6.3    Indemnification.  The Liquidating Trust Administrator and his professionals shall be indemnified and receive reimbursement against and from all losses, liabilities, expenses (including counsel fees), damages, taxes, suits, or claims that the Liquidating Trust Administrator may incur or sustain by reason of being or having been a Liquidating Trust Administrator or professional of the Liquidating Trust Administrator under this Agreement, or for performing any functions incidental to such service to the full extent permitted by applicable law, except if such loss, liability, expense, damage, tax, suit, or claim is finally determined by a court of competent jurisdiction to result from the Liquidating Trust Administrator's or his professional's willful misconduct, fraud, intentional misconduct, gross negligence, bad faith, reckless disregard of duty, self-dealing or breach of this Agreement.  The amounts necessary for such indemnification and reimbursement shall be paid by the Liquidating Trust Administrator out of the Liquidating Trust Assets.  The Liquidating Trust Administrator shall not be personally liable for the payment of any Liquidating Trust expense or claim or other liability of the Liquidating Trust, and no entity shall look to the Liquidating Trust Administrator personally for the payment of any such expense or liability.  This indemnification shall survive the death, dissolution, resignation or removal, as may be applicable, of the Liquidating Trust Administrator, or the termination of the Liquidating Trust, and shall inure to the benefit of the Liquidating Trust Administrator's heirs and assigns.

## ARTICLE VII

## SELECTION, REMOVAL AND COMPENSATION OF TRUSTEE

7.1     Initial Liquidating Trust Administrator.    The initial Liquidating Trust Administrator shall be U.S. Bank National Association, Corporate Trust Services.

7.2     Term of Service.  The Liquidating Trust Administrator shall serve until (a) the completion of all the Liquidating Trust Administrator's duties, responsibilities and obligations under this Agreement and the Plan; (b) termination of the Liquidating Trust Administrator in accordance with this Agreement; or (c) the Liquidating Trust Administrator's death, resignation or removal.

7.3     Removal of a Liquidating Trust Administrator. Any person serving as Liquidating Trust Administrator may be removed at any time by an order of the Bankruptcy Court on notice to the Liquidating Trust Administrator and Advisory Board (whose members shall initially consist of three (3) of the five (5) members of the Creditors' Committee), and a determination by the Bankruptcy Court that such removal is appropriate upon a showing of good cause.  The removal shall be effective on the date specified in the order.

7.4     Resignation of Liquidating Trust Administrator.    The Liquidating Trust Administrator may resign at any time by giving the Beneficiaries and Advisory Board at least thirty (30) days written notice of his intention to do so.  In the event of a resignation, the resigning Liquidating Trust Administrator shall render to the Beneficiaries a full and complete accounting of monies and assets received, disbursed, and held during the term of office of that Liquidating Trust Administrator.  The resignation shall be effective on the later of:  (i) the date specified in the notice; (ii) the date that is thirty (30) days after the date the notice is delivered; or (iii) the date the accounting described in the preceding sentence is delivered.

7.5     Appointment of Successor Liquidating Trust Administrator.     Upon the resignation, death, incapacity, or removal of a Liquidating Trust Administrator, the Advisory Board shall appoint a successor Liquidating Trust Administrator to fill the vacancy so created. Any successor Liquidating Trust Administrator so appointed shall consent to and accept in writing the terms of this Agreement and agrees that the provisions of this Agreement shall be binding upon and inure to the benefit of the successor Liquidating Trust Administrator and all of their heirs and legal and personal representatives, successors or assigns.

7.6     Powers and Duties of Successor Liquidating Trust Administrator.     A successor Liquidating Trust Administrator shall have all the rights, privileges, powers, and duties of his predecessor under this Agreement and the Plan.

7.7     Liquidating Trust Continuance.     The resignation, death, incapacity, or removal of the Liquidating Trust Administrator shall not terminate the Liquidating Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Liquidating Trust Administrator.     In the event that a successor Liquidating Trust Administrator is not appointed within thirty (30) days of when required under this Agreement, any Beneficiary may apply to the Bankruptcy Court for appointment of a successor Liquidating Trust Administrator upon notice to the Advisory Board.

