# EXHIBIT A

# (First Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| SOLSTICE, LLC, *et al.,* | : | Case No. 09-11010 (REG) |
| | : | (Jointly Administered) |
| Debtors. | : | |

-------------------------------------------------------------------x

# FIRST AMENDED PLAN OF LIQUIDATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Arthur J. Steinberg, Esq.
Heath D. Rosenblat, Esq.
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

*Counsel for the Debtors*

Dated: May [__], 2010

# ARTICLE I
## DEFINITIONS AND INTERPRETATION

**A.      Definitions**.

The following terms used herein shall have the respective meanings set forth below:

1.1      ***Administrative Expense Claim*** means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases under Sections 330, 503(b), 507(a)(2) and 507(b) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtors' Estates, (b) any actual and necessary costs and expenses of operating the Debtors' businesses, (c) any indebtedness or obligations incurred or assumed by the Debtors in Possession during the Chapter 11 Cases, and (d) any compensation for professional services rendered and reimbursement of expenses by a Professional Person incurred through the Effective Date.  Any fee or charge assessed against the Debtor' Estates under Section 1930 of chapter 123 of Title 28 of the United States Code is excluded from the definition of Administrative Expense Claim and will be paid in accordance with Section 2.4 of the Plan.

1.2      ***Advisory Board*** means those members of the Creditors' Committee that agree to serve after the Effective Date on the Advisory Board and shall meet and/or consult periodically with the Liquidating Trust Administrator and keep themselves apprised of the affairs of the Liquidating Trust.

1.3      ***Allowed*** means, with reference to any Claim against the Debtors, (a) any Claim against any Debtor that has been listed by the Debtors in the Schedules (as such Schedules may be amended by the Debtors from time-to-time in accordance with Bankruptcy Rule 1009) as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed or no timely objection to allowance or request for estimation has been interposed, (b) any timely filed proof of Claim as to which no objection has been or is interposed in accordance with Section 7.1 of the Plan or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder of such Claim, (c) any Claim expressly allowed by a Final Order or under the Plan, including the General Unsecured Claims of Members to the extent set forth in Section 5.2 of the Plan, (d) any Claim that is compromised, settled or otherwise resolved pursuant to a Final Order of the Bankruptcy Court, or under Section 7.3 of the Plan.  Unless otherwise specified in the Plan or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest on such Claim from and after the Commencement Date.

1.4      ***Amended and Restated Credit Agreement*** means that certain Amended and Restated Loan and Security Agreement, by and among the Debtors and Fortress dated May 31, 2007, as such agreement has been amended from time-to-time.

1.5    ***Asset Sale*** means the transaction approved by the Sale Order.

1.6    ***Avoidance Actions*** means any actions commenced, or that may be commenced before or after the Effective Date, pursuant to Sections 544, 545, 547, 548, 550, 551 or 553 of the Bankruptcy Code.

1.7    ***Bankruptcy Code*** means Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended from time-to-time, as applicable to these Chapter 11 Cases.

1.8    ***Bankruptcy Court*** means the United States Bankruptcy Court for the Southern District of New York or any other court of the United States having jurisdiction over these Chapter 11 Cases.

1.9    ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of Title 28 of the United States Code, as amended from time-to-time.

1.10    ***Business Day*** means any day other than a Saturday, Sunday or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.11    ***Cash*** means lawful currency of the United States, including, but not limited to, bank deposits, checks, and other similar items.

1.12    ***Carve-Out*** means the $50,000 that was set aside, pursuant to order of the Bankruptcy Court, as part of the Fortress adequate protection stipulation and order, for the payment of fees to Professional Persons.

1.13    ***Causes of Action*** means any and all Claims, Avoidance Actions, and rights of the Debtors, including claims of a Debtor against a non-Debtor entity.

1.14    ***Chapter 11 Cases*** means the jointly administered cases commenced by the Debtors styled as "In re Solstice, LLC, *et al*." and being jointly administered in the Bankruptcy Court under case number 09-11010 (REG) under Chapter 11 of the Bankruptcy Code.

1.15    ***Claim*** has the meaning set forth in Section 101(5) of the Bankruptcy Code.

1.16    ***Class*** means any group of substantially similar Claims or Equity Interests classified by the Plan pursuant to Section 1122 of the Bankruptcy Code.

1.17    ***Collateral*** means any property or interest in property of the Debtors' Estates subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable law.

1.18    **Commencement Date** means March 5, 2009, the date on which each of the Debtors (other than SRL) filed its voluntary petition under Chapter 11 of the Bankruptcy Code. With respect to SRL, June 12, 2009, is the date on which the SRL filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

1.19    **Confirmation Date** means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

1.20    **Confirmation Order** means the Final Order of the Bankruptcy Court confirming the Plan.

1.21    **Contingent Claim** means any Claim, the liability for which attaches or is dependent upon the occurrence or happening of, or is triggered by, an event, which event has not yet occurred, happened or been triggered as of the date on which such Claim is sought to be estimated or an objection to such Claim is filed.

1.22    **Creditor** shall mean a person which holds a Claim.

1.23    **Creditors' Committee** means the committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to Section 1102(a) of the Bankruptcy Code.

1.24    **Debtors** means each of the following sixteen (16) entities (i) Solstice; (ii) Solstice Management, LLC; (iii) Solstice Ownership I, LLC; (iv) Solstice Ownership II, LLC; (v) Solstice Ownership III, LLC; (vi) Solstice Ownership IV, LLC; (vii) Solstice Ownership V, LLC; (viii) Solstice Ownership VI, LLC; (ix) Solstice Ownership VII, LLC; (x) Sea Vision I, LLC; (xi) Parallel I LLC; (xii) Parallel Aspen, LLC; (xiii) Parallel Management LLC; (xiv) 163 Charles Street No. 4 New York, LLC; (xv) 163 Charles Street No. 5 New York, LLC; and (xvi) SRL.

1.25    **Debtors-in-Possession** means the Debtors in their capacity as Debtors-in-Possession in the Chapter 11 Cases under Sections 1107(a) and 1108 of the Bankruptcy Code.

1.26    **Disputed** means, with reference to any Claim, (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under Sections 502 or 503 of the Bankruptcy Code, (b) which has been or hereafter is listed by the Debtors on the Schedules as unliquidated, disputed or contingent and which has not been resolved by written agreement with the Debtors, pursuant to Section 7.3 of the Plan or a Final Order, or (c) as to which the Debtors or any other party in interest has interposed a timely objection and/or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order. Prior to the earlier of the time an objection has been timely filed and the expiration of the time within which to object to such Claim set forth herein or otherwise established by order of the Bankruptcy Court, a Claim shall be considered a Disputed Claim if the amount of the Claim specified in a proof of Claim exceeds the amount of the Claim scheduled by the Debtors as not disputed, contingent or unliquidated.

1.27    ***Distribution Date*** means a date or dates, as determined by the Liquidating Trust Administrator, on which the Liquidating Trust Administrator makes a distribution to holders of Allowed General Unsecured Claims.

1.28    ***Distribution Record Date*** means the Confirmation Date.

1.29    ***Effective Date*** means the first Business Day on which (a) no stay of the Confirmation Order is in effect and (b) all the conditions precedent to the effectiveness of the Plan specified in Section 9.1 of the Plan shall have been satisfied or waived as provided in Section 9.2 of the Plan.