7.8     Compensation and Costs of Administration.     The Liquidating Trust Administrator shall receive fair and reasonable compensation for his services in accordance with his customary rates, which shall be a charge against and paid out of the Liquidating Trust Assets (subject to the limitations set forth in this Agreement and the Plan), provided, however, that no compensation may be paid to the Liquidating Trust Administrator unless and until the following procedures have been followed with respect to any individual request for compensation:  (i) the Liquidating

Trust Administrator shall, no more frequently than monthly and no less frequently than quarterly, submit to the Advisory Board a statement (each, a "Statement") reflecting all fees (itemized, as applicable, to indicate the individual performing services, such individual's billable rate, a description of the services performed, the time spent, and the fees incurred) and itemized costs to be reimbursed, and (ii) the amount reflected in any such Statement may be paid to the Liquidating Trust Administrator twenty (20) days from the delivery of the Statement as specified in clause (i) above, unless prior to the expiration of such 20-day period, the Advisory Board shall have objected in writing to any compensation reflected in the Statement, in which case the undisputed amounts may be paid and the disputed amounts may only be paid by agreement of the Liquidating Trust Administrator and the objecting party, or pursuant to Final Order of the Bankruptcy Court, which shall retain exclusive jurisdiction over all disputes regarding the Liquidating Trust Administrator's compensation. All costs, expenses, and obligations, including without limitation filing fees, incurred by the Liquidating Trust Administrator (or professionals who may be employed by the Liquidating Trust Administrator in administering the Liquidating Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid from the applicable Liquidating Trust Assets prior to any distribution to the Beneficiaries (subject to the limitations set forth in this Agreement and the Plan).

7.9     Annual Reporting and Filing Requirements.

A.     Within forty-five (45) days after the end of each calendar year, the Liquidating Trust Administrator shall furnish a report to the Advisory Board of all Liquidating Trust Assets received by the Liquidating Trust, all Liquidating Trust Assets disbursed to Beneficiaries, and all Liquidating Trust Assets held by the Liquidating Trust during the preceding

calendar year. The Liquidating Trust Administrator's report will be available and provided to any Beneficiary upon request.

B. The Liquidating Trust Administrator shall file tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and any other applicable laws or regulations.

C. The tax returns filed by the Liquidating Trust Administrator shall report all Liquidating Trust earnings (including Liquidating Trust earnings retained as a Disputed Claim Reserve) for the taxable year being reported.

## ARTICLE VIII

## MAINTENANCE OF RECORDS

8.1 The Liquidating Trust Administrator shall maintain books and records containing a description of all property from time-to-time constituting the Liquidating Trust Assets and an accounting of all receipts and disbursements. Said books shall be open to inspection by any Beneficiary at any reasonable time during normal business hours. The Liquidating Trust Administrator shall furnish to any Beneficiary upon written request an annual statement of receipts and disbursements of the Liquidating Trust.

## ARTICLE IX

## DURATION OF TRUST

9.1 <u>Duration</u>. The Liquidating Trust shall become effective upon the Effective Date of the Plan. Thereupon, the Liquidating Trust and its provisions herein shall remain and continue in full force and effect until the earlier of three (3) years from the Effective Date (unless otherwise extended for cause by the Bankruptcy Court) or such time as the Liquidating Trust is terminated.

9.2     Termination Upon Distribution of All Liquidating Trust Assets.     Upon the payment of all costs, expenses, and obligations (including the final distribution to Beneficiaries) incurred in connection with administering the Liquidating Trust, the completion of all tax returns and any other filings or reports with the appropriate state or federal regulatory authorities, the distribution of all remaining Liquidating Trust Assets in accordance with the provisions of the Plan, the Confirmation Order and this Agreement, and the Order closing the Chapter 11 cases becoming a Final Order the Liquidating Trust Administrator shall terminate the Liquidating Trust and the Liquidating Trust Administrator shall have no further responsibility in connection therewith except as may be required to effectuate such termination under relevant law.

9.3     Termination After Third Year From Effective Date.     If the Liquidating Trust has not been previously terminated pursuant to Article IX, Section 9.2 hereof, on the third anniversary of the Effective Date, unless otherwise extended for cause by the Bankruptcy Court, the Liquidating Trust Administrator shall distribute all of the Liquidating Trust Assets to the Beneficiaries in accordance with the Plan and immediately thereafter, the Liquidating Trust shall terminate and the Liquidating Trust Administrator shall have no further responsibility in connection therewith, except as provided in Article IX, Section 9.4 below.  The Liquidating Trust Administrator, by the filing of a motion with the Bankruptcy Court having jurisdiction over the case and upon a finding that an extension is necessary to the liquidating purpose of the Liquidating Trust may extend the term of the Liquidating Trust in increments of only one (1) year periods.  Extensions can be obtained so long as each extension is approved by the Bankruptcy Court within six (6) months of the beginning of the extended term and so long as the Bankruptcy Court finds that the extension is necessary to the purposes of the Liquidating Trust; provided, however, that the aggregate of all such extensions shall not exceed two (2) years unless

the Liquidating Trust Administrator reasonably determines that additional extensions shall not jeopardize the status of the Liquidating Trust as a liquidating trust for federal income tax purposes based on the applicable Internal Revenue Code, Treasury Regulations, and IRS Administrative Pronouncements.