1.30    ***Equity Interest*** means the interest of any holders of equity in Solstice represented by any instrument evidencing a present ownership interest in Solstice, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest.

1.31    ***Estates*** means the Debtors' Estates created pursuant to Section 541 of the Bankruptcy Code upon the filing of the Chapter 11 Cases.

1.32    ***Final Order*** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari* or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a new trial, reargument or rehearing shall then be pending or, (b) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, *certiorari* shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing shall have expired; underlined provided, underlined however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order.

1.33    ***First Amended Disclosure Statement*** means that certain disclosure statement for this Plan, dated as of May [4], 2010, including, without limitation, all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time-to-time, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

1.34    ***Fortress*** means, collectively, Fortress Credit Funding III LP, a Delaware limited partnership, and Fortress Credit Funding IV LP, a Delaware limited partnership.

1.35    ***General Unsecured Claim*** means any Claim against the Debtors other than an Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, Secured Claim, or Subordinated Fortress Penalty Claim.

1.36    ***Intercompany Claim*** means any Claim against any Debtor held by another Debtor.

1.37    ***Lien*** has the meaning set forth in Section 101(37) of the Bankruptcy Code.

1.38    ***Liquidating Trust*** means that trust established as a liquidating trust as described in Treasury Regulation §301.7701-4(d) pursuant to the Liquidating Trust Agreement.

1.39    ***Liquidating Trust Administrator*** means the person or entity selected by the Debtors and the Creditors' Committee charged with overseeing, *inter alia*, (a) the Claims resolution process, (b) the distribution process for Allowed General Unsecured Claims, (c) the pursuit, prosecution and/or resolution and compromise and settlement of the Causes of Action which the Debtors have as of the Effective Date, (d) the payment of all amounts under the Plan, including, without limitation, Administrative Expense Claims, and (e) the wind down process of the Debtors including the dissolution of the Debtors and the filing of final tax returns.  Upon the recommendation of the Creditors' Committee, the Debtors have selected U.S. Bank as the Liquidating Trust Administrator.  U.S. Bank is completely independent from the Debtors.

1.40    ***Liquidating Trust Agreement*** means that certain agreement dated [_____], 2010, substantially in the form attached hereto as <u>Exhibit A</u>.  If there are any inconsistencies between the Liquidating Trust Agreement and the Plan, the provisions of the Liquidating Trust Agreement shall be controlling.

1.41    ***Liquidating Trust Assets*** means (i) the remaining cash of the Debtors' as of the Effective Date, (ii) Causes of Actions, and (iii) any other asset of the Debtors not sold or otherwise disposed of or abandoned as of the Effective Date.

1.42    ***Local Bankruptcy Rules*** means the Local Bankruptcy Rules for the Southern District of New York, as amended from time-to-time.

1.43    ***Member*** shall mean a person who made a deposit and paid dues, at any time, to use the Debtors' destination club business.

1.44    ***Other Priority Claim*** means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment under Section 507(a)(3), (4), (5), (6), (7), (9) or (10) of the Bankruptcy Code.

1.45    ***Other Secured Claims*** means any Secured Claim not paid by the Debtors that is secured by the Debtors Collateral.

1.46    ***Person*** means an individual, partnership, corporation, limited liability company, cooperative, trust, unincorporated organization, association, joint venture, government or agency or political subdivision thereof or any other form of legal entity.

1.47    ***Plan*** means this First Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code, dated as of May [__], 2010, including, without limitation, as the same may be amended or modified from time-to-time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.48    ***Priority Tax Claim*** means any Claim of a governmental unit of the kind entitled to priority in payment as specified in Section 507(a)(8) of the Bankruptcy Code.

1.49    ***Pro Rata Share*** shall mean a fraction of (a) the numerator of which is the amount of a Creditor's Allowed General Unsecured Claims, and (b) the denominator of which is the aggregate amount of all Allowed General Unsecured Claims (other than Class 4 Claims) and all Disputed General Unsecured Claims.

1.50    ***Professional Person*** shall mean that Person retained by either the Debtors or the Creditors Committee pursuant to Sections 327 or 1103 of the Bankruptcy Code.

1.51    ***Sale Order*** means that certain order dated December 17, 2009, authorizing and approving the Debtors, *inter alia*, to sell substantially all of the Debtors' assets to Zodiac.

1.52    ***Schedules*** means, collectively, the schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases and statements of financial affairs filed by the Debtors under Section 521 of the Bankruptcy Code, Bankruptcy Rule 1007 and the Official Bankruptcy Forms in the Chapter 11 Cases, as may have been amended or supplemented through the Confirmation Date pursuant to Bankruptcy Rule 1007.

1.53    ***Secured Claim*** means any Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to a permissible setoff under Section 553 of the Bankruptcy Code, to the extent of such permissible setoff.

1.54    ***Solstice*** means Solstice, LLC, the direct or indirect managing member of each of the other Debtors.

1.55    ***SRL*** means Solstice Ownership 7, S.r.l.

1.56    ***Unliquidated Claim*** means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law or otherwise, as of the date on which such Claim is asserted or sought to be estimated.

1.57    ***U.S. Trustee*** means the United States Trustee appointed under Section 581 of Title 28 of the United States Code to serve in the Southern District of New York.

1.58    ***Wind Down Expense Reserve*** shall mean the cash set aside by the Liquidating Trust Administrator, from time-to-time, to pay (a) Administrative Expenses

accrued through the Effective Date, (b) priority tax claims, (c) the amounts due pursuant to Section 2.4 of the Plan, (d) the amounts due for Allowed Claims in Classes 1, 2 and 4, and (e) for expenses relating to the wind down of the Debtors. The Wind Down Expense Reserve shall be administered by the Liquidating Trust Administrator. The Carve Out shall be utilized by the Liquidating Trust Administrator to pay the professional fees described in Section 1.1(d) of the definition of Administrative Expense Claim.

1.59    ***Zodiac*** shall mean Zodiac Real Estate Limited, or its designee(s).

**B.      Interpretation; Application of Definitions and Rules of Construction**.

The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the construction of the Plan. Whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural, and each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and the neuter. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

**ARTICLE II**
**PROVISIONS FOR PAYMENT OF ADMINISTRATIVE**
**EXPENSES AND PRIORITY TAX CLAIMS**

2.1    ***Administrative Expense Claims***.

Subject to Section 2.2 of the Plan, and except to the extent that any entity entitled to payment of any Allowed Administrative Expense Claim agrees to a less favorable treatment and/or has been paid during the Chapter 11 Cases, each holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Allowed Administrative Expense Claim on or as soon as reasonably practicable following the later to occur of (a) Effective Date and (b) the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; provided, however, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors shall be paid in full in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions.

2.2    ***Professional Compensation and Reimbursement Claims.***

Each Professional Person seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under Sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (a) file, on or before the date that is forty-five (45) days after the Effective Date their respective applications for final allowances of compensation for

services rendered and reimbursement of expenses incurred and (b) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court in accordance with the order relating to or allowing any such Administrative Expense Claim.

2.3    ***Priority Tax Claims.***

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, settlement, and release of and in exchange for such Allowed Priority Tax Claim, payment in Cash in the full amount of such Allowed Priority Tax Claim, on or as soon as reasonably practicable following the later to occur of (x) the Effective Date, and (y) the date on which such claim becomes Allowed.