9.4     Continuance of Liquidating Trust for Winding Up.  After the termination of the Liquidating Trust and for the purpose of liquidating and winding up the affairs of the Liquidating Trust, the Liquidating Trust Administrator shall continue to act as such until his duties have been fully performed, including, without limitation, such post-distribution tasks as necessary to windup the affairs of the Liquidating Trust.  After the termination of the Liquidating Trust, the Liquidating Trust Administrator shall retain for a period of two (2) years the books, records, Beneficiary lists, and certificates and other documents and files which shall have been delivered to or created by the Liquidating Trust Administrator.  At the Liquidating Trust Administrator's discretion, all of such records and documents may, but need not, be destroyed at any time after four (4) years from the completion and winding up of the affairs of the Liquidating Trust.  Except as otherwise specifically provided herein, upon the discharge of all liabilities of the Liquidating Trust and final distribution of the Liquidating Trust, the Liquidating Trust Administrator shall have no further duties or obligations hereunder.

## ARTICLE X

## MISCELLANEOUS

10.1     Limitation on Transferability.  Beneficiaries' interest in the Liquidating Trust will be non-transferable, except with respect to the following transfers:  (a) transfers under the laws of descent or intestate succession, including transfers from an estate or testamentary trust; and (b) transfers by operation of law or by order of a court of competent jurisdiction.  In respect of such transfers, the transferor shall provide the Liquidating Trust Administrator with written

notice thirty (30) days prior to the proposed transfer, including all pertinent facts and, if applicable, documents relating to the transfer. The Liquidating Trust Administrator shall approve or disapprove the transfer and impose any conditions with respect to the transfer that the Liquidating Trust Administrator deems necessary or advisable in its sole discretion. The Liquidating Trust Administrator may require from the transferor or counsel to the Liquidating Trust (at his option) an opinion, in form and substance satisfactory to the Liquidating Trust Administrator, that the transfer will not cause the Liquidating Trust to be taxable as a corporation for federal income tax purposes. The Liquidating Trust Administrator may require the transferor to reimburse the Liquidating Trust for any expenses incurred in connection with the proposed transfer, whether or not approved. The Liquidating Trust Administrator shall determine in his sole discretion and record on the books and records of the Liquidating Trust the effective date of any transfer. Any transfer not approved pursuant to the procedures set forth herein shall be null and void. Any transfer so approved shall be a "Permitted Transfer." Upon a Permitted Transfer, the transferee shall be admitted as a participant of the Liquidating Trust, shall succeed to the transferring participant's interest, and the Liquidating Trust Administrator shall record on the books and records of the Liquidating Trust such transfer and new participant.

10.2   Notices. All notices to be given to Beneficiaries may be given by ordinary mail, or may be delivered personally, to the holders at the addresses appearing on the books kept by Liquidating Trust Administrator. Any notice or other communication which may be or is required to be given, served, or sent to the Liquidating Trust Administrator shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as follows:

If to the Liquidating Trust:

Liquidating Trust Administrator

With copy to:

If to the Advisory Board:

With copy to:

or to such other address as may from time-to-time be provided in written notice by the Liquidating Trust Administrator.

10.3     No Bond.  Notwithstanding any state law to the contrary, the Liquidating Trust Administrator (including any successor) shall be exempt from giving any bond or other security in any jurisdiction.

10.4     Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

10.5     Successors and Assigns.  This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns.

10.6     Headings.  The various headings of this Agreement are inserted for convenience only and shall not affect the meaning or understanding of this Agreement or any provision hereof.

10.7     No Execution.  All funds in the Liquidating Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary,

and no Beneficiary or any other Person can execute upon, garnish or attach the Liquidating Trust Assets or the Liquidating Trust Administrator in any manner or compel payment from the Liquidating Trust except by Final Order of the Bankruptcy Court.

10.8    Intention of Parties to Establish Grantor Liquidating Trust.  This Agreement is intended to create a grantor trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a grantor trust.