2.4    ***Statutory Fees.***

All fees payable under Section 1930 of Chapter 123 of Title 28 of the United States Code shall be paid on the Effective Date.

2.5    ***Administrative Expense Claim Bar Date For Non-Professional Persons.***

Each Administrative Expense Claim holder, other than a Professional Person (which is governed by Section 2.2 hereof), which has not been paid by the Confirmation Date, shall file an Administrative Expense Claim with the Bankruptcy Court and counsel for the Debtors by no later than forty-five (45) days after the Effective Date. The failure to file such Administrative Expense Claim by such deadline shall mean that such holder of the Administrative Expense Claim shall be deemed to have waived such Administrative Expense Claim, and such holder shall be ***forever barred*** from asserting such Administrative Expense Claim against the Debtors or the Liquidating Trust.

**ARTICLE III**
**CLASSIFICATION OF CLAIMS AND**
**EQUITY INTERESTS, IMPAIRMENT AND VOTING**

The following table designates the classes of Claims against and Equity Interests in the Debtors and specifies which of those classes are impaired or unimpaired by the Plan and entitled to vote to accept or reject the Plan in accordance with Section 1126 of the Bankruptcy Code or deemed to reject the Plan.

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Other Priority Claims | Unimpaired | No (deemed to accept) |
| Class 2 | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 3 | General Unsecured Claims | Impaired | Yes |
| Class 4 | General Unsecured Claims -- All Cash Out Claims Against the Debtors | Impaired | Yes (but once the election is made, they are deemed to accept) |

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 5 | Subordinated Fortress Penalty Claim | Impaired | Yes |
| Class 6 | Equity Interests | Impaired | No (deemed to reject) |

## ARTICLE IV
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

4.1    *Other Priority Claims (Class 1)*.

(a)    <u>Impairment and Voting.</u>  Class 1 is unimpaired by the Plan.

(b)    <u>Distributions.</u>  Except to the extent that a holder of an Allowed Other Priority Claim agrees to a different treatment, each holder of an Allowed Other Priority Claim shall receive, in full satisfaction of such other unpaid Other Priority Claim, (a) Cash in the full amount of such claim on or as soon as reasonably practicable following the later to occur of (x) the Effective Date or as soon thereafter as is reasonably practicable and (y) the date on which such Claim becomes Allowed.

4.2    *Other Secured Claims (Class 2)*.

(a)    <u>Impairment and Voting.</u>  Class 2 is unimpaired by the Plan.

(b)    <u>Distributions.</u>  Except to the extent that a holder of an Allowed Other Secured Claim agrees to a different treatment, each holder of an Allowed Other Secured Claim shall receive, in full satisfaction of such other unpaid Other Secured Claim, (a) the property securing such Allowed Other Secured Claim, or (b) Cash in an amount equal to the value of the property securing such Allowed Other Secured Claim.

4.3    *General Unsecured Claims (Class 3)*.

(a)    <u>Impairment and Voting.</u>  Class 3 is impaired by the Plan.

(b)    <u>Distributions.</u>  Except to the extent that a holder of an Allowed General Unsecured Claim agrees to a different treatment, including electing on the Ballot to take the Class 4 "Cash Out" option, on the Effective Date or as soon as practicable thereafter, and on subsequent Distribution Dates as determined by the Liquidating Trust Administrator, each holder of an Allowed General Unsecured Claim, shall receive its Pro Rata Share of the Liquidating Trust Assets available for distribution on account of Allowed General Unsecured Claims.  The Wind Down Expense Reserve shall not be utilized to pay Allowed General Unsecured Claims of Class 3 Claim holders until all obligations that the Wind Down Expense Reserve is intended to pay, are satisfied in full.

4.4    ***General Unsecured Claims -- All Cash Out Claims Against the Debtors
(Class 4).***

(a)    <u>Impairment and Voting.</u>  Class 4 is impaired by the Plan.

(b)    <u>Distributions.</u>  On or as soon as practicable after the later of (a) the
Effective Date and (b) thirty (30) days after the date on which such Claim becomes an Allowed
Claim, each holder of an Allowed Claim in Class 4 shall receive, in full satisfaction, settlement,
release and discharge thereof, and in exchange therefor, Cash in an amount equal to ten percent
(10%) of the face amount of such Allowed Claim, <u>provided</u>, <u>however</u>, such Cash distribution
will not exceed $5,000 per Allowed Claim.

4.5    ***Subordinated Fortress Penalty Claim (Class 5)***.

(a)    <u>Impairment and Voting.</u>  Class 5 is impaired by the Plan.  Fortress
Subordinated Penalty Claim, approved by the January 13, 2010 Stipulation and Consent Order of
the Bankruptcy Court in the amount of $608,264.95, is subordinated to Allowed General
Unsecured Claims.

(b)    <u>Distributions.</u>  Holders of Class 5 claims will not get a distribution
under the Plan until all Allowed General Unsecured Claims have been paid in full.

4.6    ***Equity Interests (Class 6)***.

(a)    <u>Impairment and Voting.</u>  Class 6 is impaired by the Plan.

(b)    <u>Distributions.</u>  Holders of the existing Equity Interests shall not
receive or retain any distribution or payment on account of such Equity Interests.  The Equity
Interests shall be deemed cancelled as of the Effective Date.  The equity interests held by
Solstice in the other Debtors, or by any Debtor (other than Solstice) in another Debtor shall be
deemed cancelled under the Plan as of the Effective Date, except to the extent requested by
Zodiac, prior to the Confirmation Date, to effectuate the Asset Sale for certain of the Debtors.
Under the Asset Sale, Zodiac had the option to acquire the capital stock of a Debtor (other than
Solstice) in lieu of purchasing the assets of such Debtor.

## ARTICLE V
## MEANS OF IMPLEMENTATION

5.1    ***Substantive Consolidation***.

The Plan contemplates and is predicated upon substantive consolidation of the
Debtors into a single entity for purpose of all actions under the Plan.  Entry of the Confirmation
Order shall constitute approval, pursuant to Section 105(a) of the Bankruptcy Code, effective as
of the Effective Date, of the substantive consolidation of the Chapter 11 Cases for all purposes
related to the Plan, including, without limitation, for purposes of voting, confirmation and
distribution.  On and after the Effective Date, (i) all assets and liabilities of the Debtors shall be
deemed merged so that all of the assets of the Debtors shall be available to pay all of the

liabilities under the Plan as if it were one company, (ii) no distributions shall be made under the Plan on account of Intercompany Claims among the Debtors, (iii) no distributions will be made under the Plan on account of any Equity Interests held by a Debtor, (iv) all guarantees of the Debtors of the obligations of any other Debtor shall be deemed eliminated so that any claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of the Debtors shall be deemed to be one obligation of the consolidated Debtors, and (v) each and every Claim filed or to be filed in the Chapter 11 Case against any of the Debtors shall be deemed filed against the consolidated Debtors, and shall be deemed one Claim against and obligation of the consolidated Debtors.