10.9    Amendment.  This Agreement may be amended only by order of the Bankruptcy Court.

10.10    Severability.  If any term, provision covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

IN WITNESS WHEREOF, the parties have executed this Agreement (or are deemed to have so executed this Agreement) as of the day and year written above.

THE DEBTORS                                    LIQUIDATING TRUST


By:_____        By:_____
Name:  Carolynn A. Rockafellow             Name:
Title:   CEO of Solstice, LLC, the managing   Title:   Liquidating Trust Administrator
          member of each other Debtor

# Exhibit A to Liquidating Trust Agreement

# U.S. BANK NATIONAL ASSOCIATION
## Fee Schedule

## SOLSTICE LLC – LIQUIDATING TRUST

### Liquidating Trust Administrator

**Acceptance Fee:**                                                                    $ 7,500

This one-time acceptance fee is based upon risk assessment, complexity of the
matter, the scope and nature of duties to be performed, the level of discretion
to be exercised and includes establishment of related trust account(s), the
review and consideration of the trust agreement, the receipt and investment of
initial deposit, setting up trust beneficiary records and acceptance of the
appointment.

**Annual Administration Fee:**                                                         $ 15, 000

This fee is payable annually in advance and includes the ministerial duties
required by the trust agreement including ongoing investment of funds, tax
reporting related tasks, basic monitoring of professionals/agents and payment
of their fees/ expenses.

**Distribution Fees:**                                                                 $5,000

The distribution fee is charged with respect to each distribution to
beneficiaries. Includes check issuance, mailing (excluding postage) and
check reconciliation.

**U.S. Bank Hourly Fees:**                                                             Hourly Rate

Hourly fees will be charged by U.S. Bank for services rendered, including
without limitation, working with counsel, accountants or other professionals
with respect to any litigation , claims processing and addressing issues
pertaining to the rights and responsibilities of U.S. Bank as trustee, its
representatives and the beneficiaries. These charges will be billed for time
actually incurred at U.S. Bank's hourly rate then in effect for the
administration of similar accounts (currently **$450** per hour). Hourly fee
charges will not apply to those ministerial services included the Annual
Administration Fee.

**Out-of-Pocket Expenses:**                                                            At Cost

Includes all related expenses and disbursements, including without limitation
accounting, tax reporting and fees /expenses of counsel and any other
professionals.

**(See below assumptions and conditions)**

**ASSUMPTIONS/CONDITIONS**

1. The above fees are subject to our review and consideration of the final form of trust agreement.

2. The names address and tax id nos. of the trust beneficiaries will be provided to the Trustee in electronic form to facilitate creation of the Liquidating Trust Administrator register.

3. There will be no more than 150 trust beneficiaries included on the trust beneficiary register.

4. Trust funds will be invested in U.S Bank automated sweep investment vehicles as permitted by the Trust Agreement.

5. An experienced accounting firm will be used to handle the required tax return preparation and reporting.

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an Account. For a non-individual person such as a business entity, a charity, a Trust, or other legal entity, we ask for documentation to verify its formation and existence as a legal entity. We may also ask to see financial statements, licenses, and identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation

February 17, 2010

**Exhibit B to Disclosure Statement**

Solstice
Membership Deposits

| Name* | Amount |
|---|---|
| INVESTOR 1 | $ 975,000.00 |
| INVESTOR 2 | $ 505,000.00 |
| INVESTOR 3 | $ 725,000.00 |
| INVESTOR 4 | $ 535,000.00 |
| INVESTOR 5 | $ 875,000.00 |
| INVESTOR 6 | $ 495,000.00 |
| INVESTOR 7 | $ 875,000.00 |
| INVESTOR 8 | $ 725,000.00 |
| INVESTOR 9 | $ 495,000.00 |
| INVESTOR 10 | $ 120,000.00 |
| INVESTOR 11 | $ 725,000.00 |
| INVESTOR 12 | $ 875,000.00 |
| INVESTOR 13 | $ 875,000.00 |
| INVESTOR 14 | $ 675,000.00 |
| INVESTOR 15 | $ 525,000.00 |
| INVESTOR 16 | $ 875,000.00 |
| INVESTOR 17 | $ 875,000.00 |
| INVESTOR 18 | $ 1,950,000.00 |
| INVESTOR 19 | $ 475,000.00 |
| INVESTOR 20 | $ 725,000.00 |
| INVESTOR 21 | $ 625,000.00 |
| INVESTOR 22 | $ 855,000.00 |
| INVESTOR 23 | $ 212,500.00 |
| INVESTOR 24 | $ 505,000.00 |
| INVESTOR 25 | $ 875,000.00 |
| INVESTOR 26 | $ 535,000.00 |
| INVESTOR 27 | $ 212,500.00 |
| INVESTOR 28 | $ 505,000.00 |
| INVESTOR 29 | $ 212,500.00 |
| INVESTOR 30 | $ 775,000.00 |
| INVESTOR 31 | $ 575,000.00 |
| INVESTOR 32 | $ 312,500.00 |
| INVESTOR 33 | $ 1,950,000.00 |
| INVESTOR 34 | $ 1,950,000.00 |
| INVESTOR 35 | $ 775,000.00 |
| INVESTOR 36 | $ 725,000.00 |
| INVESTOR 37 | $ 495,000.00 |
| INVESTOR 38 | $ 750,000.00 |
| INVESTOR 39 | $ 150,000.00 |
| INVESTOR 40 | $ 415,000.00 |
| INVESTOR 41 | $ 535,000.00 |
| INVESTOR 42 | $ 525,000.00 |
| INVESTOR 43 | $ 975,000.00 |
| INVESTOR 44 | $ 1,500,000.00 |
| INVESTOR 45 | $ 875,000.00 |
| INVESTOR 46 | $ 535,000.00 |
| INVESTOR 47 | $ 495,000.00 |
| INVESTOR 48 | $ 212,500.00 |
| INVESTOR 49 | $ 1,600,000.00 |
| INVESTOR 50 | $ 725,000.00 |

| | | |
|---|---|---|
| INVESTOR 51 | $ | 725,000.00 |
| INVESTOR 52 | $ | 875,000.00 |
| INVESTOR 53 | $ | 1,400,000.00 |
| INVESTOR 54 | $ | 495,000.00 |
| INVESTOR 55 | $ | 785,000.00 |
| INVESTOR 56 | $ | 110,000.00 |
| INVESTOR 57 | $ | 2,495,000.00 |
| INVESTOR 58 | $ | 495,000.00 |
| INVESTOR 59 | $ | 505,000.00 |
| INVESTOR 60 | $ | 475,000.00 |
| INVESTOR 61 | $ | 535,000.00 |
| INVESTOR 62 | $ | 495,000.00 |
| INVESTOR 63 | $ | 1,650,000.00 |
| INVESTOR 64 | $ | 445,000.00 |
| INVESTOR 65 | $ | 505,000.00 |
| INVESTOR 66 | $ | 415,000.00 |
| INVESTOR 67 | $ | 1,500,000.00 |
| INVESTOR 68 | $ | 385,000.00 |
| INVESTOR 69 | $ | 535,000.00 |
| INVESTOR 70 | $ | 535,000.00 |
| INVESTOR 71 | $ | 825,000.00 |
| INVESTOR 72 | $ | 535,000.00 |
| INVESTOR 73 | $ | 875,000.00 |
| INVESTOR 74 | $ | 845,000.00 |
| INVESTOR 75 | $ | 875,000.00 |
| INVESTOR 76 | $ | 535,000.00 |
| INVESTOR 77 | $ | 825,000.00 |
| INVESTOR 78 | $ | 495,000.00 |
| INVESTOR 79 | $ | 505,000.00 |
| INVESTOR 80 | $ | 815,000.00 |
| INVESTOR 81 | $ | 725,000.00 |
| INVESTOR 82 | $ | 725,000.00 |
| INVESTOR 83 | $ | 975,000.00 |
| INVESTOR 84 | $ | 475,000.00 |
| INVESTOR 85 | $ | 322,500.00 |
| INVESTOR 86 | $ | 495,000.00 |
| INVESTOR 87 | $ | 725,000.00 |
| INVESTOR 88 | $ | 445,000.00 |
| INVESTOR 89 | $ | 895,000.00 |
| INVESTOR 90 | $ | 725,000.00 |
| INVESTOR 91 | $ | 212,500.00 |
| INVESTOR 92 | $ | 535,000.00 |
| INVESTOR 93 | $ | 875,000.00 |
| INVESTOR 94 | $ | 145,000.00 |
| INVESTOR 95 | $ | 346,500.00 |
| INVESTOR 96 | $ | 575,000.00 |
| **Grand Total** | $ | 67,974,000.00 |

\* Individual names are confidential and proprietary and are part of a proprietary client list. An unredacted version was provided to the creditors' committee.