> 5.2    *Settlement of Certain Claims Including General Unsecured Claims of Members.*

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution, releases and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan.  All Plan distributions made to creditors holding Allowed Claims in any Class are intended to be and shall be final, and no Plan distribution to the holder of a Claim in one Class shall be subject to being shared with or reallocated to the holders of any Claim in another Class by virtue of any prepetition collateral trust agreement, shared collateral agreement, subordination agreement or other similar inter-creditor arrangement.  For every Member that paid cash to the Debtors prior to the Commencement Date, as a deposit for its Membership (*i.e.*, the Membership Deposits) in the Debtors' Destination Club, the Member shall have, subject to the next sentence, an Allowed General Unsecured Claim for the amount of the cash deposit made that was not repaid, and shall have no other Allowed General Unsecured Claim in the Chapter 11 Cases.  For purposes of calculating a Member's Allowed General Unsecured Claim, any amounts owed by the Member to the Debtors will be set-off against the unpaid Deposit amount paid by the Member.  A schedule of the Member Allowed General Unsecured Claims is attached to the First Amended Disclosure Statement as <u>Exhibit B</u>.  By agreeing to this settlement, a Member will not be releasing or reducing its claim against any Person which is a non-Debtor.  <u>Exhibit B</u> to the First Amended Disclosure Statement has been amended.  <u>Exhibit B</u>, as amended, does not reflect those individuals or entities that were equity investors in Solstice and, as a result of such equity interest, obtained the rights of a Member to use of the Properties of the destination club.  Should such individuals or entities establish, upon proof to the Debtors and the Creditors' Committee prior to the Confirmation Date, that such Member rights were obtained by the individual or entity through a separate and distinct payment of monies that was not referable to its equity interest, in such case only, such individuals or entities will be governed by the terms of the settlement with Members regarding the payment of cash to the Debtors prior to the Commencement Date as a deposit for its membership in the Debtors' destination club.

> 5.3    *Liquidating Trust*.

(a)    <u>Purpose of the Liquidating Trust</u>.  On the Effective Date, the Debtors shall transfer to the Liquidating Trust, the Liquidating Trust Assets from which the proceeds thereof will be utilized, among other things, for the payments to Creditors in Class 3

and Class 4. The Debtors shall relinquish any and all rights in and to the Liquidating Trust Assets which shall be transferred to the Liquidating Trust free and clear of all Claims and Liens in accordance with Section 1141 of the Bankruptcy Code. The Liquidating Trust shall be established for the purpose of liquidating assets for and on behalf of holders of Allowed General Unsecured Claims, in accordance with Treas. Reg. §301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. The Liquidating Trust Administrator shall also make the payments required by the Plan, and wind down the Debtors. The Liquidating Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein. The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes and, to the extent permitted by applicable law, for state and local income tax purposes, with the beneficiaries treated as grantors and owners of the trust.

(b)    <u>Liquidating Trust Administrator; Termination of the Board and Officers of the Debtors</u>. The retention of the Liquidating Trust Administrator shall be pursuant to the Liquidating Trust Agreement acceptable in all respects to the Debtors, substantially in the form annexed to the First Amended Disclosure Statement. The Liquidating Trust Administrator shall be deemed to have been appointed as the Debtors' Estates' representative by the Bankruptcy Court pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code.

In the event that the Liquidating Trust Administrator resigns, is removed, terminated or otherwise unable to serve as the Liquidating Trust Administrator, then the Advisory Board shall have the right to select a successor. Any successor Liquidating Trust Administrator appointed shall be bound by and comply with the terms of the Plan, the Confirmation Order and the Liquidating Trust Agreement.

On the Effective Date, the Liquidating Trust Administrator will be the sole authorized representative and signatory of the Liquidating Trust. The powers, authority, responsibilities and duties of the Liquidating Trust Administrator shall be governed by the Plan, the Confirmation Order, the Liquidating Trust Agreement and the Bankruptcy Code. The Liquidating Trust Administrator may execute, deliver, file or record such documents, instruments, releases and other agreements, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Liquidating Trust. On the Effective Date, the board of directors and the officers of the Debtors shall no longer be in control over the Debtors' assets, all of which shall be transferred to the Liquidating Trust. In addition, the Liquidating Trust Administrator shall be in full control over the wind down of the Debtors. To be specific, after the Effective Date, the Board of Directors or the officers of the Debtors shall not take any action relating to the Debtors. All employees of the Debtors, not otherwise terminated by the Effective Date, shall be deemed terminated as of the Effective Date, and all employment contracts with the Debtors not otherwise terminated by the Effective Date, shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code.

(c)    <u>Transfer of Assets</u>. The transfer of the Liquidating Trust Assets to the Liquidating Trust will be made for the benefit of the beneficiaries thereof, but only to the extent such beneficiaries are entitled to distributions under the Plan. Upon completion of the transfer of the Liquidating Trust Assets into the Liquidating Trust, the Debtors will have no interest in, or with respect to, Liquidating Trust Assets, or the Liquidating Trust. For all federal

income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trust Administrator and the beneficiaries) will treat the transfer of assets to the Liquidating Trust in accordance with the terms of the Plan (other than any amounts allocated as of the Effective Date for the funding of the Wind Down Expense Reserve and the Carve-Out), as a transfer to the beneficiaries, followed by a transfer by such beneficiaries to the Liquidating Trust, and the beneficiaries will be treated as the grantors and owners thereof.

(d)    <u>Valuation of Assets</u>**.**  120 days after the Effective Date, or as soon as practicable thereafter, the Liquidating Trust Administrator shall value the Liquidating Trust Assets consistently for federal and other income tax purposes and apprise the beneficiaries of the Liquidating Trust (excluding any amounts allocated as of the Effective Date for the Wind Down Expense Reserve and Carve-Out).  After the Effective Date, the Liquidating Trust Administrator, in reliance upon such professionals as the Liquidating Trust Administrator may retain, shall make a good faith valuation of the Liquidation Trust Assets.  Such valuation shall be made available from time to time, to the extent necessary or appropriate as reasonably determined by the Liquidating Trust Administrator in reliance on its professionals.  The purpose of the valuation is to comply with the general criteria for obtaining an IRS ruling that an entity created pursuant to a confirmed plan of reorganization under Chapter 11 of the Bankruptcy Code will be classified as a liquidating trust.  Any dispute regarding the valuation of these assets shall be resolved by the Bankruptcy Court, <u>provided</u>, <u>however</u>, that the determination of the Liquidating Trust Administrator shall be reviewed under the standards governing decisions of the Board of Directors of a corporation formed under the laws of the state of Delaware.

(e)    <u>Responsibilities and Authority of the Liquidating Trust Administrator.</u>  The responsibilities and authority of the Liquidating Trust Administrator shall include (a) calculating and implementing all distributions for Class 3 and Class 4; (b) administering and paying taxes, including, among other things, (i) filing of tax returns (including tax returns of the Debtors for periods prior to the Effective Date), and (ii) representing the interest and account of the Liquidating Trust before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit; (c) periodic reporting to the beneficiaries of the Liquidating Trust of the status of the General Unsecured Claims resolution process, distributions on Allowed General Unsecured Claims, and prosecution of Causes of Action; (d) liquidating the assets of the Liquidating Trust and providing payments to any Person in accordance with the provisions of the Plan; (e) retaining and paying at normal and customary rates or contingency fee basis, on a monthly basis, professionals in connection with the Liquidating Trust Administrator's duties; (f) reviewing, analyzing, and objecting to General Unsecured Claims, including the prosecution of such objections as described more fully in the Liquidating Trust Agreement; (g) distributing information statements as required for federal income tax and other applicable tax purposes; and (f) such other responsibilities as may be vested in the Liquidating Trust Administrator pursuant to the Plan, Liquidating Trust Agreement or Bankruptcy Court order or as may be necessary and proper to carry out the provisions of the Plan.

(f)    <u>Powers of the Liquidating Trust Administrator</u>.  The powers of the Liquidating Trust Administrator to administer the Liquidating Trust shall, without any further Bankruptcy Court approval in each of the following cases, include, without limitation, (a) the

power to invest funds, in accordance with Section 345 of the Bankruptcy Code, in, and withdraw, make distributions and pay taxes and other obligations owed by the Liquidating Trust from funds held by the Liquidating Trust Administrator in accordance with the Plan and Liquidating Trust Agreement, (b) the power to engage and compensate without prior Bankruptcy Court order or approval employees and Professional Persons to assist the Liquidating Trust Administrator with respect to his responsibilities, (c) the power to pursue, prosecute, resolve and compromise and settle Causes of Action on behalf of or against the Liquidating Trust without prior Bankruptcy Court approval but in accordance with the Liquidating Trust Agreement, (d) the power to object to claims, including, without limitation, the power to subordinate and recharacterize claims by objection, motion, or adversary proceeding, and (e) such other powers as may be vested in or assumed by the Liquidating Trust Administrator pursuant to the Plan, the Liquidating Trust Agreement, Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan. Except as expressly set forth herein and in the Liquidating Trust Agreement, the Liquidating Trust Administrator, on behalf of the Liquidating Trust, shall have absolute discretion to pursue or not to pursue any and all claims, rights, Causes of Action, as he determines is in the best interests of the beneficiaries and consistent with the purposes of the Liquidating Trust, and shall have no liability for the outcome of his decision, other than those decisions constituting gross negligence or willful misconduct. The Liquidating Trust Administrator may incur any reasonable and necessary expenses in liquidating and converting the assets in the Liquidating Trust to Cash.

(g)    Enforcement of Causes of Action.  Pursuant to Bankruptcy Code Section 1123(b), the Liquidating Trust Administrator, on behalf of and for the benefit of the Liquidating Trust, shall be vested with and shall retain and may enforce any and all Causes of Action held by, through, or on behalf of the Debtors, [the Creditors' Committee] and/or the Estate against any other Person, arising before the Effective Date that have not been fully resolved or disposed of prior to the Effective Date, whether or not such Claims or Causes of Action are specifically identified in the First Amended Disclosure Statement accompanying the Plan and whether or not litigation with respect to same has been commenced prior to the Effective Date.  With respect to the Avoidance Actions, the Debtors have not yet undertaken a detailed analysis of the nature and amount of any Avoidance Actions and therefore do not have a specific list which includes all of the Avoidance Actions that may be brought by the Liquidating Trust Administrator on behalf of the  Liquidating Trust for the benefit of all holders of Allowed General Unsecured Claims.  For the avoidance of doubt, this Plan preserves and transfers to the Liquidating Trust Causes of Actions that Exist as the Effective Date.

The recoveries from the Causes of Action will be deposited into the Liquidating Trust.

(h)    Compensation of Liquidating Trust Administrator.    The Liquidating Trust Administrator shall fully comply with the terms, conditions and rights set forth in the Plan, Confirmation Order and the Liquidating Trust Agreement.  The Liquidating Trust Administrator shall not be required to file a fee application to receive compensation.  The compensation for the Liquidating Trust Administrator will be paid in accordance with the schedule set forth on Exhibit A to the Liquidating Trust Agreement.

(i)    <u>Retention and Payment of Professionals.</u>  The Liquidating Trust Administrator shall have the right to retain the services of attorneys, accountants, and other professionals and agents, including, without limitation, the Professional Persons in the discretion of the Liquidating Trust Administrator to assist and advise the Liquidating Trust Administrator in the performance of his duties and compensate such professionals from the assets of the Liquidating Trust.  Any fees (including filing fees and other expenses) if any, of the Liquidating Trust Administrator may be paid from the Liquidating Trust.

(j)    <u>Limitation on Liability of the Liquidating Trust Administrator.</u> The Liquidating Trust Administrator shall use commercially reasonable judgment in administering the Liquidating Trust and the Liquidating Trust Administrator and his professionals shall be entitled to indemnification out of the assets of the Liquidating Trust against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that the Liquidating Trust Administrator or his professionals may incur or sustain by reason of being or having been a Liquidating Trust Administrator or professional of the Liquidating Trust Administrator or for performing any functions incidental to such service; <u>however</u>, the foregoing shall not relieve the Liquidating Trust Administrator or his professional from liability for bad faith, willful misfeasance, reckless disregard of duty, gross negligence, fraud, self-dealing or breach of financial duty.

(k)    <u>Termination of the Liquidating Trust.</u>  The existence of the Liquidating Trust and the authority of the Liquidating Trust will commence as of the Effective Date and will remain and continue in full force and effect until all of the Liquidating Trust Assets are liquidated in accordance with the Plan, the funds in the Liquidating Trust have been completely distributed in accordance with the Plan, all tax returns and any other filings or reports have been filed with the appropriate state or federal regulatory authorities and the Order closing the Chapter 11 Cases is a Final Order.  At such time as the Liquidating Trust has been fully administered (*i.e.*, when all things requiring action by the Liquidating Trust Administrator have been done, and the Plan has been substantially consummated) and in all events within sixty (60) days after the final Distribution Date, the Liquidating Trust Administrator will file an application for approval of its final report and the entry of the final decree by the Bankruptcy Court.

(l)    <u>Appointment of Advisory Board.</u>  A creditor "Advisory Board" shall be created on the Effective Date.  The Advisory Board shall consist of the members of the Creditors' Committee willing to serve on the Advisory Board.  The Advisory Board shall adopt bylaws, as it may deem appropriate.  In the event of any vacancies, the remaining members shall have the authority to fill such vacancy.  In the event any position is vacant for more than thirty (30) days, the Liquidating Trust Administrator shall have the authority, without need of notice to the remaining members of the Advisory Board, to fill such vacancy.  Upon certification by the Liquidating Trust Administrator that all Causes of Action and Disputed General Unsecured Claims have been concluded and all distributions in accordance with the Plan have been made, the Advisory Board shall be disbanded without need for further notice or action.

(m)    <u>Rights and Powers of the Advisory Board.</u>  The Advisory Board shall be entitled to monitor the status and progress of Disputed Claims and Causes of Action. The Advisory Board may meet and/or consult periodically with the Liquidating Trust

Administrator and keep itself apprised of the affairs of the Liquidating Trust. The Advisory Board shall have the authority to remove the Liquidating Trust Administrator and appoint a successor Liquidating Trust Administrator in accordance with the terms of the Liquidating Trust Agreement.

(n)     Exculpation Relating to the Liquidating Trust. No Holder of a Claim or any other party-in-interest will have, or otherwise pursue, any Claim or Cause of Action against the Liquidating Trust Administrator, the Advisory Board, the Liquidating Trust or the employees or professionals thereof (solely in the performance of their duties thereas), for making payments in accordance with the Plan or for fulfilling any functions incidental to implementing the provisions of the Plan or the Liquidating Trust, except for any acts or omissions to act that are the result of willful misconduct or gross negligence.

(o)     Dissolution of Committee. On the Effective Date and upon the creation of the Liquidating Trust, the powers and duties of the Creditors' Committee will terminate and the Creditors' Committee will cease to exist, except with respect to the filings of any application for allowance of fees and expenses of the Professional Persons engaged by the Creditors' Committee and expenses of the members of the Creditors' Committee.

### 5.4     *Termination of the Debtors.*

On the Effective Date or as soon thereafter as possible, the Liquidating Trust Administrator will cause to be filed with the States of Delaware, California, Colorado, New York and any other governmental authority such certificate of dissolution or cancellation and other certificates or documents as may be or become necessary to implement the termination of the legal existence of the Debtors.

### 5.5     *Method of Distributions Under the Plan.*

(a)     Distributions to holders of Claims against the Debtors shall be made by the Liquidating Trust Administrator in accordance with the terms of the Plan and the Liquidating Trust Agreement.

(b)     All payments due under the Plan, other than payments to be made to Class 3 Claim holders on account of their Allowed General Unsecured Claims, shall be made by the Liquidating Trust Administrator from the Wind Down Expense Reserve.

(c)     At reasonable periodic intervals determined by the Liquidating Trust Administrator, in his sole discretion, the Liquidating Trust Administrator shall make distributions to holders of Class 3 claims in accordance with the Liquidating Trust Agreement and the Plan. Class 4 Claims will be paid by the Liquidating Trust Administrator in accordance with the Plan.

### 5.6     *Cancellation of Existing Agreements and Equity Interests.*

Except (a) as otherwise expressly provided in the Plan, (b) with respect to executory contracts or unexpired leases that have been assumed and assigned by the Debtors, or

(c) for purposes of evidencing a right to distributions under the Plan, on the Effective Date, all Equity Interests and other instruments evidencing any Claims against the Debtors shall be deemed automatically cancelled without further act or action under any applicable agreement, law, regulation, order or rule.

## ARTICLE VI
## PROVISIONS GOVERNING VOTING AND DISTRIBUTIONS

6.1     *Voting of Claims*.

Each holder of an Allowed Claim in an impaired class of Claims that is entitled to vote on the Plan shall be entitled to vote separately to accept or reject the Plan, as provided in such order as is entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order of the Bankruptcy Court.

6.2     *Nonconsensual Confirmation*.

If any impaired class of Claims entitled to vote shall not accept the Plan by the requisite statutory majority provided in Section 1126(c) of the Bankruptcy Code, the Debtors reserve the right to amend the Plan or undertake to have the Bankruptcy Court confirm the Plan under Section 1129(b) of the Bankruptcy Code or both.  With respect to impaired classes of Claims that are deemed to reject the Plan, the Debtors shall request that the Bankruptcy Court confirm the Plan pursuant to Section 1129(b) of the Bankruptcy Code.

6.3     *Tax Identification Numbers*

The Liquidating Trust Administrator, to the extent it deems it necessary to fulfill any obligation of the Liquidating Trust Administrator to any taxing authority, may require Persons who are to receive distributions under the Plan to provide the Liquidating Trust Administrator with appropriate taxpayer identification numbers and related withholding information before making a distribution to any such Person.  If a Person shall fail to provide the Liquidating Trust Administrator with any requested taxpayer identification information within 120 days of the written request, this failure shall be deemed a waiver of all Claims against the Estates (including the right to any payment from the Liquidating Trust), and the funds that otherwise would have been distributed to said Person shall revert and be distributed in accordance with the Plan to other Persons that have provided the requested taxpayer identification information, or to the Liquidating Trust, as appropriate.

6.4     *Cooperation Between Debtors and Liquidating Trust Administrator*

The Debtors shall cooperate with the Liquidating Trust Administrator in providing tax reporting information to the Liquidating Trust Administrator before the Effective Date.

6.5     ***Distributions on Allowed General Unsecured Claims.***

All Allowed General Unsecured Claims held by a single creditor shall be aggregated and treated as a single Claim.  At the written request of the Liquidating Trust Administrator, any creditor holding multiple Allowed General Unsecured Claims shall provide to the Liquidating Trust Administrator, as the case may be, a single address to which any distributions shall be sent.

6.6     ***Date of Distributions***.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

6.7     ***Delivery of Distributions***.

Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtors or its agents, as applicable, unless the Debtors or the Liquidating Trust Administrator have been notified in writing of a change of address, including, without limitation, by the filing of a proof of Claim by such holder that contains an address for such holder different than the address of such holder as set forth on the Schedules.  Nothing in this Plan shall require the Liquidating Trust Administrator to attempt to locate any holder of an Allowed Claim.

6.8     ***Unclaimed Distributions***.

All distributions under the Plan that are unclaimed for a period of six (6) months after distribution thereof shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code and any entitlement of any holder of any Claims to such distributions and future distributions shall be extinguished and forever barred and such unclaimed distributions shall be redistributed *pro rata* to the holders of Allowed Claims.

6.9     ***Distribution Record Date***.

With respect to holders of all General Unsecured Claims, on the Distribution Record Date, the Claims register shall be closed and any transfer of any Claim therein shall be prohibited.  The Liquidating Trust Administrator shall have no obligation to recognize any transfer of any such Claims occurring after the close of business after such date.  Participant's interest in the Liquidating Trust will be non-transferable, except with respect to the following transfers: (a) transfers under the laws of descent or intestate succession, including transfers from an estate or testamentary trust; and (b) transfers by operation of law or by order of a court of competent jurisdiction.  In respect of such transfers, the transferor shall provide the Liquidating Trust Administrator with written notice thirty (30) days prior to the proposed transfer, including all pertinent facts and, if applicable, documents relating to the transfer.  The Liquidating Trust Administrator shall approve or disapprove the transfer and impose any conditions with respect to

the transfer that the Liquidating Trust Administrator deems necessary or advisable in its sole discretion.  The Liquidating Trust Administrator may require from the transferor or counsel to the Liquidating Trust (at his option) an opinion, in form and substance satisfactory to the Liquidating Trust Administrator, that the transfer will not cause the Liquidating Trust to be taxable as a corporation for federal income tax purposes.  The Liquidating Trust Administrator may require the transferor to reimburse the Liquidating Trust for any expenses incurred in connection with the proposed transfer, whether or not approved.  The Liquidating Trust Administrator shall determine in his sole discretion and record on the books and records of the Liquidating Trust the effective date of any transfer.  Any transfer not approved pursuant to the procedures set forth herein shall be null and void.  Any transfer so approved shall be a "Permitted Transfer."  Upon a Permitted Transfer, the transferee shall be admitted as a participant of the Liquidating Trust, shall succeed to the transferring participant's interest, and the Liquidating Trust Administrator shall record on the books and records of the Liquidating Trust such transfer and new participant.

6.10    *Manner of Payment*.

At the option of the Liquidating Trust Administrator, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

6.11    *De Minimus Distributions*.

No payment of Cash less than $50.00 shall be made to any holder of an Allowed Claim unless a request therefor is made in writing to the Liquidating Trust Administrator. Class 4 Claims will be paid without regard to the $50.00 threshold, described in this Section 6.11.

6.12    *Setoffs and Recoupment*.

The Debtors may, but shall not be required to, setoff against or recoup from any Claim and the payments to be made pursuant to the Plan in respect of such Claim any Claims of any nature whatsoever that the Debtors may have against the Creditor , but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trust of any such Claim it may have against such Creditor.

6.13    *Distributions After Effective Date*.

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

## ARTICLE VII
## PROCEDURES FOR TREATING DISPUTED CLAIMS

7.1    *Objections*.

As of the Effective Date, objections to, and requests for estimation of, Claims against the Debtors may be interposed and prosecuted only by the Liquidating Trust Administrator.  Such objections and requests for estimation, including, without limitation, any reduction, recharacterization, subordination or other modification in whole or in part that may be brought by motion, objection, or adversary proceeding, shall be served on the respective claimant and filed with the Bankruptcy Court on or before the latest of: (i) the later of one hundred and eighty (180) days after the Effective Date or (ii) such later date as may be fixed by the Bankruptcy Court.

7.2    *Distributions After Allowance*.

To the extent that a Disputed Claim ultimately becomes an Allowed Claim or Allowed Administrative Expense Claim, distributions, if any, shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Administrative Expense Claim becomes a Final Order, the Liquidating Trust Administrator will provide to the holder of such Administrative Expense Claim or Claim the distribution, if any, to which such holder is entitled under the Plan.  The Liquidating Trust Administrator shall set up such reserves as may be required to ensure that a Disputed Creditor or a Disputed Administrative Expense Creditor will receive its distribution under the Plan, if, and to the extent, such Disputed Claim or Disputed Administrative Expense becomes Allowed by a Final Order.

7.3    *Resolution of Claims*.

On and after the Effective Date, the Liquidating Trust Administrator shall have the sole authority and discretion to compromise, settle, otherwise resolve or withdraw any objections to Claims, and to compromise, settle or otherwise resolve any Disputed Claims without approval of the Bankruptcy Court.

7.4    *Estimation of Claims.*

The Liquidating Trust Administrator may at any time request that the Bankruptcy Court estimate any Contingent Claim, Unliquidated Claim or Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether any of the Debtors or the Liquidating Trust Administrator previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any Contingent Claim, Unliquidated Claim or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of

such Claim, the Liquidating Trust Administrator may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another.

       7.5     *Interest*.

To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, the holder of such Claim shall not be entitled to any interest thereon that accrued after the Effective Date.

### ARTICLE VIII
### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

       8.1     *Rejection of Any Remaining Executory Contracts and Unexpired Leases*.

Pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that exist between any of the Debtors and any person or entity shall be deemed rejected by the Debtors as of the Effective Date, except for any executory contract or unexpired lease (a) that has been rejected by a Final Order of the Bankruptcy Court prior to the Effective Date, (b) that has been assumed or assumed and assigned pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, or (c) as to which a motion for approval of the assumption of such executory contract or unexpired lease has been filed and served prior to the Confirmation Date.

       8.2     *Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan*.

Proofs of Claim for damages arising out of the rejection of an executory contract or unexpired lease pursuant to Section 8.1 of the Plan must be filed with the Bankruptcy Court and served on the Liquidating Trust Administrator, no later than forty-five (45) days after notice of entry of the Confirmation Order.  **If such proofs of Claim are not filed within such time, such Creditor will be deemed forever barred from asserting any such claim against the Debtors and their Estates or the Liquidating Trust or the assets in the Liquidating Trust**.

### ARTICLE IX
### CONDITIONS PRECEDENT TO EFFECTIVE DATE

       9.1     *Conditions Precedent to Effectiveness*.

The Effective Date shall not occur and the Plan shall not become effective unless and until the following conditions are satisfied in full or waived in accordance with Section 9.2 of the Plan:

       (a)     The Confirmation Order, in form and substance acceptable to the Debtors, shall have been entered and is a Final Order;

(b)    All actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plan are effected or executed and delivered, as applicable, in form and substance satisfactory to the Debtors; and

(c)    All authorizations, consents and regulatory approvals, if any, required by the Debtors in connection with the consummation of the Plan are obtained and not revoked as of the Effective Date.

9.2    *Waiver of Conditions*.

Each of the conditions precedent in Section 9.1 hereof may be waived, in whole or in part, by the Debtors.  Subject to the foregoing sentence, any such waivers may be effected at any time, without notice, without leave or order of the Bankruptcy Court and without any formal action.

9.3    *Satisfaction of Conditions*.

Except as expressly provided or permitted in the Plan, any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.  In the event that one or more of the conditions specified in Section 9.1 of the Plan have not occurred or otherwise been waived pursuant to Section 9.2 of the Plan, (a) the Confirmation Order shall be vacated, (b) the Debtors and all holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred and (c) the Debtors' obligations with respect to Claims and Equity Interests shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors.

## ARTICLE X
## EFFECT OF CONFIRMATION

10.1    *Vesting of Assets*.

On the Effective Date, the Debtors, their properties and interests in property and their operations shall be released from the custody and jurisdiction of the Bankruptcy Court, and all property of the Debtors' Estates shall continue to vest in the Liquidating Trust free and clear of all Claims and Liens, except as provided in the Plan.

10.2    *Binding Effect*.

Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtors and such holder's respective successors and assigns, whether or not the Claim or interests including any Equity Interest of such holder is impaired under the Plan, whether or not

such holder has accepted the Plan and whether or not such holder is entitled to a distribution under the Plan.

10.3     *Injunction or Stay*.

**Except as otherwise expressly provided herein or in the Confirmation Order, all Persons or entities who have held, hold or may hold Claims against or Equity Interests in the Debtors are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against the Debtors, the Liquidating Trust or the Liquidating Trust Administrator (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any of the Debtors, the Liquidating Trust or the Liquidating Trust Administrator with respect to such Claim or Equity Interest, (c) creating, perfecting or enforcing any encumbrance of any kind against the Debtors, the Liquidating Trust or the Liquidating Trust Administrator or against the property or interests in property of any of the Debtors or the Liquidating Trust, (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due to the Debtors, the Liquidating Trust or the Liquidating Trust Administrator or against the property or interests in property of the Debtors or the Liquidating Trust, (e) acting or proceeding in any manner in any place whatsoever, that does not conform to or comply with the provisions of the Plan, (f) commencing, continuing, or asserting in any manner any action or other proceeding of any kind with respect to any claims which are extinguished or released pursuant to the Plan, and (g) taking any actions to interfere with the implementation or consummation of the Plan.  Notwithstanding the terms provided in this Section 8.3, the defendants, and only the defendants, in Adversary Proceedings Nos. 10-02786 and 10-02787 shall not be precluded from asserting any amount reflected in their previously-filed proofs of claim as set-off or defense against any claim asserted against such defendants in the foregoing adversary proceedings.**

10.4     *Terms of Injunction or Stay*.

**All injunctions or stays arising under or entered during the Chapter 11 Cases under Section 105 or 362 of the Bankruptcy Code, or otherwise, that are in existence on the Confirmation Date shall remain in full force and effect until the Effective Date.  On or after the Effective Date, the provisions of the Plan shall protect the Debtors, the Liquidating Trust and the assets transferred to the Liquidating Trust.**

10.5     *Reservation of Causes of Action/Reservation of Rights*.

Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or Causes of Action that the Debtors, or the Liquidating Trust may have or may choose to assert against non-Debtor Persons.  Additionally, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment : (1) by Winston & Strawn LLP and/or Novagradac and Company LLP, defendants in Adversary Proceedings Nos. 10-02786 and 10-02787, of their right to assert that the proofs of claim they filed were timely and properly filed in the Chapter 11 Cases; or (2) of any defenses that Winston

& Strawn LLP and/or Novagradac and Company LLP may assert in Adversary Proceeding Nos. 10-02786 and 10-02787.

   10.6  ***Exculpation***.

    None of the Debtors, the Liquidating Trust Administrator, the Creditors' Committee, or any of such parties' respective officers, directors, managers, members accountants, financial advisors, investment bankers, agents, restructuring advisors, attorneys and representatives (solely in their capacity as officers, directors, managers, members, accountants, financial advisors, investment bankers, agents, restructuring advisors, attorneys, consultants and representatives) shall have or incur any liability for any Claim, Cause of Action or other assertion of liability for any act taken or omitted to be taken in connection with, or arising out of, the Chapter 11 Cases, the formulation, dissemination, confirmation, consummation or administration of the Plan, property to be distributed under the Plan or any other act or omission in connection with the Chapter 11 Cases, the Plan, the First Amended Disclosure Statement or any contract, instrument, document or other agreement related thereto; provided, however, that the foregoing shall not affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct or gross negligence.

## ARTICLE XI
## RETENTION OF JURISDICTION

   11.1  The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code, including, without limitation:

    (a)  To hear and determine pending applications for the rejection of executory contracts or unexpired leases and Claims resulting therefrom;

    (b)  To determine any and all adversary proceedings, applications and contested matters;

    (c)  To hear and determine all applications for compensation and reimbursement of expenses under Sections 330, 331 and 503(b) of the Bankruptcy Code;

    (d)  To hear and determine any timely objections to, or requests for estimation of Disputed Claims, in whole or in part;

    (e)  To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

    (f)  To issue such orders in aid of execution of the Plan, to the extent authorized by Section 1142 of the Bankruptcy Code;

(g)    To consider any amendments to or modifications of the Plan or to cure any defect or omission, or reconcile any inconsistency, in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(h)    To hear and determine disputes or issues arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, any agreement, instrument, or other document governing or relating to any of the foregoing or any settlement approved by the Bankruptcy Court;

(i)    To hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code (including, without limitation, any request by the Debtors prior to the Effective Date or request by the Liquidating Trust Administrator after the Effective Date for an expedited determination of tax under Section 505(b) of the Bankruptcy Code);

(j)    To hear and determine all disputes involving the existence, scope and nature of the injunctions granted under the Plan, the Confirmation Order or the Bankruptcy Code;

(k)    To issue injunctions and effect any other actions that may be necessary or appropriate to restrain interference by any Person with the consummation, implementation or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court;

(l)    To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)    To hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtors or the Liquidating Trust pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory;

(n)    To recover all assets of the Debtors and property of the Debtors' Estates, wherever located;

(o)    To enter a final decree closing the Chapter 11 Cases; and

(p)    To hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

12.1    *Effectuating Documents and Further Transactions*.

On or before the Effective Date, and without the need for any further order or authority, the Debtors shall file with the Bankruptcy Court or execute, as appropriate, such

agreements and other documents that are in form and substance reasonably satisfactory to the Debtors as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Liquidating Plan Administrator is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 12.2    *Modification of Plan*.

Alterations, amendments or modifications of or to the Plan may be proposed in writing by the Debtors at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified satisfies the conditions of Sections 1122 and 1123 of the Bankruptcy Code and the Debtors shall have complied with Section 1125 of the Bankruptcy Code.  The Plan may be altered, amended or modified at any time after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under Section 1129 of the Bankruptcy Code and the circumstances warrant such alterations, amendments or modifications.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan of Reorganization without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Equity Interests.

### 12.3    *Revocation or Withdrawal of the Plan*.

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtors revoke or withdraw the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors.

### 12.4    *Substantial Consummation*.

On the Effective Date, the Plan shall be deemed to be substantially consummated under Sections 1101 and 1127(b) of the Bankruptcy Code.

### 12.5    *Severability of Plan Provisions*.

In the event that, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the

maximum extent practicable, consistent with the original purpose of the term or provision held to
be invalid, void or unenforceable, and such term or provision shall then be applicable as altered
or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of
the terms and provisions of the Plan shall remain in full force and effect and shall in no way be
affected, impaired or invalidated by such holding, alteration or interpretation.  Among other
things, if the settlement with the Members described in Section 5.2 hereof is not approved by the
Bankruptcy Court, or if the exculpation provisions described in Section 10.6 hereof is modified
by the Bankruptcy Court, the Debtors will nevertheless seek confirmation of the Plan, as
modified, so as to be acceptable to the Bankruptcy Court.  The Confirmation Order shall
constitute a judicial determination and shall provide that each term and provision of the Plan, as
it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable
in accordance with its terms.

12.6    *Governing Law*.

Except to the extent that the Bankruptcy Code or other federal law is applicable,
or to the extent the Plan or Plan Supplement provides otherwise (in which case the governing law
specified therein shall be applicable to such exhibit), the rights, duties, and obligations arising
under the Plan shall be governed by, and construed and enforced in accordance with, the laws of
the State of New York without giving effect to its principles of conflict of laws.

12.7    *Notices*.

All notices, requests and demands to or upon the Debtors to be effective shall be
in writing (including by facsimile transmission) and, unless otherwise expressly provided herein,
shall be deemed to have been duly given or made when actually delivered or, in the case of
notice by facsimile transmission, when received and telephonically confirmed, addressed as
follows:

If to the Debtors, to:

Solstice LLC
601 Union Street, Suit 4200
Seattle, Washington 98101
Attn:  Carolynn Rockafellow
Telephone: (415) 843-5113

- and -

King & Spalding LLP
1185 Avenue of the Americas
New York, New York 10036
Attn:    Arthur J. Steinberg, Esq.
         Heath D. Rosenblat, Esq.
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

If to the Creditors' Committee, to:

Arent Fox LLP
1675 Broadway
New York, New York 10019
Attn:    Schuyler G. Carroll, Esq.
         Ronni N. Arnold, Esq.
Telephone: (212) 484-3900
Facsimile: (212) 484-3990

[*Signature Page Follows*]

Dated: May [__], 2010
      New York, New York

Respectfully Submitted,

Solstice,LLC, Solstice Management, LLC, Solstice Ownership I, LLC, Solstice Ownership II, LLC, Solstice Ownership III, LLC, Solstice Ownership IV, LLC, Solstice Ownership V, LLC, Solstice Ownership VI, LLC, Solstice Ownership VII, LLC, Sea Vision I, LLC, Parallel I LLC, Parallel Aspen, LLC, Parallel Management LLC, 163 Charles Street No. 4 New York, LLC, 163 Charles Street No. 5 New York, LLC, Solstice Ownership 7, S.r.l.

By:_____

    Name:    Carolynn A. Rockafellow
    Title:    CEO of Solstice, LLC, the managing
              member of each other Debtor